**AKIN GUMP STRAUSS HAUER & FELD LLP**
SUSAN KAY LEADER (SBN 216743)
REX S. HEINKE (SBN 66163)
JESSICA M. WEISEL (SBN 174809)
REBECCA A. GIROLAMO (SBN 293422)
sleader@akingump.com
rheinke@akingump.com
jweisel@akingump.com
bgirolamo@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone:   310.229.1000
Facsimile:   310.229.1001

**LITTLER MENDELSON, P.C.**
LAWRENCE D. LEVIEN (*Pro Hac Vice*)
LLevien@littler.com
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
Telephone:   202.842.3400
Facsimile:   202.842.0011

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANS HOTELS, LLC, a California limited liability company; BH PARTNERSHIP LP, a California limited partnership; EHSW, LLC, a Delaware limited liability company,<br><br>                    Plaintiffs,<br><br>        v.<br><br>UNITE HERE! LOCAL 30; BRIGETTE BROWNING, an individual; SAN DIEGO COUNTY BUILDING and CONSTRUCTION TRADES COUNCIL, AFL-CIO; TOM LEMMON, an individual; and DOES 1-10,<br><br>                    Defendants. | Case No. 3:18-cv-2763-WQH-KSC<br><br>[Judge:  Hon. William Q. Hayes]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT**<br><br>Date:        Mar. 9, 2020<br>Dept.:        14B<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................1

II.   THE COURT SHOULD RECONSIDER AND DENY THE MOTIONS TO
      DISMISS..................................................................................................3

    A.    The Court Should Reconsider Its Dismissal Of The First Claim For
            Relief, Because Under The New *Bridge Workers* Decision, *Noerr-
            Pennington* Does Not Bar Claims For Unfair Labor Practices In
            Violation Of § 8(b)(4).................................................................3

    B.    The Court Should Reconsider Its Rulings That The "Grenade" And
            "Stop At Nothing" Threats Were Entirely Incidental To Petitioning
            Activity. ................................................................................6

    C.    The Court Should Reconsider Its Holding That The Sham Exception
            To *Noerr-Penning*ton Was Not Sufficiently Alleged. ........................10

        1.   Defendants' prior actions against other developers are relevant
                 even though they have not yet sued Evans Hotels over the
                 Bahia redevelopment. .........................................................11

        2.   The sham exception to *Noerr-Pennington* can be satisfied by
                 showing a defendant has an improper motive, not just that it
                 intends to harm a market rival. ............................................16

        3.   Because Evans Hotels pleaded a plausible theory that
                 Defendants' conduct was sham, the Court should not have
                 granted the Motions to Dismiss. ..........................................18

III.  CONCLUSION.......................................................................................19

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Affordable Housing Dev. Corp. v. City of Fresno*,
 CIV F 97-5498 DWW SMS, 2001 U.S. Dist. LEXIS 26378 (E.D. Cal.
 Nov. 9, 2001) ....................................................................................................7, 10

*Allstate Ins. Co. v. Herron*,
 634 F.3d 1101 (9th Cir. 2011) ...........................................................................1

*Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*,
 248 F.3d 892 (9th Cir. 2001) .............................................................................1

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*,
 461 U.S. 731 (1983).............................................................................10, 15, 17

*Brandenburg v. Ohio*,
 395 U.S. 444 (1969)..........................................................................................10

*California Motor Transport Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972)..........................................................................................17

*Clews Land & Livestock, LLC v. City of San Diego*,
 19 Cal. App. 5th 161 (2017) ............................................................................16

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
 690 F.2d 1240 (9th Cir. 1982) ....................................................................11, 18

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and
 Construction Trades Council*,
 485 U.S. 568 (1988)............................................................................................4

*International Brotherhood of Electrical Workers v. N.L.R.B.*,
 341 U.S. 694 (1951)............................................................................................4

*J2 Global Commc'ns, Inc. v. Protus IP Solutions*,
 No. CV 06-00566 DDP, 2010 U.S. Dist. LEXIS 47562 (C.D. Cal. Apr.
 20, 2010) .............................................................................................................1

*Jarrow Formulas, Inc. v. Int'l Nutrition Co.*,
 175 F. Supp. 2d 296 (D. Conn. 2001)..............................................................18

*Kottle v. Northwest Kidney Centers*,
  146 F.3d 1056 (9th Cir. 1998) ................................................................. 17

*Luxpro Corp. v. Apple Inc.*,
  No. C 10-03058 JSW, 2011 U.S. Dist. LEXIS 35008 (N.D. Cal. Mar.
  24, 2011) ........................................................................................... 7, 8

*Malhotra v. Cotter & Co.*,
  885 F.2d 1305 (7th Cir. 1989) ................................................................... 2

*McDowell v. Calderon*,
  197 F.3d 1253 (9th Cir. 1999) ................................................................... 1

*MGA Entm't, Inc. v. Mattel, Inc.*,
  No. CV 05-2727 NM, 2005 U.S. Dist. LEXIS 18594 (C.D. Cal. Aug.
  26, 2005) .............................................................................................. 18

*N.L.R.B. v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing
  Iron Workers, Local 229, AFL-CIO*,
  941 F.3d 902 (9th Cir. 2019) ........................................................ 1, 3, 4, 5

*N.L.R.B. v. Local Union No. 3, IBEW*,
  477 F.2d 260 (2d Cir. 1973) ..................................................................... 4

*Oregon Nat. Res. Council v. Mohla*,
  944 F.2d 531 (9th Cir. 1991) ...................................................... 11, 12, 14

*Otter Tail Power Co. v. U.S.*,
  410 U.S. 366 (1973) ....................................................................... 11, 12

*Perez v. Directv Grp. Holdings*,
  No. 8:16-cv-01440-JLS-DFM, 2019 U.S. Dist. LEXIS 209405 (C.D.
  Cal. July 23, 2019) ................................................................................ 17

*Punay v. PNC Mortg.*,
  No. 16cv2780-WQH-NLS, 2017 U.S. Dist. LEXIS 84414 (S.D. Cal.
  May 31, 2017) ........................................................................................ 6

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ............................................................................. 4

*Santa Barbara Cnty. Flower & Nursery Growers Ass'n v. Cnty. of Santa
  Barbara*, 121 Cal. App. 4th 864 (2004) ................................................ 16

*Small ex rel. N.L.R.B. v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*,
611 F.3d 483 (9th Cir. 2010) ........................................................................5

*Sonus Networks, Inc. v. Inventergy, Inc.*,
No. C-15-0322 EMC, 2015 U.S. Dist. LEXIS 97748 (N.D. Cal. July 27, 2015) ........................................................................18

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) .......................................................9, 17, 18

*Standard Drywall, Inc. v. N.L.R.B.*,
547 F. App'x 809 (9th Cir. 2013) ...............................................................5

*Total Renal Care, Inc. v. Western Nephrology & Metabolic Bone Disease, P.C.*, No. 08-cv-00513-CMA-KMT, 2009 U.S. Dist. LEXIS 80821 (D. Col. Aug. 21, 2009) ...............................................................18, 19

*United Nurses Ass'ns of Cal. v. N.L.R.B.*,
871 F.3d 767 (9th Cir. 2017) .......................................................5, 6

*United States v. Kellow*,
No. 2:10-cr-287-GMN-VCF, 2019 U.S. Dist. LEXIS 297 (D. Nev. Jan. 2, 2019) ........................................................................2

*USACM Liquidating Trust v. Monaco*,
No. 2:09-cv-01947-RCJ-PAL, 2010 U.S. Dist. LEXIS 54439 (D. Nev. May 6, 2010) ........................................................................1, 2

*USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council, AFL–CIO*,
31 F.3d 800 (9th Cir. 1994) .......................................................11, 16, 17

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*,
484 F.3d 601 (D.C. Cir. 2007) ...............................................................5

*Warshawsky & Co. v. N.L.R.B.*,
182 F.3d 948 (D.C. Cir. 1999) ...............................................................4

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ...............................................................6

iii

**Statutes**

29 U.S.C. §158 ........................................................................................................ 1, 5

Cal. Pub. Resources Code § 21177 ........................................................................ 16

# I.     PRELIMINARY STATEMENT

A motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within the time period permitted by that Rule. *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). This Court has "considerable discretion in granting or denying" reconsideration, *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011), and has inherent authority to review any order before final judgment or appeal of the issue to be reviewed. *See, e.g.*, *USACM Liquidating Trust v. Monaco*, No. 2:09-cv-01947-RCJ-PAL, 2010 U.S. Dist. LEXIS 54439, at *11 (D. Nev. May 6, 2010) ("[A] district court has inherent power to reconsider its interlocutory orders if it finds just cause to do so, so long as it retains jurisdiction in the matter."); *J2 Global Commc'ns, Inc. v. Protus IP Solutions*, No. CV 06-00566 DDP (AJWx), 2010 U.S. Dist. LEXIS 47562, at *10-11 (C.D. Cal. Apr. 20, 2010) (reconsidering sua sponte order denying partial summary judgment).

Reconsideration is appropriate when: (1) necessary to correct manifest errors of law or fact upon which the judgment rests; (2) necessary to prevent manifest injustice; or (3) justified by an intervening change in controlling law. *Allstate Ins. Co.*, 634 F.3d at 1111; *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam). Each of these grounds warrants reconsideration here.

In this case, new law warrants reconsideration of this Court's dismissal of Evans Hotels' First Claim for Relief alleging that Defendants violated § 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, by engaging in a secondary boycott of SeaWorld. After briefing and argument on the Motions to Dismiss, the Ninth Circuit issued a new decision that establishes that the *Noerr-Pennington* doctrine does not apply to secondary boycott claims. *N.L.R.B.. v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Local 229, AFL-CIO*, 941 F.3d 902, 905-07 (9th Cir. 2019) ("*Bridge Workers*") (rejecting argument that the union's urging of a secondary boycott was protected expressive activity under the First Amendment). This Court's dismissal

of Evans Hotels' secondary boycott claim on *Noerr-Pennington* grounds is directly contrary to this new decision.

Reconsideration is also warranted where, as here, a court renders a decision on legal grounds unsupported by the law and/or on grounds that were never properly raised by the opposing party. *United States v. Kellow*, No. 2:10-cr-287-GMN-VCF, 2019 U.S. Dist. LEXIS 297 (D. Nev. Jan. 2, 2019) (reconsidering ruling on motion decided on basis that was not raised in the moving papers and was contrary to existing authority); *USACM Liquidating Tr.*, 2010 U.S. Dist. LEXIS 54439, at *26 (reconsidering sanctions motion where motion failed to give party reasonable notice that motion was directed against it); *see also Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B -- a ground the movant might have presented but did not."), *superseded by statute on other grounds, Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir. 1992). Here, this Court's January 7, 2020 order (the "Order") rested on three holdings that Defendants never asserted in their moving briefs. These holdings are contrary to the law and fail to make inferences favorable to Evans Hotels as is required when ruling on a motion to dismiss.

First, the Court wrongly inferred that Defendants' threats about the "grenade" and to "stop at nothing" until Evans Hotels acceded to Defendants' demands pertained solely to petitioning activity. Defendants did not make that argument in their moving papers and only raised the argument that such threats were incidental to petitioning activity in their reply briefs. But those threats were made shortly after Defendants' threats to SeaWorld had destroyed the Joint Venture between SeaWorld and Evans Hotels and, in that context, could have reasonably been understood to encompass threats of non-petitioning activity. At the pleading stage, even if the statements could have referred to either petitioning or non-petitioning activity, they should have been construed in Evans Hotels' favor as referring to non-petitioning activity outside the scope of *Noerr-Pennington*.

Second, the Court erred in holding that, in alleging the serial sham exception to *Noerr-Pennington*, Evans Hotels could not rely on Defendants' actions toward other developers because Defendants filed lawsuits in those cases, but has not filed a lawsuit against Evans Hotels. Defendants did not make this argument and it is inconsistent with decisions of the Ninth Circuit and Supreme Court.

Third, the Court also erred in holding that the sham exception to *Noerr Pennington* applies only if the subjective motive for the petitioning activity is an "intent to injure a competitor." Defendants did not make that argument, which is contrary to cases considering *Noerr-Pennington* outside the antitrust context. Those cases have recognized that the sham exception may apply when the defendant has other unlawful motives.

Accordingly, because these holdings are clearly erroneous and it is manifestly unjust that the Order was based on grounds that Evans Hotels never had an opportunity to address, the Court should reconsider the Order and deny Defendants' Motions to Dismiss.

## II.   THE COURT SHOULD RECONSIDER AND DENY THE MOTIONS TO DISMISS.

### A.   The Court Should Reconsider Its Dismissal Of The First Claim For Relief, Because Under The New *Bridge Workers* Decision, *Noerr-Pennington* Does Not Bar Claims For Unfair Labor Practices In Violation Of § 8(b)(4).

On October 28, 2019, several weeks after the hearing in this case, the Ninth Circuit decided *Bridge Workers.*[1] It agreed with the D.C. and Second Circuits that the First Amendment does not apply to secondary boycotts, even when those activities involve speech that would otherwise be protected by the First Amendment. *Bridge Workers*, 941 F.3d at 905-06; *Warshawsky & Co. v. N.L.R.B.*, 182 F.3d 948, 952 (D.C. Cir. 1999) ("the First Amendment is not at all implicated" when activities prohibited by

---

[1] Without any argument, Evans submitted *Bridge Workers* to the Court attached to a Notice of Supplemental Authority (ECF No. 58) on Oct. 29, 2019, but the Court did not address this new case in its Order.

Section 8(b)(4)(i) are proscribed); *N.L.R.B. v. Local Union No. 3, IBEW*, 477 F.2d 260, 266 (2d Cir. 1973) (affirming NLRB finding that union violated § 8(b)(4)(i) and (ii) and rejecting argument that "pure speech" was protected by the First Amendment).

All three cases relied on *International Brotherhood of Electrical Workers v. N.L.R.B.*, 341 U.S. 694 (1951) *("IBEW")*, in which the Supreme Court held that the NLRA's prohibition of secondary boycotts "carries no unconstitutional abridgment of free speech." *Id*. at 705; *accord Bridge Workers*, 941 F.3d at 905 (quoting *IBEW*).   The Supreme Court dismissed the argument that prohibitions on secondary activity infringed the First Amendment.  As the Supreme Court reasoned, § 8(b)(4) prevents the "substantive evil . . . [of] the secondary boycott" and neither the First Amendment nor § 8(c) protect "speech or picketing in furtherance of unfair labor practices such as are defined in § 8(b)(4)."  *IBEW*, 341 U.S. at 704.  "[I]t was the objective of the unions' secondary activities and not the quality of the means employed to accomplish that objective, which was the dominant factor motivating Congress in enacting that provision."  *Id.* (citation, alteration, and internal quotation marks omitted).

In *Bridge Workers*, the Ninth Circuit rejected the argument that post-*IBEW* decisions of the Supreme Court had overturned *IBEW*.  Cases like *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568 (1988), were distinguishable, because *Reed* involved a challenge to a city sign ordinance, not communications "within the highly regulated contours of labor negotiations," and the conduct in *DeBartolo* did not involve secondary activity.  *Bridge Workers*, 941 F.3d at 906.

This case, by contrast, *does* involve secondary activity – Defendants' threats to harm SeaWorld's reputation and business prospects unless SeaWorld pressured Evans Hotels to accede to Defendants' demands regarding the Bahia or cease doing business with Evans Hotels.  This is exactly the type of conduct prohibited by Section 8(b)(4): "[i]t shall be an unfair labor practice for a labor organization or its agents … to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting

commerce, where in either case an object thereof is … forcing or requiring any person … to cease doing business with another person.  29 U.S.C. §158(b)(4)(ii).  Thus, this Court should reconsider its decision and hold, under *Bridge Workers*, that Evans Hotels' First Claim for Relief is not barred by the *Noerr-Pennington* doctrine.

Such a result would also be consistent with earlier Ninth Circuit authority recognizing that otherwise protected petitioning activity can be enjoined or sanctioned under the NLRA.  *See, e.g.*, *Small ex rel. N.L.R.B. v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 492-93 (9th Cir. 2010) (affirming order enjoining union from litigating state court action that had an illegal objective of obtaining a result inconsistent with prior NLRB findings); *accord Standard Drywall, Inc. v. N.L.R.B.*, 547 F. App'x 809, 811 (9th Cir. 2013) (same).  Because the lawsuits in those cases had an illegal objective "they are not protected by the Petition Clause of the First Amendment."  *Small*, 611 F.3d at 493.

Similarly, the Ninth Circuit, in *United Nurses Ass'ns of Cal. v. N.L.R.B.*, 871 F.3d 767 (9th Cir. 2017), rejected an employer's argument that subpoenas it served on employees as part of a litigation were protected activity.  Because the subpoenas sought to discover the identities of employees who had signed union cards – information an employer is prohibited from seeking under the NLRA – the Ninth Circuit held that the First Amendment did not immunize the employer from liability for unfair labor practices.  *Id.* at 786-77.

Significantly, the Ninth Circuit added that, although the *Noerr-Pennington* doctrine in non-labor contexts has been applied to both direct conduct and incidental conduct, that is not true in labor disputes.  "The Supreme Court 'has extended Noerr-Pennington immunity into labor law only to protect direct petitioning, i.e., employer lawsuits,' but not to protect indirect petitioning."  *Id.* at 788 (quoting *Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 484 F.3d 601, 612 (D.C. Cir. 2007)).  Because the employer in *United Nurses* was using the subpoenas to influence its employees, not the government, there was a "mismatch between the conduct giving rise to [the employer's]

unfair labor practice liability and the conduct it characterizes as protected petitioning." *Id.*

A similar "mismatch" exists here.  When Defendants threatened SeaWorld with financial ruin, they were not seeking to influence the government; they were seeking to influence SeaWorld to force it to put pressure on Evans Hotels.[2]

Accordingly, this Court should reconsider its order granting Defendants' Motions to Dismiss and deny the motions as to the First Claim for Relief.

**B.     The Court Should Reconsider Its Rulings That The "Grenade" And "Stop At Nothing" Threats Were Entirely Incidental To Petitioning Activity.**

Defendants' Motion to Dismiss asserted broadly that all of their conduct was either petitioning activity or incidental to petitioning activity.  Defendants' motions made no specific reference to the "grenade" threat or the threat that Defendants would "stop at nothing" to prevent the Bahia redevelopment.  It was only in their reply that Defendants argued, for the first time, that the threats made directly to Evans Hotels were somehow incidental to their lobbying activity, likening them to a settlement offer.  Local 30 Reply (ECF No. 41) at 4.  The fact that the argument was not advanced in Defendants' moving papers is reason enough for it to have been rejected.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Punay v. PNC Mortg.*, No. 16cv2780-WQH-NLS, 2017 U.S. Dist. LEXIS 84414, at *28 n.2 (S.D. Cal. May 31, 2017) (refusing to consider party's argument because it was raised "for the first time in its reply brief" and opposing party "has not had an opportunity to respond").

Instead, this Court adopted Defendants' argument in its Order that these threats constituted petitioning activity and held that:

> In regard to Plaintiffs' allegations that Defendant Lemmon
> threatened Evans that "his project would be doomed as the
> union would hold it up by any and all means," that there was

---

[2]  For the same reason, Defendants' threats made directly to Evans are not protected.  Those threats were not intended to influence government action, but to force Evans to unionize.

"still time to put [the pin] back in" the "grenade," and that Defendant Browning said the unions "would stop at nothing to prevent the Bahia from going forward," (ECF No. 19 ¶¶ 92, 122), each alleged threat was made in the context of petitioning activity. The alleged threat that the Bahia would be "doomed" was made in the context of Defendant Lemmon discussing the union's lawyers sending letters to the City Council and filing CEQA challenges. The alleged "grenade" comment was made in the context of Defendants discussing lobbying the City Council. Defendant Browning's statement that Defendants "would stop at nothing" was made in the context of Defendants discussing past lawsuits. The Court cannot infer, from the facts alleged, that Defendants' "threats" to Plaintiffs fall outside the scope of the Petition Clause. *See Affordable Hous. Dev. Corp. v. City of Fresno*, CIV F 97-5498 DWW SMS, 2001 U.S. Dist. LEXIS 26378, at *64 (E.D. Cal. Nov. 9, 2001) (holding the defendant's threat that the plaintiff "might have some problems down the road if [defendant] did not get his way" was a threat of a "political nature" protected by the *Noerr-Pennington* doctrine).

Order at 14. Yet, Defendants did not argue in their motions that these statements could be inferred to relate *only* to petitioning activity. As such, Evans Hotels was denied an opportunity to argue why that inference is wrong. And because Defendants never cited or relied on *Affordable Housing* in their motions, Evans Hotels was not given the opportunity to explain why that case is entirely irrelevant to the *Noerr-Pennington* issue.

The Court's holding that the "grenade" and "stop at nothing" threats must be construed as relating to petitioning activity runs counter to the standard on a motion to dismiss that requires that inferences be made in favor of the non-moving party. Where, as here on a motion to dismiss, threats could refer to both petitioning *and* non-petitioning activity, it is improper to construe the statements as only referring to petitioning activity. This case is no different from *Luxpro Corp. v. Apple Inc.*, No. C 10-03058 JSW, 2011 U.S. Dist. LEXIS 35008 (N.D. Cal. Mar. 24, 2011), where the court refused to find that threats defendant made to the plaintiff's commercial partners in a trademark infringement dispute were protected by *Noerr-Pennington*. There, the defendant maintained that pre-litigation demand letters in which the partners were threatened with litigation if they continued to sell the plaintiff's infringing projects were threats incidental to petitioning activity and therefore protected. *Id.* at *18-19. But the

court disagreed and found that, although some allegations suggested the threats were pre-litigation demands, other allegations alleged threats that did not suggest the possibility of a lawsuit or mention the enforcement of any intellectual property rights. Because the allegations were equivocal, the court could not "conclude that all of [the defendant's] threats were 'incidental to the prosecution of a lawsuit.'" *Id.* at *19. Thus, the court could not find "at this stage in the litigation" that the defendant was immune from liability under *Noerr-Pennington*.

The same is true here. Although Defendants discussed their opposition to the Bahia redevelopment during the same meeting with Evans Hotels where they made the "grenade" and "stop at nothing" threats, the threats could still reasonably be understood as threats by Defendants to also carry out unprotected activity. Notably, the threats were made within two weeks of Evans Hotels learning that the unions were responsible for destroying the Evans Hotels-SeaWorld joint venture. *Compare* FAC (ECF No. 19) at ¶ 119 (alleging SeaWorld confirmed on November 15, 2018 that it terminated the joint venture "because the unions threatened to target SeaWorld, including its plans to open up new attractions on an annual basis, if it continued in its Joint Venture") *with id.* at ¶ 122 (alleging the "grenade" and "stop at nothing" threats were made on November 27, 2018). In addition, Evans Hotels had previously been the victim of unlawful secondary activity in the 1990s, when Local 30 threatened to picket Evans Hotels' customers if they did not cancel their contracted conferences. *Id.* at ¶¶ 77-78. Given that context, it is improper for this Court to decide on a motion to dismiss that those threats were solely about petitioning activity.

Moreover, in this Court's *Noerr-Pennington* analysis, it discusses the three-part test for when *Noerr-Pennington* applies to conduct incidental to petitioning activity: (1) whether the plaintiff's lawsuit burdens the defendant's petitioning activities; (2) whether the burden on that activity implicates the protection of the Petition Clause; and (3) whether the laws the plaintiff is suing under may be construed to preclude the burden on

petitioning activity.  Order at 9-10.  Although Defendants never discussed that test in their motions, Defendants' statements to Evans Hotels fail the first part of the test.

Holding Defendants accountable for making threats to financially ruin Evans Hotels and continue to place secondary pressure on its business partners and customers unless it agrees to unionize the Bahia does not restrict Defendants' ability to lobby the City Council about whether the Bahia redevelopment meets CEQA and applicable land use requirements.[3]  Nothing about unionization can be incidental to Defendants' lobbying efforts, because whether the Bahia is a unionized hotel was not part of the Defendants' stated opposition, which pertained to the removal of Gleason Road.  FAC at ¶ 81.  Indeed, the San Diego City Attorney determined that the City is federally preempted by the NLRA from imposing a card check neutrality provision as a condition of project approval.  FAC at ¶ 88.

This distinguishes the conduct here from the incidental conduct discussed in *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006).  There, the Ninth Circuit held that whether pre-litigation demand letters were incidental to litigation depended on whether restricting such communications "could impair the right of access to the courts protected by the First Amendment."  *Id*. at 936.  The court recognized that "engag[ing] in negotiations to settle legal claims is a common, if not universal, feature of modern litigation" and, even if unsuccessful, permits the parties to frame their claims, reducing litigation costs and facilitating access to courts.  *Id.*  Restricting those communications "would render the entire litigation process more onerous, imposing a substantial burden on a party's ability to seek redress from the courts."  *Id.*  The court also recognized that protecting private, pre-suit demand letters protects the same interests as actual litigation,

---

[3] Defendants make myriad objections against proposed developments like the Bahia. Many assert that the project has not sufficiently complied with CEQA, while others contend that projects do not comply with general plans or community plans like the Mission Bay Master Plan Update, that plans are not consistent with the Coastal Act, that approval would be inconsistent with other codes or regulations, or that projects should be rejected for a variety of other reasons. Evans refers to these non-environmental categories as "land use" issues.

including "compensation for violated rights and interests, the psychological benefits of vindication, [and] public airing of disputed facts." *Id.* (quoting *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 US 731, 743 (1983)).

None of those reasons applies to Defendants' direct threats to Evans Hotels. Defendants did not – and cannot – argue that restricting private communications demanding unlawful labor concessions in exchange for abandoning objections on entirely different grounds makes lobbying more onerous or that protecting these communications advances the same interests as lobbying on CEQA and land use issues.

Finally, this Court's reliance on *Affordable Housing* was misplaced. Although the Court cited it as authority for the proposition that a statement about future "problems" must be construed in a manner that would be protected by *Noerr-Pennington* (Order at 14), the context there was quite different. First, *Affordable Housing* was decided on summary judgment, so the court considered evidence of how the statement was understood. Rejecting the plaintiff's argument that the threat about future "problems" could be construed as a threat of physical violence unprotected by the First Amendment under *Brandenburg v. Ohio*, 395 U.S. 444 (1969), the court relied on plaintiff's admission "that he did not consider [the defendant's] remarks 'specifically threatening.'" *Affordable Housing*, 2001 U.S. Dist. LEXIS 26378, at *64.

There is no such admission here and the context – coming shortly after the Defendants destroyed Evans Hotels' joint venture – does not foreclose the "grenade" and "stop at nothing" statements from being reasonably understood to include threats of future non-petitioning activity. Because this Court must make inferences from the allegations that are favorable to Evans Hotels at the pleading stage, it erred in finding that the statements referred only to petitioning activity.

### C.   The Court Should Reconsider Its Holding That The Sham Exception To *Noerr-Pennington* Was Not Sufficiently Alleged.

In rejecting Evans Hotels' argument that Defendants' actions are not protected because they fall within the "sham" exception to *Noerr-Pennington*, the Court made two

holdings that Defendants never asserted: (1) Defendants' history of opposing and litigating over proposed developments is irrelevant to Evans Hotels' claims, because Defendants have not filed a lawsuit against Evans Hotels; and (2) that the serial sham exception did not apply because Defendants are not "market rivals" of Evans Hotels. Order at 17. Because Defendants never made these arguments in their motions, Evans Hotels was denied a fair opportunity to show that such arguments are contrary to law.

        1.    <u>Defendants' prior actions against other developers are relevant even though they have not yet sued Evans Hotels over the Bahia redevelopment.</u>

The fact that Defendants have not filed a lawsuit against Evans Hotels does not render their conduct toward other developers irrelevant. No case supports that conclusion, and other cases, including the Supreme Court's decision in *Otter Tail Power Co. v. U.S.*, 410 U.S. 366 (1973), have held that a viable serial sham argument could involve claims where the sham actions were not identical.

The serial sham exception applies when a defendant engages in reflexive or automatic petitioning "without regard to and regardless of the merits of said petitions." *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council, AFL–CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994) (allegations that defendant union engaged in a "pattern of automatic petitioning of governmental bodies" if proven, "would be sufficient to overcome the unions' *Noerr-Pennington* defense"); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1254 (9th Cir. 1982) (allegations that "defendants protested rates automatically, without regard to merit or possible success before the [Interstate Commerce Commission] . . . fall within the sham exception as a matter of law").

Relying on *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991), this Court held that the lawsuits against other developers "'are relevant only to the extent that they demonstrate that [the defendant] was improperly motivated in filing its lawsuit against [the plaintiff].'" Order at 16 (quoting *Mohla*, 944 F.2d at 534). That is true.

However, the Court went on to hold that because Defendants had not yet sued over Evans Hotels' projects, Defendants' prior lawsuits involving other hotel developers were irrelevant.  Order at 17.  Nothing in *Mohla* suggests that a defendant's prior petitioning activities against others become irrelevant if they are not identical to the alleged petitioning (or sham petitioning) activity against the plaintiff.

Notably, the *Mohla* court did not reject consideration of the prior petitions on the ground that they involved "administrative appeals" versus a lawsuit.  That the plaintiff's case involved different procedures was not a factor in the Ninth Circuit's decision.

Nor did the Supreme Court consider the use of different procedures against different targets relevant in *Otter Tail*.  There, the defendant had tried to prevent different towns from replacing its power services with their own municipal power systems.  The defendant had been involved in disputes with 12 different towns in its 510-town service area, but defendant brought lawsuits against only some of them.  *Otter Tail*, 410 U. S. at 371-72 (noting that the defendant "used the weapon of litigation" against two of the four towns that the Court identified by name and that the defendant had "instituted or sponsored litigation involving four towns in its service area," where it had 12 total disputes).  Thus, the defendant acted differently toward different victims.  Nonetheless, the Court remanded for the lower courts to determine the defendant's repetitive filing of lawsuits fell within the sham exception.  Thus, Defendants' history of using lobbying and litigation against other developers to block their developments is relevant as to whether Defendants had an improper motive in opposing the Bahia redevelopment, even though no lawsuit has yet been filed over Evans Hotels' projects.

All the *Mohla* court found was that the plaintiffs' conclusory allegation of serial sham petitioning was not properly pled because it was only "a bare allegation of a history of failed appeals."  *Mohla*, 944 F.2d at 534.

That is not the case here.  In the First Amended Complaint, Evans Hotels has alleged specific facts about the actions Defendants took toward other developers to pressure the City Council and Coastal Commission to deny approval of those projects

and about what happened when those disputes proceeded to litigation.  As set forth in the FAC, Defendants' conduct included:

- Opposing Cisterra's 7th & Market project until Marriott (owner of the Ritz-Carlton brand) agreed to a card check neutrality agreement by: (1) forcing delay in negotiations between the City and Cisterra by insisting on a requirement the San Diego City Attorney found illegal: that all businesses operating in the development accept a card check neutrality agreement; (2) opposing the project at public hearings and in writing by asserting sham environmental claims, such as contesting the adequacy of the project's Environmental Impact Report ("EIR"); (3) filing a baseless CEQA suit using a surrogate organization against the City of San Diego and Cisterra that challenged the City's approval of the project; (4) appealing the Court's finding that substantial evidence existed to support the City's approval; and (5) causing sufficient delay such that Cisterra lost its financing for the project, and one of the expected anchor tenants in the project terminated its agreement with Cisterra.  FAC ¶¶ 57-58.

- Opposing the Town and Country Hotel and Convention Center by: (1) falsely claiming to the Wetlands Advisory Board to have identified "serious flaws" in Town and Country's Draft EIR; (2) submitting a 117-page letter to the City's Development Services Department asserting numerous environmental challenges to the project; and (3) having its members attend public hearings to oppose the project including the adequacy of the environmental review that was completed for the project. After the developer agreed to Defendants' demands, they dropped all opposition and abandoned their environmental claims.  FAC ¶¶ 59-60.

- Opposing Sunroad's Harbor Island Drive hotel project and restaurant project by: (1) attempting to block approval of the EIR for the hotel project, contending that the restaurant project should be considered with the hotel project; (2) attacking the hotel project before the Coastal Commission, asserting a feigned need for low-cost overnight accommodations; and (3) having Brigette Browning meet with the President of Sunroad to deliver the message that Local 30 would do everything in its power to

stop the project because it wanted to set precedent that everyone who goes through the Port of San Diego has to sign a card check neutrality agreement with Local 30.  After years of delay, Sunroad acceded to the union's demands.  FAC ¶ 61.  All opposition was dropped and, thereafter, the unions and its members very publicly supported the project. *Id.* ¶ 62.

- Opposing the Hotel Del Coronado's expansion plan by: (1) appealing approval of the development permits to the California Coastal Commission; (2) filing a complaint against the City of Coronado and the City Council of Coronado, asserting  frivolous CEQA claims that were dismissed by the Superior Court; (3) demanding a full-blown and unnecessary EIR to further stall the City Council's approval; and (4) dropping their appeal of the development permits as soon as the developer agreed to the unions' demands.  FAC at ¶¶ 70-71.

- Opposing the Marriott Marquis project by: (1) appealing the City Council's decision to vacate a water easement, unjustifiably arguing that the project required further analysis under CEQA; (2) opposing the Port of San Diego's approval of a Port Master Plan Amendment for the Marriott's expansion; (3) sending a letter of opposition to the Coastal Commission through its attorneys regarding the Coastal Commission's consideration of the Port Master Plan Amendment; and (4) dropping their opposition as part of a brokered agreement with the Mayor over the Convention Center expansion.[4]  FAC at ¶¶ 72-73.

Unlike the plaintiff in *Mohla*, Evans Hotels is not relying on bare, conclusory allegations of sham actions.  With respect to these five prior developments, Evans Hotels has alleged a detailed pattern of behavior by Defendants like the actions they have taken against Evans Hotels – opposing the project at each stage, asserting baseless

---

[4] The FAC also details Defendants' actions to oppose the Convention Center as a detailed illustration of their "playbook" that ended with Defendants abandoning their appeals of Superior Court dismissals of their lawsuits.  Because the Convention Center involved an agreement with the City, the settlement agreement is publicly available and demonstrates that despite Defendants' lengthy list of CEQA violations, the settlement barely addressed those concerns.  FAC ¶¶ 51-54.

environmental and land use challenges to government bodies like the City Council and Coastal Commission, and, for projects that have obtained approval, filing CEQA challenges in court.  Defendants' challenges were repeatedly rejected by the Coastal Commission, City Council, their staffs, and the courts.  Further, as to each of these five developments, as soon as the developers agreed to Defendants' demands, the opposition – and the purported environmental concerns – evaporated.

Defendants' abandonment of their claims when they obtain what they truly are seeking – unionization – is precisely the type of outcome that the Supreme Court has deemed baseless.  *E.g.*, *Bill Johnson's Restaurants*, 461 U.S. at 747 (explaining that the NLRB may sanction an employer for filing a retaliatory lawsuit "[i]f judgment goes against the employer in the state court . . . *or if his suit is withdrawn* or is otherwise shown to be without merit") (emphasis added).  In the aforementioned disputes, Defendants withdrew their sham environmental claims that the proposed development was inconsistent with existing land use requirements – and in some cases affirmatively supported the projects – once they were able to extract the desired labor concessions.

Likewise, Defendants told Evans Hotels that they would withdraw their opposition to the Bahia redevelopment if it agreed to a card check neutrality agreement and PLA, admitted to using their challenges as "greenmail," and admitted that they would only require "small mitigation measures to cover [their] tracks."  FAC ¶ 92.  Those allegations sufficiently allege that Defendants' challenges are "without merit" and establish a pattern of engaging in reflexive, automatic opposition against hotel developments without regard for the merits of Defendants' claims.[5]

Holding actions toward other developers irrelevant because Defendants have not filed a lawsuit against Evans Hotels also ignores the procedural requirements for CEQA litigation.  When challenging the approval of a permit, the trial court reviews the

---

[5] In its proposed Second Amended Complaint, Evans provides additional detail about Defendants' conduct toward the aforementioned and other developers as well as the reasons Defendants' claims in those disputes were baseless.

decision of the government body or agency based on the record it considered. Opposition to a project in the City Council, Port of San Diego, or Coastal Commission is thus a necessary prerequisite to filing a CEQA lawsuit.  *Clews Land & Livestock, LLC v. City of San Diego*, 19 Cal. App. 5th 161, 186-87 (2017) (plaintiff failed to exhaust administrative remedies by appealing a hearing officer's decision only to Planning Commission, which reviews non-environmental issues, but not to the City Council, which reviews the environmental determination); *Santa Barbara Cnty. Flower & Nursery Growers Ass'n v. Cnty. of Santa Barbara*, 121 Cal. App. 4th 864, 875 (2004) (exhaustion of administrative remedies is required before judicial review of a Coastal Commission decision); *see also* Cal. Pub. Resources Code § 21177 (CEQA's exhaustion provision requires a party to inform an agency of an alleged CEQA violation orally or in writing before filing a CEQA action in court).  Thus, Defendants' opposition to the Bahia redevelopment, just like their similar oppositions to prior hotel developments before the City Council, Port of San Diego, and Coastal Commission, is a necessary first step before filing a lawsuit.  Just because Defendants have not yet reached the point of filing a lawsuit does not immunize their reflexive and baseless opposition to Evans Hotels' projects in keeping with their pattern and practice.  This is even more the case when they themselves have prevented the City Council from ruling on the Bahia project. FAC at ¶¶ 6, 46, 120-21.

Accordingly, the Court should reconsider its holding that Defendants' conduct in prior disputes with developers is irrelevant to the issue of whether Evans Hotels has sufficiently alleged the serial sham exception to *Noerr-Pennington*.

      2.    <u>The sham exception to *Noerr-Pennington* can be satisfied by showing a defendant has an improper motive, not just that it intends to harm a market rival.</u>

Holding that the sham exception applies only when a defendant intended to "injure a market rival," and that Evans Hotels is not a market rival of Defendants, the Court held that Evans Hotels could not sufficiently plead the sham exception.  Order at 17 (citing *USS-POSCO*, 31 F.3d at 811).  Defendants did not argue in their motions that

the sham exception is limited to instances where the defendant's motive is to injure a market rival, nor could they, because that is not the law.

*Noerr-Pennington* originated as a defense to violations of the Sherman Act. For that reason, the improper motive often asserted in claims of sham petitioning was that the defendant's intent was to commit an antitrust injury, *i.e.*, injure a market rival. *USS-POSCO* involved an antitrust claim, so it discussed injury to a market rival. 31 F.3d at 805 (stating that the plaintiff "appeals only the antitrust claims and the imposition of sanctions").

As *Noerr-Pennington* has expanded to encompass other types of claims, so too have the asserted wrongful motivations for engaging in sham petitioning. Thus, for instance, in extending the sham exception to the labor context, the Supreme Court held that the NLRB could enjoin a baseless lawsuit brought "with the intent of retaliating against an employee for the exercise of rights protected by § 7 of the NLRA." *Bill Johnson's Restaurants*, 461 U.S. at 744 (discussing "the 'mere sham' exception" in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972), and "follow[ing] a similar course under the NLRA"). Similarly, the Ninth Circuit has held that the sham exception applies when the defendant's motive was "improper" or "unlawful." *Sosa*, 437 F.3d at 938 (citing *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998)).

This understanding of the intent element of the sham exception was recently confirmed by another court in this Circuit. *Perez v. Directv Grp. Holdings*, No. 8:16-cv-01440-JLS-DFM, 2019 U.S. Dist. LEXIS 209405, at *25-26 (C.D. Cal. July 23, 2019). The plaintiff in *Perez* alleged the defendants violated RICO by engaging in a scheme to extort money from minority business owners through baseless threats of litigation. The defendants argued "that the sham litigation exception cannot apply because 'the . . . Defendants and Plaintiff are not competitors.'" *Id.* at *26. The district court explained that, because "*Noerr-Pennington* has its origins in antitrust . . . the original articulation of the sham litigation exception's second prong was that the litigation had to be 'an

attempt to interfere directly with the business relationships of a competitor.'" *Id.*
"However, in *Sosa*, the Ninth Circuit made clear that, as *Noerr-Pennington* applies to
laws other than the Sherman Act, the second prong of the sham litigation exception
broadly asks whether 'the defendant's motive in bringing [a lawsuit is] unlawful'" and
is not limited to competitors. *Id.* (quoting *Sosa*, 437 F.3d at 938).

Accordingly, this Court erred in holding that Evans Hotels failed to allege the
sham exception because it is not a market rival of Defendants.

3.   <u>Because Evans Hotels pleaded a plausible theory that Defendants'
conduct was sham, the Court should not have granted the Motions to
Dismiss.</u>

"Whether something is a genuine effort to influence government action, or a
mere sham [for Noerr-Pennington purposes], is a question of fact." *Clipper Exxpress*,
690 F.2d at 1253.  "Thus, courts rarely award *Noerr-Pennington* immunity at the motion
to dismiss stage, where the Court must accept as true the non-moving party's well-
pleaded allegations."  *Sonus Networks, Inc. v. Inventergy, Inc.*, No. C-15-0322 EMC,
2015 U.S. Dist. LEXIS 97748, at *5 (N.D. Cal. July 27, 2015); *see also Jarrow
Formulas, Inc. v. Int'l Nutrition Co*., 175 F. Supp. 2d 296, 310-11 (D. Conn. 2001)
(denying motion to dismiss because "all that is required is that the complaint allege
facts, which, if proven, show that the defendant is not entitled to *Noerr-Pennington*
immunity under the sham litigation exception"); *MGA Entm't, Inc. v. Mattel, Inc.*, No.
CV 05-2727 NM (RNBx), 2005 U.S. Dist. LEXIS 18594, at *41 (C.D. Cal. Aug. 26,
2005) (denying motion to strike where plaintiff's allegations "suggest" that the sham
"exception is applicable" because "at least at this stage in the proceedings, the court
cannot say that the *Noerr-Pennington* doctrine, even if applicable, serves as a basis for
striking [plaintiff's] allegations regarding [defendant's] demand letters").

*Total Renal Care, Inc. v. Western Nephrology & Metabolic Bone Disease, P.C.*,
No. 08-cv-00513-CMA-KMT, 2009 U.S. Dist. LEXIS 80821 (D. Col. Aug. 21, 2009), is
particularly instructive.  There, an antitrust plaintiff alleged that the defendant had
engaged in anti-competitive behavior, including a series of sham lawsuits.  Only one of

18

the lawsuits was against the plaintiff; the others sought to enforce noncompete agreements against the defendants' employees to prevent the plaintiff from hiring them. The court held that the plaintiff had sufficiently alleged serial sham actions despite failing to allege how many lawsuits were filed and failing to plead the outcome of those lawsuits.  *Id.* at *36-39.  At the pleading stage, the allegations of numerous, meritless lawsuits for a similar purpose was sufficient to survive a motion to dismiss.  *Id.*

Accordingly, because, under the correct standards for the sham exception, Evans Hotels alleged facts to show that Defendants engaged in reflexive, automatic opposition to developments without regard for the merit of their claims and did so for unlawful purposes, the FAC sufficiently alleged the sham exception to *Noerr-Pennington*.  The Court therefore should reconsider its order granting Defendants' Motions to Dismiss.

## III.    CONCLUSION

For the foregoing reasons, Evans Hotels' Motion for Reconsideration of the Motions to Dismiss should be granted.

Dated:  Feb. 4, 2020               **AKIN GUMP STRAUSS HAUER &**
                                   **FELD LLP**
                                   Susan K. Leader
                                   Rex S. Heinke
                                   Jessica M. Weisel
                                   Rebecca A. Girolamo

                                   **LITTLER MENDELSON, P.C.**
                                   Lawrence D. Levien


                                   By: _____ s/ *Susan K. Leader* _____
                                            Susan Leader
                                       Attorneys for Plaintiffs
                                       sleader@akingump.com

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  1999 Avenue of the Stars, Suite 600, Los Angeles, California 90067.  On February 4, 2020, I served the foregoing document(s) described as: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT** on the interested party(ies) below, using the following means:

**All parties identified for Notice of Electronic Filing
generated by the Court's CM/ECF system under the
referenced case caption and number**

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 4, 2020, at Los Angeles, California.


Hadiss Calderon _____         /s/ *Hadiss Calderon* _____
[Print Name of Person Executing Proof]   [Signature]