William M. Low, Bar No. 106669
wlow@higgslaw.com
Edwin M. Boniske, Bar No. 265701
boniske@higgslaw.com
Geoffrey M. Thorne, Bar No. 284740
thorneg@higgslaw.com
Jacob T. Spaid, Bar No. 298832
spaidj@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, California 92101-7913
Telephone: 619.236.1551
Facsimile: 619.696.1410

Attorneys for Plaintiffs
EVANS HOTELS, LLC; BH PARTNERSHIP LP; and EHSW, LLC

(*Counsel continued on next page*)

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANS HOTELS, LLC, a California limited liability company; BH PARTNERSHIP LP, a California limited partnership; EHSW, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>UNITE HERE! LOCAL 30; BRIGETTE BROWNING, an individual; SAN DIEGO COUNTY BUILDING and CONSTRUCTION TRADES COUNCIL, AFL-CIO; TOM LEMMON, an individual; and DOES 1-10,<br><br>Defendants. | Case No. 3:18-cv-02763-LL-AHG<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**<br><br>Date:  April 1, 2022<br>Ctrm:  2B<br>Judge:  Hon. Linda Lopez<br><br>***PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT*** |

Lawrence D. Levien (*Pro Hac Vice*)
LLevien@littler.com
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011

Daniel J. Mogin, Bar No. 95624
dmogin@moginrubin.com
Jennifer M. Oliver, Bar No. 311196
joliver@moginrubin.com
Timothy Z. LaComb, Bar No. 314244
tlacomb@moginrubin.com
MOGINRUBIN LLP
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610

Attorneys for Plaintiffs
EVANS HOTELS, LLC; BH PARTNERSHIP LP; and EHSW, LLC

# INTRODUCTION

Plaintiffs request leave to add a second antitrust claim. Because leave should be freely given and with extreme liberality, Defendants bear a heavy burden arguing against leave and must show the amendment is a product of undue delay or bad faith, is futile, or will cause prejudice (the most important factor). Defendants do not argue prejudice or bad faith, instead claiming the motion should be denied based on undue delay and futility grounds. But Plaintiffs have not caused undue delay, and Defendants' attempts to recast judicial transfers, two years of largely Defendants' motion practice, and a global pandemic as undue delay caused by Plaintiffs does not counsel otherwise.

Nor is amendment futile. Defendants' opposition is a thinly veiled motion to dismiss. As this Court knows, a motion for leave is not the appropriate place to litigate such issues. The Court should allow amendment and address the adequacy of the claims on Defendants' upcoming motion to dismiss. Doing so allows this Court to further the strong policy favoring litigation of actions completely and on their merits.

Moreover, even considering their arguments, Defendants cannot show that Plaintiffs' claims are futile. Defendants' arguments ignore market realities in favor of formalistic line-drawing designed to gerrymander them out of antitrust liability. This is not how antitrust law functions. As the Supreme Court recognized, "[the Sherman Act] does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers. ... The Act is comprehensive in its terms and coverage, ***protecting all who are made victims of the forbidden practices by whomever they may be perpetrated***." Blue Shield of Va. v. McCready, 457 U.S. 465, 472 (1982) (emphasis added). It reiterated this sentiment a decade later, explaining "[l]egal presumptions that rest on formalistic distinctions rather than actual market realities are generally disfavored in antitrust law." Eastman Kodak Co. v. Image Tech. Servs., 504 U.S. 451, 466-67, 112 S. Ct. 2072, 2082 (1992). It again echoed this view in its most recent antitrust decision, explaining rules that "elevate form ... over substance" should be rejected. Apple Inc. v. Pepper, 139 S. Ct. 1514, 1523 (2019). For these reasons and as argued below, leave should be granted.

3

# ARGUMENT

Defendants fail to show leave should be denied, especially considering the strong policy favoring amendment.

## I.  THERE IS NO "UNDUE DELAY" BY PLAINTIFFS

As detailed in the opening brief, the delays in this case are largely due to factors outside of the parties' control: the COVID-19 pandemic, court closures, resulting court case backlog, and multiple judicial reassignments.

As to Plaintiffs' purported delay in adding their new antitrust claim, the Court did not substantively address Plaintiffs' antitrust claims until its most recent dismissal order. See Doc. 93, p. 61 (observing that the order dated August 26, 2021 was the "first occasion in which it 'address[ed] the Plaintiffs' [antitrust] claims on the merits'"). Defendants' alleged delay argument is also belied by the fact the action is still in the initial stages of litigation, as (*a*) no responsive pleadings have been filed; (*b*) no initial disclosures have been served and no discovery has been conducted by any party; and (*c*) no trial date or related deadlines have been set by the Court. And, finally, the law is clear that "delay, by itself, is insufficient to justify denial of leave to amend." Hoagland v. Axos, No. 20-CV-00807-BAS-DEB, 2021 WL 4924814, at *2 (S.D. Cal., Oct. 21, 2021), quoting DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987); Cejas v. Paramo, No. 14-CV-1923-WQH-WVG, 2018 WL 1637997, at *1 (S.D. Cal. April 4, 20188) (granting leave 3.5 years after filing and noting that "delay alone cannot justify denial of leave").

## II.  LEAVE SHOULD NOT BE DENIED ON THE BASIS OF "FUTILITY"

### A.  Defendants' "futility" arguments are a premature motion to dismiss.

Defendants dedicate 15 pages to arguing the FAC is "futile" based on the Rule 12(b)(6) motion standard. Oppo., pp. 11-25.  While the standard for "futility" is the same, it is not applied equally on motions for leave to amend because "amended claims are more appropriately raised by motion to dismiss rather than in opposition to a motion for leave to amend." Duchemin v. Leidos, Inc., No. 18-cv-00012-GPC-MDD, 2018 WL

4

2229368, at *2 (S.D. Cal. May 16, 2018). As such, courts do not deny leave to amend on futility grounds unless the amended claims would "clearly be subject to dismissal." Id. Thus, "[d]enial of leave for futility is rare." Greenley v. Avis Budget Group, Inc., No. 19-CV-00421-GPC-NLS, 2019 WL 4416129, at *3 (S.D. Cal. Sept. 16, 2019).

As shown herein, Defendants do not establish the FAC would clearly (or even likely) be subject to dismissal. Therefore, the Court should follow the prevailing view and address the antitrust claims in what is surely an upcoming motion to dismiss.

**B.     Defendants failed to establish the FAC is "clearly subject to dismissal."**

Defendants argue the new claims are futile because the underlying allegations are implausible. *See*, *e.g.*, Opp. at 23-24. But, at the pleading stage, *allegations* are presumed true and the court analyzes the plausibility of *claims*. Northbay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc., 838 Fed.Appx. 231, 234 (9th Cir. 2020) ("only the claim needs to be plausible, and not the facts themselves"). Thus, the bulk of Defendants' analysis focusing on the plausibility of allegations, misses the mark.

Moreover, allegations must be considered as a whole when analyzing antitrust claims. Cont'l. Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699 (1962) ("The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."); Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 990-91 (9th Cir. 2000) ("The law requires that every conspiracy be judged as a whole."). Defendants' analysis, based on wrenched and out-of-context attacks on particular facts, is improper.

**i.   The New Antitrust Claim is Not Based on Conduct Protected by *Noerr-Pennington* or the Statutory Labor Exemption.**

Defendants argue Plaintiffs' claims are based on allegations protected by the *Noerr-Pennington* doctrine. Opp. at 11-12. This is false. Regarding Defendants' conduct toward Plaintiffs, Judge Robinson found the sham lobbying exception to *Noerr-Pennington* applied to several of Defendants' petitioning activities, including their allegedly spurious "environmental and land use challenges to the Bahia redevelopment"

5

made to City Councilmembers (i.e., letters sent to Councilmembers objecting to the redevelopment) and "threats to SeaWorld regarding opposition to its future attractions" (i.e., their unlawful secondary boycott). MTD SAC Order at 25-27. These allegations alone can support the existing and proposed antitrust claims. See Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 626-26, 635 (1975) (secondary boycott is not exempt and can form basis of antitrust violation "because it has a potential for restraining competition in the business market in ways that would not follow naturally from elimination of competition over wages and working conditions").[1]

Here, because the Court has already sustained the secondary boycott allegations and *Noerr-Pennington* does not apply to secondary boycotts, *Noerr-Pennington* does not apply. N.L.R.B. v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Local 229, AFL-CIO, 941 F.3d 902, 905-07 (9th Cir. 2019).[2] Moreover, as Plaintiffs explained in their opposition to the most recent motion for reconsideration, there are several additional reasons why *Noerr-Pennington* does not protect Defendants' conduct, many of which have yet to be substantively considered. See, e.g., Opp. to MFR at 12-16 (explaining *Noerr-Pennington* is not properly applied at the pleading stage, does not attach to Defendants' unlawful conduct, and does not protect Defendants' meetings with councilmembers that caused them to violate the Brown Act). Finally, while Judge Robinson did find that *Noerr-Pennington* applied to Defendants' litigation and certain petitioning activities, he did not analyze all alleged exclusionary conduct. See MTD SAC Order at 21-27. If analyzed, much of this conduct will likely not be protected because it mirrors conduct found to fall outside of *Noerr-Pennington*. See,

---

[1] See also Copper Valley Coal Co. v. United Mine Workers of Am., Int'l Union, 753 F.Supp. 580, 582-83 (W.D. Pa. 1990) ("Plaintiff may establish a prima facie antitrust case by showing that the [conduct] … is illegal under the federal labor laws and that the clause or conduct is a material cause of plaintiff's injuries."); Consol. Express, Inc. v. N.Y. Shipping Ass'n, 602 F.2d 494, 521 (3d Cir. 1979) (where unlawful secondary boycott "has been shown to be illegal under federal labor law, a secondary party injured in his business or property by either has made out a prima facie case").

[2] See also Warshawsky & Co. v. N.L.R.B., 182 F.3d at 952 (D.C. Cir. 1999); N.L.R.B. v. Local Union No. 3, IBEW, 477 F.2d 260, 266 (2d Cir. 1973).

e.g., FAC ¶¶ 87-88, 107-08 (engaging in secondary boycott, sending letters to councilmembers containing spurious objections).

Defendants next argue Plaintiffs' antitrust claims are based on allegations protected by the Statutory Labor Exemption. But Judge Robinson concluded "Plaintiffs adequately allege that Defendants' conduct falls outside of the statutory labor exemption with regard to the Bahia redevelopment but not the Seaport Village project." See MTD SAC Order at 35. This, at most, stops Plaintiffs from using facts concerning Seaport Village; but it unambiguously does *not* preclude facts about the other projects targeted by Defendants.

## ii. Plaintiffs Adequately Plead Antitrust Injury

Defendants claim Plaintiffs do not adequately allege antitrust injury because Defendants do not participate in the Relevant Markets or compete against Plaintiffs.[3] Opp. at 16-17. This argument is legally and factually flawed.

Both the Supreme Court and Ninth Circuit have held parties need not serve specific functions such as competitors or consumers for plaintiffs to have antitrust standing. See Blue Shield of Va. v. McCready, 457 U.S. 465, 472 (1982) (the Sherman Act "does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers."); Amer. Ad Mgmt., Inc. v. General Telephone Co. of Calif., 190 F.3d 1051, 1057 (9th Cir. 1999) ("The Supreme Court has never imposed a 'consumer or competitor' test but has instead held the antitrust laws are not so limited."). This is because the Sherman Act "is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated." McCready, 457 U.S. at 472. In fact, in its most recent antitrust decision, the Supreme Court again counseled against rules that "elevate form over substance." Pepper, 139 S. Ct. at 1523 (2019) (parentheticals omitted).

///

---

[3] As detailed below, Judge Robinson was incorrect when holding the parties must compete against each other in the Relevant Markets. MTD SAC Order at 39.

7

Even if required, the FAC alleges Plaintiffs and Defendants participate in Relevant Markets. Plaintiffs operate hotels in the Relevant Product Market and purchase labor in the Relevant Labor Market. FAC ¶¶13, 243. Defendants provide labor that is bought and sold in the Relevant Labor Market and the labor necessary for the Relevant Product Market to exist (construction labor) and function (service labor). FAC ¶ 243, 252. Finally, Defendants serve as gatekeepers in both Relevant Markets given they dictate which hotels can enter and expand in the Relevant Product Market and often dictate which labor can be used in the Relevant Labor Market. FAC ¶¶244, 253. See also Declaration of Chetan Sanghvi, Ph. D., Exhibit "A" to the Declaration of William H. Low ("Sanghvi Decl.")[4], at ¶¶ 19-20, 24-45.

The Supreme Court has also made clear parties need not participate in the same market if the plaintiffs' injuries are "inextricably intertwined with the injury the conspirators sought to inflict." McCready, 457 U.S. at 484. In that case, the Supreme Court held the plaintiffs had standing despite not participating in the relevant market because: (i) the injury was the means by which the defendant achieved its illegal ends; (ii) the injury was the predictable result of the unlawful conduct; (iii) the fact the plaintiffs were not economic actors in the market was irrelevant because their injuries were "inextricably intertwined with the injury the conspirators sought to inflict"; and (iv) the injury was the type Congress sought to redress in providing a private remedy, since the injury "flow[ed] from that which makes the defendants' acts unlawful." Id. at 472-485.[5] The same is true here: Plaintiffs' injuries (i) were how Defendants achieved

---

[4] At the Court's direction, Plaintiffs made brief arguments regarding futility in their motion, but Defendants mostly ignored those issues and raised new issues and arguments that effectively amounted to a disguised motion to dismiss on the issue of "futility." Plaintiffs file this expert declaration in rebuttal to the new arguments raised for the first time in Plaintiff's opposition.

[5] The Ninth Circuit has recently and repeatedly applied McCready to find antitrust injury even though plaintiffs are not consumers or competitors in the relevant market. See Northbay Healthcare, 838 Fed.Appx. at 236 (finding antitrust injury despite fact plaintiff was not a consumer or competitor in the relevant market because plaintiff's injuries "'[were] the very means by which it [was] alleged that [Defendants] sought to achieve its illegal ends'") (quoting McCready, 457 U.S. at 479, 484 n.21); Ellis v. Salt River Project Agric. Improvement & Power Dist., 24 F.4th 1262, 1275(9th Cir. Jan. 31,

their unlawful ends (prevention of construction/expansion of hotels); (ii) were the predictable result (and goal) of Defendants' scheme; (iii) were inextricably intertwined with those Defendants sought to inflict (Defendants admittedly could not unionize without using these tactics); and (iv) were directly caused by Defendants' unlawful acts.

Defendants next claim Plaintiffs "make no plausible, non-conclusory allegations that Defendants' anticompetitive conduct harms consumer welfare, for example by increasing prices or reducing the quality of goods." Opp. at 24. But Defendants fail to explain why the allegations are implausible and ignore specific examples of them preventing entry and explanations of how this harms consumer welfare, including through higher prices and lower quality goods and services. FAC ¶¶ 262-69. see also Sanghvi Decl., at ¶¶ 20-24 (re: competitive harms).

Defendants' argument that Plaintiffs do not plead antitrust injury because they only plead injury to themselves also fails. Opp. at 24. First, it ignores the totality of the playbook allegations (FAC ¶¶ 48-175) and the detailed plot against Plaintiffs (FAC ¶¶ 176-229), which is not permissible. Cont'l Ore, 370 U.S. at 699. When properly considered, Plaintiffs' allegations show that Defendants foreclosed entry and expansion of hotels that did not accede to their demands, causing reduced supply, dampened competition, higher prices, lower quality rooms and services, less innovation, and fewer choices. FAC ¶¶ 262-69; Sanghvi Decl., at ¶¶ 20-24. This caused harm to, *inter alia*, developers, consumers, and non-union laborers. Id. These allegations support several well-recognized antitrust injuries.[6] Second, numerous cases have held that even harm to

---

2022) (finding antitrust standing under *McCready* because injury was "inextricably intertwined with—indeed they are the means of—[Defendant]'s allegedly unlawful scheme" and that the Defendant "cannot escape liability by portraying [Plaintiff's] injury as mere collateral damage of its exclusionary conduct").

[6] See CollegeNET, Inc. v. The Common Application, Inc., 711 Fed.Appx. 405, 406-07 (9th Cir. 2017) (antitrust injury based on "coercive activity GN Netcom, Inc. v. Plantronics, Inc., 967 F.Supp.2d 1082, 1085–87 (D. Del. 2013) (antitrust injury where reduction in supply caused higher prices and fewer choices); A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239, 244 (3d Cir. 2001) (conspiracy that restricted production and entry into market and artificially raised prices paid by wholesalers caused antitrust injury); Roberts v. Legacy Meridian Park Hosp., Inc., No. 3:13-CV-01136-SI, 2014 WL 294549, at *11-13 (D. Or. Jan. 24, 2014) (reduced quality of services in market was antitrust injury).

a single entity caused antitrust injury.[7]

###       iii.   Plaintiffs Adequately Plead the Relevant Labor Market.

Defendants make several ill-founded arguments challenging Plaintiffs' Relevant Labor Market. Defendants first claim the market is not properly pled because Plaintiffs do not explain why it is a distinct market. Opp. at 17-18. This argument is premature because "[t]he definition of the relevant market is a question of fact for the jury." Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1002 (9th Cir. 2008).[8]

Even if considered now, the FAC explains how the Relevant Labor Market is unique, including showing that Defendants view it as a unique market. FAC ¶¶ 254-56; Sanghvi Decl., at ¶ 19. Employers in this market operate large hotels employing many workers and are subject to multiple approval processes given their location (coastal and often on city owned land). FAC ¶¶ 14, 254-55. These factors give Defendants the economic incentive and ability to employ their playbook and force employers to unionize anytime one seeks to enter or expand. FAC ¶¶ 242, 254-55. Due to these unique characteristics, Defendants have successfully foreclosed non-union labor from more than 75% of new projects or significant redevelopments in this market. FAC ¶¶ 246, 257.[9]

---

[7] See, e.g., Ni-Q, LLC v. Prolacta Bioscience, Inc., 407 F.Supp.3d 1153, 1163 (D. Or. 2019) (amendment not futile and antitrust injury alleged based on lost revenue and attorney's fees suffered by single entity); Blue Sky the Color of Imagination, LLC v. MeadWestvaco Corp., No. CV 10-02175 DDP (ANx), 2010 WL 4366849, at *9 (C.D. Cal. Sept. 23, 2010) (the "exclusionary domination of even a single superstore could have an injurious effect on the market for dated goods"); Los Angeles Memorial Coliseum Comm'n v. National Football League, 791 F.2d 1356 (9th Cir. 1986), cert. denied, 484 U.S. 826 (1987) (injury to single competitor was antitrust injury because it was caused by the antitrust violation); CAE Inc. v. Gulfstream Aerospace Corp., No. 15-924-LPS, 2017 WL 3279122 (D. Del. July 28, 2017) (single entity alleged antitrust injury where competitor entered into agreement to withhold data from the plaintiff).

[8] See also High Tech. Careers v. San Jose Mercury News, 996 F.2d 987, 990 (9th Cir. 1993) ("The process of defining the relevant market is a factual inquiry for the jury."); Oahu Gas Serv., Inc. v. Pac. Res., Inc., 838 F.2d 360, 363-64 (9th Cir. 1988).

[9] Defendants' argument contesting the uniqueness of the Relevant Product Market is inconsistent with the FAC and economic principles. See FAC ¶¶ 240-42 (explaining why the Relevant Product Market is unique); Sanghvi Decl., at ¶¶ 5-19 (explaining in detail that the Relevant Product Market is unique).

Defendants next argue their members—not them—provide the labor in the Relevant Labor Market and therefore Plaintiffs' theory fails. Opp. at 19. But this distinction is immaterial. Defendants—not their employees—engaged in the exclusionary tactics that harmed Plaintiffs and competition. And the Supreme Court has made clear the "expansive remedial purpose" of the antitrust laws is to "deter violators and deprive them of the fruits of their illegal actions." McCready, 457 U.S. at 472. Moreover, several courts have upheld antitrust claims against unions for restraints in labor markets even though their members provided the labor.[10] See also Sanghvi Decl., at ¶ 19 (explaining unions clearly participate in labor markets from an economics perspective).

Defendants then argue Plaintiffs identify no relevant restraint in the Relevant Labor Market. Opp. at 19. This argument is demonstrably false. Plaintiffs allege "[t]hrough their exclusionary playbook, Defendants prevent non-union projects from going forward by either ensuring necessary approvals are not given (e.g., City Council approval for the Bahia redevelopment) or driving up costs to such an extent that non-union projects are abandoned," which "significantly reduced competition from non-union construction and/or service labor in the Relevant Labor Markets, particularly as it relates to labor for constructing and operating new hotels or hotels undergoing redevelopment." FAC ¶ 264.

Defendants then argue Plaintiffs lack prudential standing to the extent their claims are premised on the exclusion of non-union labor from the Relevant Labor Market because Plaintiffs "'must assert [their] own rights,' not 'the legal rights or interests of third parties.'" Opp. at 19. But Plaintiffs are not asserting the legal rights of excluded laborers; Plaintiffs are asserting their own legal rights based on injuries they suffered as a direct result of Defendants' restraints in the Relevant Labor Market. FAC ¶¶ 270-71.

---

[10] See, e.g., Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616 (1975); Icon at Panorama, LLC v. SW. Reg'l. Council of Carpenters, No. 2:19-cv-00181-CBM(MRWX), 2019 WL 7205899 (C.D. Cal. Aug. 7, 2019); Ehredt Underground v. Commonwealth Edison Co., 830 F.Supp. 1083, 1090 (N.D. Ill. 1993).

This is akin to a consumer (Plaintiffs) who pays higher prices because a seller (Defendants) excluded rivals (non-union labor). The consumer is asserting its rights based on its injuries caused by the exclusion – not the rights of excluded rivals.

Finally, Defendants argue they have blanket immunity when acting to increase unionization, claiming "anti-competitive restraints directed at increasing a labor market's unionization are not actionable." Once again, Defendants' argument is contradicted by clear Supreme Court precedent. In *Connell*, the Supreme Court noted there was "no evidence that the union's goal was anything other than organizing as many subcontractors as possible" and that this goal was "legal." Connell, 421 U.S. at 625. Even so, the Supreme Court refused to exempt the conduct because "the methods the union chose are not immune from antitrust sanctions simply because the goal is legal" because the "direct restraint on the business market has substantial anticompetitive effects, both actual and potential, that would not follow naturally from the elimination of competition over wages and working conditions" and "contravenes antitrust policies to a degree not justified by congressional labor policy." Id.

The same is true here. Plaintiffs are challenging the methods Defendants use to achieve unionization—not their right to unionize. Defendants place direct restraints on the Relevant Markets and those restraints have substantial anticompetitive effects that do not follow naturally from the elimination of competition over wages and working conditions and contravene antitrust policies to a degree not justified by labor policy.

## CONCLUSION

For these reasons, the Court should permit leave to file the FAC, as doing so will further the strong policies favoring amendment and deciding cases fully on their merits.

DATED: March 25, 2022                     HIGGS, FLETCHER & MACK LLP

By: */s/ William M. Low*
WILLIAM M. LOW
Attorneys for Plaintiffs EVANS HOTELS, LLC; BH PARTNERSHIP LP; and EHSW, LLC