Richard G. McCracken, SBN 62058
Paul L. More, SBN 228589
Luke Dowling, SBN 328014
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Tel:    415-597-7200
Fax:    415-597-7201
Email:  rmccracken@msh.law
        pmore@msh.law
        ldowling@msh.law

*Attorneys for Defendants UNITE HERE Local 30 and Brigette Browning*

Stacey Monica Leyton, SBN 203827
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel:    415-421-7151
Fax:    415-362-8064
Email:  sleyton@altshulerberzon.com

*Attorneys for Defendants Tom Lemmon and San Diego Building and
Construction Trades Council*

Steven Todd Coopersmith, SBN 184646
Philippa S. Grumbley, SBN 265135
THE COOPERSMITH LAW FIRM
555 W Beech St., Suite 230
San Diego, CA 92101
Tel:    619-238-7360
Fax:    619-785-3357
Email:  stc@stevecoopersmithlaw.com
        psg@stevecoopersmithlaw.com

*Attorneys for Defendant Tom Lemmon*

///
///
///
///
///

---

DECLARATION OF PAUL L. MORE                    CASE NO. 18-cv-02763-LL-AHG

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANS HOTELS, LLC, a California limited liability company; BH PARTNERSHIP LP, a California limited partnership; EHSW, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> UNITE HERE LOCAL 30; BRIGETTE BROWNING, an individual; SAN DIEGO COUNTY BUILDING and CONSTRUCTION TRADES COUNCIL, AFL-CIO; TOM LEMMON, an individual; and DOES 1-10, <br><br> Defendants. | CASE NO. 18-cv-02763-LL-AHG <br><br> **DECLARATION OF PAUL L. MORE IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16.** <br><br> The Honorable Linda Lopez <br><br> Hearing Date: Tuesday, May 10, 2022 <br><br> **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

I, Paul L. More, hereby declare:

1.     I am an attorney licensed to practice law in California and attorney of record for Defendants UNITE HERE Local 30 and Brigette Browning ("Local 30 Defendants").  I offer this declaration in support of Defendants' Motion for Attorneys' Fees and Costs Pursuant to California Code of Civil Procedure § 425.16.  It is based on my own personal knowledge, and if called as a witness, I could and would testify to the following matters.

2.     I am a partner with the law firm McCracken, Stemerman & Holsberry LLP ("MSH"), which was called Davis, Cowell & Bowe LLP until January 1, 2017.  I have been a partner with McCracken, Stemerman & Holsberry (and, before January 1, 2017, Davis, Cowell & Bowe) since January 1, 2010.  From September 2004 through December 2009, I was an associate with Davis, Cowell & Bowe.

3.     Since the inception of the case on December 7, 2018, I have been the billing partner responsible for supervising all work on the case.  The Local 30 Defendants seek attorneys' fees on a total of 77.5 attorney hours spent defending against Plaintiffs' state-law causes of action through the entry of the Courts' order dismissing those causes of action on August 26, 2021.  The Local 30 Defendants do not seek attorneys' fees for time it spent litigating Plaintiffs' federal causes of action. The total hours that the Local 30 Defendants claim break down as follows: 59.5 hours by Paul More, a partner who graduated law school in 2003 and 18 hours by David Barber, a former associate who graduated law school in 2013.

4.     In addition, the Local 30 Defendants claim the 22 hours in fees that Luke Dowling spent preparing this motion and drafting my declaration and 10 hours that I spent drafting and revising this motion.  Luke Dowling graduated from law school in 2019. The Local 30 Defendants will supplement its fee request to reflect the full time spent on this motion (including any reply brief) if fees are awarded.

DECLARATION OF PAUL L. MORE                    CASE NO. 18-cv-02763-LL-AHG

5.     The Local 30 Defendants seek the following rates for work performed in defending against Plaintiffs' state-law causes of action: $700 for Paul More, $480 for David Barber, and $300 for Luke Dowling.

**Reasonable Hours Expended**

6.     The Local 30 Defendants claim fees for a total of 77.5 hours spent in successfully defending against Plaintiffs' state-law claims through August 26, 2021 as well as 32 hours preparing this motion and declaration for a total of 109.5 hours. Attached to this Declaration as **Exhibit 1** are details of the date, attorney, and hours being claimed for McCracken, Stemerman & Holsberry attorneys through August 26, 2021, as well as a description of the services rendered.  These billing records were compiled by my firm's in-house bookkeeper and exported to an Excel spreadsheet from computer entries completed by the individual attorney at or about the time the work was performed by recording the amount of time worked, broken down by 1/10 hour periods.  I have reviewed these time entries to assure their reasonability and that they pertain to matters relating to the Local 30 Defendants' defense against Plaintiffs' state-law claims.

7.     The hours incurred in this case were actually billed to the Local 30 Defendants on a monthly basis. The Local 30 Defendants paid these bills or will pay them (in the case of bills that are still outstanding).

8.     Exhibit 1 reflects fewer hours than the actual number of hours that were devoted to defending against state-law claims and litigating the anti-SLAPP motions. Each month, before bills were sent to the Local 30 Defendants, I exercised billing judgment by deleting any time entries that were, in my view, duplicative, redundant, or excessive.

9.     I have deleted billing records that do not pertain to defending against Plaintiffs' state-law claims, including billing entries solely related to the Local 30 Defendants' motions to dismiss federal causes of action contained in the complaint and collateral matters. Portions of the time spent on motions to dismiss the complaints is

DECLARATION OF PAUL L. MORE                          CASE NO. 18-cv-02763-LL-AHG

recoverable because it was spent briefing the successful theory that Plaintiffs' state law claims are preempted by Section 303 of the Labor-Management Relations Act. *See Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1182–84 (S.D. Cal. 2008) (holding hours spent on common issues of law in a motion to dismiss are recoverable under anti-SLAPP statute). But because the recorded time spent on the motions to dismiss was not apportioned by legal theory, the Local 30 Defendants do not seek a fee award for any of the time spent drafting the motions to dismiss.

10.     Where a time entry included tasks related to the anti-SLAPP motion and time not related to the anti-SLAPP motion or research into grounds for dismissal of the state-law theories, the time column of Exhibit 1 includes only the time spent on tasks related to the anti-SLAPP motion. I have included in the description the total amount of time spent on all tasks under that entry for comparison.

11.     The hours incurred in this case were necessary for the success of Defendants' three anti-SLAPP motions. Defendants were required to file three anti-SLAPP motions and three motions to dismiss addressing four different state law claims, which were pled in the Complaint, First Amended Complaint, and Second Amended Complaint.  My firm took the lead role in researching and drafting the anti-SLAPP motions.  At all times the law firms representing Defendants in this case coordinated to avoid redundancy and duplication of effort.  Our billing records reflect a detailed breakdown of these tasks.

**Reasonable Hourly Rate**

12.     The Local 30 Defendants are seeking rates of $700 per hour for Paul More, $480 per hour for David Barber, and $300 per hour for Luke Dowling. These rates are reasonable and, in fact, significantly below market rates for attorneys of comparable qualifications in the San Diego area.  These rates are claimed based on the following information.

13.     **Paul L. More.**  I am a partner at McCracken, Stemerman & Holsberry.  I am a 2003 graduate of the University of California, Berkeley, from which I graduated

1   in the top 5% of my class and was elected to the Order of the Coif.  During law school,

2   I was the Editor-in-Chief of the Berkeley Journal of Employment and Labor Law.

3   After law school, I clerked for the Honorable James R. Browning of the U.S. Court of

4   Appeals for the Ninth Circuit (2003-2004).  I also have an M.A. from the University of

5   California, Los Angeles Luskin School of Public Affairs, where I specialized in urban

6   and regional economic development policy, and a B.A., *magna cum laude*, from

7   Brown University.  I am a member of the State Bars of California, Nevada, and

8   Massachusetts.

9        14.    I have been lead counsel or co-counsel on many cases in the federal and

10  California courts involving significant questions of law, including *UNITE HERE*

11  *Local 355 v. Mulhall*, 134 S.Ct. 594 (2013), dismissed as improvidently granted after

12  oral argument [addressing the legality of organizing agreements between employers

13  and unions under 29 U.S.C. § 186]; *Airline Serv. Providers Ass'n v. Los Angeles*

14  *World Airports*, 873 F.3d 1074 (9th Cir. 2017) [upholding labor-peace policy over

15  federal labor-law preemption challenge]; *Am. Hotel & Lodging Ass'n v. City of Los*

16  *Angeles*, 834 F.3d 958 (9th Cir. 2016) [upholding Los Angeles hotel minimum-wage

17  law over federal labor preemption challenge]; *S. Bay Boston Mgmt. v. Unite Here,*

18  *Local 26*, 587 F.3d 35 (1st Cir. 2009) [upholding labor-management agreement over

19  federal labor preemption challenge]; *Ralphs Grocery Company v. United Food and*

20  *Commercial Workers Union Local 8*, 55 Cal.4th 1083 (2012) [upholding the

21  constitutionality of Labor Code § 1138.1 and C.C.P. § 527.3 (the Moscone Act)];

22  *Monterey/Santa Cruz Cty. Bldg. & Const. Trades Council v. Cypress Marina Heights*

23  *LP*, 191 Cal.App.4th 1500 (2011) [upholding prevailing-wage requirement on the

24  multi-billion dollar redevelopment of the former Fort Ord in Monterey]; *Rubalcava v.*

25  *Martinez*, 158 Cal.App.4th 563 (2007) [upholding validity of Los Angeles living wage

26  ordinance against constitutional challenge by hotels].

27       15.    I have been named a Northern California Super Lawyer each year since

28  2019 and, previously, a Northern California Rising Star by Super Lawyers Magazine.

In 2011, I was named a "Top 100 Lawyer" in California by the Los Angeles and San Francisco Daily Journal

16.   **David Barber.** David Barber was a former associate at McCracken, Stemerman & Holsberry, LLP.  David L. Barber was an associate attorney at McCracken, Stemerman & Holsberry from 2013 until 2019.  He has been counsel on trial and appellate cases in state and federal courts as well as litigating before various administrative tribunals and private arbitrators.  He was lead counsel in *UNITE HERE Local 1 v. Hyatt Corporation*, 862 F.3d 588 (2017) [establishing viability of cease and desist orders in labor arbitration] and *Heat & Frost Insulators and Allied Workers Local 16 v. Labor Commissioner*, 134 Nev. 1 (2018) [clarifying procedural prerequisites to seeking judicial review of administrative determinations].  In addition to labor and employment matters, he has represented plaintiffs in False Claims Act cases and has represented both debtors and creditors in bankruptcy proceedings.  He is a 2013 graduate of Harvard Law School, where he was a member of the Harvard Legal Aid Bureau and represented indigent litigants in housing and employment matters.

17.   **Luke Dowling**. Luke Dowling has been an associate attorney at McCracken, Stemerman & Holsberry since 2019.  He is a 2019 graduate of Harvard Law School where he received a Dean's Scholar Prize in Corporations (given in recognition of outstanding work in the class) and served as Lead Articles Editor on the Harvard Civil Rights-Civil Liberties Law Review.  He has been counsel on trial cases in state and federal courts, including representing plaintiffs in a False Claims Act case and a union that intervened in a federal court action to defend legislation beneficial to its members.  He also has litigated before private arbitrators and assisted in researching and drafting motions in state and federal courts.  He also holds a B.A. *magna cum laude* as well as an M.A. in Philosophy from Brown University.

18.   The reasonableness of the hourly rates the Local 30 Defendants are claiming in this case is reflected in the attached declaration of Richard Pearl that was submitted in support of the claimed attorneys' fee rates in *Garnier v. Poway Unified*

DECLARATION OF PAUL L. MORE                    CASE NO. 18-cv-02763-LL-AHG

*School District¸* No. 3:17-cv-02215-BEN-JLB (S.D. Cal. 2021). This declaration is attached as **Exhibit 2**. Mr. Pearl is the author of the treatise California Attorney Fee Awards (3rd ed. Cal. CEB 2010), the definitive treatise on attorneys' fees in California, and other authoritative materials on attorneys' fees. Exhibit 2 at ¶ 4. Mr. Pearl cites various cases in which courts have awarded attorneys' fees in excess of $700 for attorneys with fewer than 19 years' experience (as I have), fees in excess of $400 for attorneys with fewer than 9 years' experience (as David Barber has), and fees in excess of $300 for attorneys with fewer than 3 years' experience (as Luke Dowling has).

19.     In further support, the Local 30 Defendants also attach the declarations of Richard Pearl that was submitted in support of MSH's attorneys' fee rates in *UEBT v. Sutter Health*, No. CGC 14–538451 (Cal. Sup. Ct. 2021) and *City of Oakland v. Oakland Police and Fire Retirement System*, No. RG11580626 (Cal. Sup. Ct. 2019). These are attached as **Exhibit 3** and **Exhibit 4**. In both declarations, Mr. Pearl cites further examples of firms that charge higher hourly rates for attorneys of similar experience.

20.     Another benchmark for the reasonability of these rates is the so-called *Laffey* matrix.  The *Laffey* matrix was named after the case in which it was first devised, *Laffey v. Northwest Airlines* (D.D.C. 1982) 572 F.Supp. 354, 371 [*aff'd in part, rev'd in part on other grounds*, (D.C. Cir. 1984) 746 F.2d 4].  The appropriateness of the *Laffey* matrix to measure the reasonability of hourly rates in California legal markets has been recognized by both state and federal courts. (See, e.g., *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 651-653 [accepting *Laffey* matrix as measure of reasonability of fees, and rejecting appellant's argument that only actual fees incurred were reasonable]; *Animal Blood Bank, Inc. v. Hale* (E.D. Cal. Nov. 19, 2012) 2:10-CV-02080 KJM, 2012 WL 5868004 [adopting use of *Laffey* matrix to award reasonable fees]; *Craigslist, Inc. v. Naturemarket, Inc.* (N.D. Cal. 2010) 694 F. Supp. 2d 1039, 1067.)

DECLARATION OF PAUL L. MORE                    CASE NO. 18-cv-02763-LL-AHG

21.     Where the use of the *Laffey* matrix has been criticized, it is because the matrix underestimates the actual prevailing rates.  (*Am. Civil Liberties Union of N. California v. Drug Enforcement Admin*. (N.D. Cal. Nov. 8, 2012) 11-CV-01997 RS, 2012 WL 5951312 ["where use of the *Laffey* matrix has been disapproved, it has been because it produced a rate that the court determined was *too low*" (emphasis in original)]; *Theme Promotions v. News America Marketing* (N.D. Cal. 2010) 731 F.Supp.2d 937, 948-949 [applying local adjuster to increase *Laffey* matrix rates]; *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702 (2014) [applying local adjuster to the Laffey matrix to reflect higher cost of living in San Francisco].)

22.     The "Adjusted *Laffey* Matrix" calculates current hourly rates by using the inflation rate for legal services instead of inflation rate for consumer prices generally. It can be found at the website http://www.laffeymatrix.com/see.html and a copy of this matrix is attached as **Exhibit 5**.  Decisions that have specifically approved the Adjusted Laffey Matrix include *Bond v. Ferguson Enterprises* (E.D. Cal. June 30, 2011) 1:09-CV-1662, 2011 WL 2648879 at p. *12 [citing adjusted *Laffey* matrix fees as reasonable]; *Interfaith Community Org. v. Honeywell Int'l* (3d Cir. 2005) 426 F.3d 694, 708-9.  According to the Adjusted Laffey Matrix for 2021–2022, for attorneys with between 11 and 19 years of experience, the reasonable hourly rate is $764 per hour; for attorneys with between 8 and 10 years of experience, the reasonable rate is $676 per hour; and for attorneys with between 1-3 year of experience, the reasonable hourly rate is $381, which are significantly more than the rates the Local 30 Defendants claim here.

23.     Using the reasonable rates described in paragraph 10 and applying them to the hours claimed, as described in paragraphs 3, 4 and 6, the following lodestar amount results, presented here by attorney:

| Attorney | Graduation | Hours | Rate | Attorney Lodestar |
|---|---|---|---|---|
| Paul L. More | 2003 | 69.5 | $700 | $48,650 |

DECLARATION OF PAUL L. MORE                                    CASE NO. 18-cv-02763-LL-AHG

| David Barber | 2013 | 18 | $480 | $8640 |
| Luke Dowling | 2019 | 22 | $300 | $6600 |
| Total | | 109.5 | | $63,890 |

24.     McCracken, Stemerman & Holsberry provides its services primarily to civil-rights litigants, non-profit organizations, and labor unions representing workers in lower-wage industries, including the retail, hospitality, restaurant, and sanitation sectors.  We keep our hourly rates below what we believe to be the market rate for attorneys of similar qualifications so that our services remain affordable for these clients.

25.     On March 29, 2022, my co-counsel and I had a phone call with counsel for Plaintiffs' William Low to discuss thoroughly the substance of the instant motion and potential resolutions. We were unable to reach a resolution that eliminated the need to file this motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on April 5, 2022 at San Francisco, California.

_____

PAUL L. MORE

## CERTIFICATE OF SERVICE

I am employed in the city and county of San Francisco, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is: 595 Market Street, Suite 800, San Francisco, California 94105.

On April 5, 2022, I served a copy of the foregoing document

**DECLARATION OF PAUL L. MORE IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16.**

on the interested party(s) in this action, as follows:

### *By ECF System - Court's Notice of Electronic Filing:*

Susan K. Leader
Akin Gump Strauss Hauer & Feld
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067
310-229-1000

*Attorneys for Plaintiffs*

William M. Low, Bar No. 106669
wlow@higgslaw.com
Edwin M. Boniske, Bar No. 265701
boniske@higgslaw.com
Geoffrey M. Thorne, Bar No. 284740
thorneg@higgslaw.com
Jacob T. Spaid, Bar No. 298832
spaidj@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, California 92101-7913

*Attorneys for Plaintiffs*

Stacey Monica Leyton, SBN 203827
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Email:
sleyton@altshulerberzon.com

*Attorneys for Defendants Tom Lemmon and San Diego Building and Construction Trades Council*

Steven Todd Coopersmith, SBN 184646
Philippa S. Grumbley, SBN 265135
THE COOPERSMITH LAW FIRM
555 W Beech St., Suite 230
San Diego, CA 92101
Tel:     619-238-7360
Fax:    619-785-3357
Email:  stc@stevecoopersmithlaw.com
             psg@stevecoopersmithlaw.com

*Attorneys for Defendant Tom Lemmon*

I declare under penalty of perjury under the laws of the State of California that

1

1   the foregoing is true and correct.

2          Executed on this April 5, 2022, at San Francisco, California.

3

4

5                                    Katherine Pierre

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE                              CASE NO. 18-cv-02763-LL-AHG

Exhibit 1 to Declaration of Paul L. More

3/10/2022             McCRACKEN, STEMERMAN HOLSBERRY, LLP
1:51 PM             Slip - Export to Excel TIME.UNITE*1585             Page 1

|  | Selection Criteria |
|---|---|
| Slip.Classification | Open |
| Slip.Slip Type | Time |
| Clie.Selection | Include: UNITE*1585*Local 30 |

| Date | TK | Description | Rate | Time | Value |
|---|---|---|---|---|---|
| 2/11/2019 | DB | Research procedural issues about using California anti-SLAPP in federal court; start drafting special motion to strike. | $250.00 | 2.10 | $525.00 |
| 2/12/2019 | DB | Research and draft anti-SLAPP motion. | $250.00 | 5.00 | $1,250.00 |
| 2/13/2019 | DB | Research and draft anti-SLAPP motion. | $250.00 | 2.00 | $500.00 |
| 2/19/2019 | DB | Revise anti-slapp motion, including researching additional cases. | $250.00 | 2.00 | $500.00 |
| 2/19/2019 | DB | Draft anti-slapp motion request for judicial notice. | $250.00 | 0.90 | $225.00 |
| 2/19/2019 | DB | Incorporate and revise anti-slapp motion according to co-counsel edits. | $250.00 | 2.00 | $500.00 |
| 2/20/2019 | DB | Revise anti-SLAPP motion, edit, proofread all documents for filing. | $250.00 | 2.20 | $550.00 |
| 2/14/2019 | PLM | Draft and revise anti-SLAPP motion | $275.00 | 2.00 | $550.00 |
| 2/18/2019 | PLM | Revise anti-SLAPP motion; email to co-counsel D. Barber | $275.00 | 1.00 | $275.00 |
| 4/11/2019 | PLM | Research, draft and revise motion to dismiss amended complaint; draft anti-SLAPP complaint; review draft of Building Trades brief on RICO and antitrust | $275.00 | 8.00 | $2,200.00 |
| 4/12/2019 | PLM | Prepare motion to dismiss and anti-SLAPP motion for filing; edits to Building Trades brief on RICO and antitrust; phone call S. Leyton, co-counsel | $275.00 | 4.00 | $1,100.00 |
| 6/6/2019 | PLM | Research and draft reply brief in support of motion to dismiss complaint; research and draft reply in support of anti-SLAPP motion; review Building Trades motion to dismiss reply | $275.00 | 20.00 | $5,500.00 |
| 6/7/2019 | PLM | Draft, revise reply brief in support of motion to dismiss; draft and revise reply in support of anti-SLAPP motion; review and comment on Building Trades reply re motion to dismiss | $275.00 | 10.00 | $2,750.00 |
| 1/10/2020 | DB | Research whether motion to dismiss ruling moots anti-SLAPP motion to strike in federal court. | $250.00 | 1.80 | $450.00 |
| 1/8/2020 | PLM | Draft email to client about Evans order dismissing; research re case law on anti-SLAPP motions post-dismissal | $275.00 | 0.70 | $192.50 |
| 4/22/2020 | PLM | Research and begin outlining revised anti-SLAPP motion re Second Amended Complaint; begin drafting motion to dismiss Second Amended Complaint | $275.00 | 8.00 | $2,200.00 |
| 4/29/2020 | PLM | Research and draft anti-SLAPP motion re Second Amended Complaint | $275.00 | 7.00 | $1,925.00 |
| 5/15/2020 | PLM | Research and draft anti-SLAPP motion | $275.00 | 10.00 | $2,750.00 |

**Exhibit 1**
1-1

McCRACKEN, STEMERMAN HOLSBERRY, LLP
Slip - Export to Excel TIME.UNITE*1585

| Date | TK | Description | Rate | Time | Value |
|---|---|---|---|---|---|
| 5/17/2020 | PLM | Revise motion to dismiss Second Amended Complaint and anti-SLAPP motion; review BTD motion to dismiss | $275.00 | 6.00 | $1,650.00 |
| 5/18/2020 | PLM | Revise and edit motion to dismiss Second Amended Complaint and anti-SLAPP motion; revise Building Trades motion to dismiss | $275.00 | 6.00 | $1,650.00 |
| 5/19/2020 | PLM | Prepare motion to dismiss Second Amended Complaint and anti-SLAPP motion for filing | $275.00 | 2.50 | $687.50 |
| 6/16/2020 | PLM | Review opposition to motion to dismiss, opposition to anti-SLAPP motion | $275.00 | 1.00 | $275.00 |
| 6/27/2020 | PLM | Draft reply in support of anti-SLAPP motion to strike | $275.00 | 6.00 | $1,650.00 |
| 6/28/2020 | PLM | Revise Evans Reply Briefs ISO motion to dismiss and anti-SLAPP motion | $275.00 | 1.00 | $275.00 |
| 6/29/2020 | PLM | Draft and revise reply ISO anti-SLAPP motion; revise reply ISO motion to dismiss | $275.00 | 5.00 | $1,375.00 |
| 6/30/2020 | PLM | Revise Evans Reply Briefs ISO motion to dismiss and anti-SLAPP motion | $275.00 | 1.00 | $275.00 |
| 2/27/2022 | PLM | Review file, past anti-SLAPP motions and decision on motion to dismiss; memo to L. Dowling re fees motion on anti-SLAPP | $275.00 | 0.50 | $137.50 |
| Grand Total | | | | | |
| | | | | 117.70 | $156,077.50 |

**Exhibit 1**
**1-2**

Exhibit 2 to Declaration of Paul L. More

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION FOR
AWARD OF ATTORNEY FEES**

Declaration of Richard M. Pearl

**Exhibit 2
2-1**

# DECLARATION OF RICHARD M. PEARL

I, Richard M. Pearl, declare:

1.      I am a member in good standing of the California State Bar. I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California.  I specialize in issues related to court-awarded attorneys' fees, including the representation of parties in fee litigation and appeals, serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys' fees and related issues.

2.      In this case, I have been asked by Plaintiffs' attorney Cory Briggs to render my opinion on the reasonableness of the hourly rates Plaintiffs are requesting for his work in this matter.[1] I make this declaration in support of Plaintiffs' motion for reasonable attorneys' fees.  The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.      To form my opinion as to the reasonableness of the hourly rates that Plaintiffs' counsel requests for his work on this case, I have reviewed Mr. Briggs' qualifications and experience,  Plaintiffs' Trial Brief, Closing Brief, and the Court's Judgment and Findings of Fact and Conclusions of Law. Based on working with Mr. Briggs on prior cases and my knowledge of his work, I also am quite familiar with the high level of Mr. Briggs's  work, his vast experience as a public interest attorney, and the hourly rates he has requested in the past.

## **My Background and Experience**

3.      Briefly summarized, my background is as follows: I am a 1969

---

[1] I have not been asked to express an opinion regarding the number of hours and the tasks performed that are a component of Plaintiffs' fee request because Plaintiff's counsel do not believe expert opinion on that issue is required.  I agree, and the absence of any testimony from me on the reasonableness of the number of hours spent or the tasks performed does not in any way reflect a negative view of their reasonableness.

1   graduate of Berkeley School of Law (formerly Boalt Hall), University of California,

2   Berkeley, California. I took the California Bar Examination in August 1969 and

3   passed it in November of that year, but because I was working as an attorney in

4   Atlanta, Georgia for the Legal Aid Society of Atlanta (LASA), I was not admitted to

5   the California Bar until January 1970. I worked for LASA until the summer of 1971,

6   when I then went to work in California's Central Valley for California Rural Legal

7   Assistance, Inc. (CRLA), a statewide legal services program. From 1977 to 1982, I

8   was CRLA's Director of Litigation, supervising more than fifty attorneys.  In 1982, I

9   went into private practice, first in a small law firm, then as a sole practitioner.

10   Martindale Hubbell rates my law firm "AV."  I also have been selected as a

11   Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008,

12   2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, and 2020.  A true and

13   correct copy of my Resume is attached as Exhibit "E."

14        4.    Since 1982, my practice has been a general civil litigation and appellate

15   practice, with an emphasis on cases and appeals involving court-awarded attorneys'

16   fees. I have lectured and written extensively on court-awarded attorneys' fees.  I

17   have been a member of the California State Bar's Attorneys' Fees Task Force and

18   have testified before the State Bar Board of Governors and the California

19   Legislature on attorneys' fee issues.  I am the author of California Attorney Fee

20   Awards (3d ed Cal. CEB 2010) and its 2011, 2012, 2013, 2014, 2015, 2016, 2017,

21   2018, and March 2020 Supplements. I also was the author of California Attorney

22   Fee Awards, 2d Ed. (Calif Cont. Ed. of Bar 1994), and its 1995, 1996, 1997, 1998,

23   1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 Supplements.

24   This treatise has been cited by the California appellate courts on more than 35

25   occasions. *See, e.g., Graham v. DaimlerChrylser Corp.,* 34 Ca1.4th 553, 576, 584

26   (2004); *Lolley v. Campbell,* 28 Ca1.4th 367, 373 (2002); *Equilon Enters. v.*

27   *Consumer Cause, Inc.,* 29 Ca1.4th 53, 62 (2002); *In re Conservatorship of Whitley,*

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**Exhibit 2
2-3**

1    50 Cal.4th 1206, 1214-15, 1217 (2010); *Chodos v. Borman,* 227 Cal.App.4th 76,

2    100 fn. 12 (2014); *Chacon v. Litke,* 181 Cal.App.4th 1234, 1259 (2010); *Syers*

3    *Properties Ill, Inc. v. Rankin,* 226 Cal.App.4th 691, 698, 700 (2014). Federal

4    courts also have cited it. *See In re Hurtado*, Case No. 09-16160-A-13, 2015 WL

5    6941127 (E.D. Cal. Nov. 6, 2015); *TruGreen Companies LLC v. Mower Brothers,*

6    *Inc.,* 953 F. Supp. 2d 1223, 1236 nn.50, 51 (D. Utah 2013).  I also authored the

7    1984, 1985, 1987, 1988, 1990, 1991, 1992, and 1993 Supplements to its

8    predecessor, CEB's California Attorney's Fees Award Practice.  In addition, I

9    authored a federal manual on attorneys' fees entitled "Attorneys' Fees: A Legal

10   Services Practice Manual," published by the Legal Services Corporation. I also

11   co-authored the chapter on "Attorney Fees" in Volume 2 of CEB's Wrongful

12   Employment Termination Practice, 2d Ed. (1997).

13       5.    More than 95% of my practice is devoted to issues involving court-

14   awarded attorney's fees.  I have been counsel in over 200 attorneys' fee applications

15   in state and federal courts, primarily representing other attorneys. I also have briefed

16   and argued more than 40 appeals, at least 30 of which have involved attorneys' fees

17   issues. I have successfully handled five cases in the California Supreme Court

18   involving court-awarded attorneys' fees:  (1) *Maria P. v. Riles*, 43 Cal. 3d 1281

19   (1987), which upheld a C.C.P. section 1021.5 fee award based on a preliminary

20   injunction obtained against the State Superintendent of Education, despite the fact

21   that the case ultimately was dismissed under C.C.P. section 583; (2) *Delaney v.*

22   *Baker*, 20 Cal. 4th 23 (1999), which held that heightened remedies, including

23   attorneys' fees, are available in suits against nursing homes under California's Elder

24   Abuse Act; (3) *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), which held, *inter alia,*

25   that contingent risk multipliers remain available under California attorney fee law,

26   despite the United States Supreme Court's contrary ruling on federal law (note that

27   in *Ketchum,* I was primary appellate counsel in the Court of Appeal and "second

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**Exhibit 2
2-4**

1   chair" in the Supreme Court); (4) *Flannery v. Prentice*, 26 Cal. 4th 572 (2001),

2   which held, again despite an adverse United States Supreme Court ruling on federal

3   law, that in the absence of an agreement to the contrary, statutory attorneys' fees

4   belong to the attorney whose services they are based upon; and (5) *Graham v.*

5   *DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004), which held, *inter alia,* that the

6   catalyst theory of fee recovery remained valid under California law despite adverse

7   federal law and that lodestar multipliers could be applied to fee motion work.  In

8   that case, I represented trial counsel in both the Court of Appeal (twice) and

9   Supreme Court, as well as on remand in the trial court.  I also represented and

10  argued on behalf of *amicus curiae* in *Conservatorship of McQueen*, 59 Cal. 4th 602

11  (2014), which held that statutory attorneys' fees for appellate work were not

12  considered "enforcement fees" subject to California's Enforcement of Judgments

13  law; I presented the argument relied upon by the Court. Along with Richard

14  Rothschild of the Western Center on Law and Poverty, I also prepared and filed an

15  *amicus curiae* brief in *Vasquez v. State of California,* 45 Ca1.4th 243 (2009). I also

16  have handled numerous other appeals involving court-awarded attorneys' fees,

17  including: *Davis v. City & County of San Francisco,* 976 F.2d 1536 (9th Cir. 1992);

18  *Mangold v. CPUC,* 67 F.3d 1470 (9th Cir. 1995); *Velez v. Wynne,* 2007 U.S. App.

19  LEXIS 2194 (9th Cir. 2007); *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973

20  (9th Cir. 2008); *Center for Biological Diversity v. County of San Bernardino,* 185

21  Cal.App.4th 866 (2010); and *Environmental Protection Information Center v.*

22  *California Dept. of Forestry & Fire Protection et al,* 190 Cal.App.4th 217

23  (2010); *Heron Bay Home Owners Association v. City of San Leandro,* 19 Cal. App.

24  5th 376 (2018); and *Robles v. EDD,* 38 Cal.App.5th 191. For an expanded list of my

25  reported decisions, *see* Exhibit A, pp. 4-8.

26      6.    I have been retained by various governmental entities, including the

27  California Attorney General's office, at my then current rates to consult with them

28

---

4

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**Exhibit 2
2-5**

1    regarding their affirmative attorney fee claims.

2         7.    I am frequently called upon to opine about the reasonableness of

3    attorneys' fees, and numerous federal and state courts have relied on my testimony

4    on those issues. The following California appellate and reported trial court cases

5    also have referenced my testimony favorably:

6         •    *Kerkeles v. City of San Jose,* 243 Cal.App.4th 88 (2015);

7         •    *Habitat and Watershed Caretakers v. City of Santa Cruz,* 2015 Cal.

8               App. Unpub. LEXIS 7156 (2015);

9         •    *Laffitte v. Robert Half Int'l Inc.,* 231 Cal.App.4th 860 (2014), *aff'd*

10              (2016) 1 Cal.5th 480;

11        •    *In re Tobacco Cases I,* 216 Cal.App.4th 570 (2013);

12        •    *Heritage Pacific Financial, LLC v. Monroy,* 215 Cal.App.4th 972

13    (2013);

14        •    *Wilkinson v. South City Ford,* 2010 Cal. App. Unpub. LEXIS 8680

15    (2010);

16        •    *Children's Hospital & Medical Center v. Bonta,* 97 Cal.App.4th 740

17    (2002);

18        •    *Church of Scientology v. Wollersheim,* 42 Cal.App.4th 628 (1996).

19        •    *Kaku v. City of Santa Clara,* No. 17CV319862, 2019 WL 331053

20    (Santa Clara Cty Super. Ct. January 22, 2019);

21        •     *Davis v. St. Jude Hosp.*, No. 30201200602596CUOECX, 2018 WL

22    7286170, at *4 (Orange Cty. Super. Ct. Aug. 31, 2018);

23        •    *Hartshorne v. Metlife, Inc.*, No. BC576608, 2017 WL 1836635, at *10

24    (Los Angeles Super. Ct. May 02, 2017).

25        9.    The following federal cases also have referenced my testimony

26    favorably:

27

28

5

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Exhibit 2
2-6

1      •     *Antoninetti v. Chipotle Mexican Grill, Inc.,* No. 08-55867 (9th Cir.
2            2012), Order filed Dec. 26, 2012, at 6;
3      •     *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir.
4            2010) (the expert declaration referred to is mine);
5      •     *Independent Living Center of S. Cal. v. Kent,* 2020 U.S.Dist.LEXIS
6            13019 (C.D. Cal. 2020);
7      •     *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal.
8            2017), *aff'd* 269 F.3d ___(9th Cir. 2020);
9      •     *Beaver v. Tarsadia Hotels,* 2017 U.S.Dist.LEXIS 160214 (S.D. Cal.
10           2017);
11     •     *Notter v. City of Pleasant Hill*, 2017 U.S.Dist.LEXIS 197404, 2017
12           WL 5972698 (N.D. Cal. 2017);
13     •     *Villalpondo v. Exel Direct, Inc.*, 2016 WL 1598663 (N.D. Cal. 2016);
14           *State Compensation Insurance Fund v. Khan et al,* Case No. SACV
15           12-01072- CJC(JCGx) (C.D. Cal.), Order Granting in Part and
16           Denying in Part the Zaks Defendants' Motion for Attorneys' Fees, filed
17           July 6, 2016 (Dkt. No. 408);
18     •     *In re Cathode Ray Tube Antitrust Litig.,* Master File No. 3:07-cv-5944
19           JST, MDL No. 1917 (N.D. Cal. 2016) 2016 U.S. Dist. LEXIS
20           24951(Report And Recommendation Of Special Master Re Motions (1)
21           To Approve Indirect Purchaser Plaintiffs' Settlements With the Phillips,
22           Panasonic, Hitachi, Toshiba, Samsung SDI, Technicolor, And
23           Technologies Displays Americas Defendants, and (2) For Award Of
24           Attorneys' Fees, Reimbursement Of Litigation Expenses, And Incentive
25           Awards To Class Representative, Dkt. 4351, dated January 28, 2016,
26           *adopted in relevant part,* 2016 U.S. Dist. LEXIS 88665;
27
28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Exhibit 2
2-7

1  • *Gutierrez v. Wells Fargo Bank,* 2015 U.S. Dist. LEXIS 67298 (N.D.
2  Cal. 2015);

3  • *Holman v. Experian Information Solutions, Inc.,* 2014 U.S. Dist.
4  LEXIS 173698 (N.D. Cal. 2014);

5  • *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M 07-1827 SI, MDL
6  No. 1827 (N.D. Cal.), Report and Recommendation of Special Master
7  Re Motions for Attorneys' Fees And Other Amounts By Indirect-
8  Purchaser Class Plaintiffs And State Attorneys General, Dkt. 7127, filed
9  Nov. 9, 2012, adopted in relevant part, 2013 U.S. Dist. LEXIS 49885
10  (N.D. Cal. 2013) (`*TFT-LCD (Flat Panel)* Report &
11  Recommendation");

12  • *Walsh v. Kindred Healthcare,* 2013 U.S. Dist. LEXIS 176319 (N.D.
13  Cal. 2013);

14  • *A.D. v. California Highway Patrol,* 2009 U.S. Dist. LEXIS 110743, at
15  *4 (N.D. Cal. 2009), rev'd on other grounds, 712 F.3d 446 (9th Cir.
16  2013), reaffirmed and additional fees awarded on remand, 2013 U.S.
17  Dist. LEXIS 169275 (N.D. Cal. 2013);

18  • *Hajro v. United States Citizenship & Immigration Service,* 900 F. Supp.
19  2d 1034, 1054 (N.D. Cal 2012);

20  • *Rosenfeld v. United States Dep't of Justice,* 904 F. Supp. 2d 988, 1002
21  (N.D. Cal. 2012);

22  • *Stonebrae, L.P. v. Toll Bros., Inc.,* 2011 U.S. Dist. LEXIS 39832, at *9
23  (N.D. Cal. 2011) (thorough discussion), aff'd 2013 U.S. App. LEXIS
24  6369 (9th Cir. 2013);

25  • *Armstrong v. Brown,* 2011 U.S. Dist. LEXIS 87428 (N.D. Cal. 2011);
26  • *Lira v. Cate,* 2010 WL 727979 (N.D. Cal. 2010);

27

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Exhibit 2
2-8

1        •    *Californians for Disability Rights, Inc. v. California Dep't of*

2             *Transportation,* 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010);

3        •    *Nat'l Federation of the Blind v. Target Corp.,* 2009 U.S. Dist. LEXIS

4             67139 (N.D. Cal. 2009);

5        •    *Prison Legal News v. Schwarzenegger,* 561 F.Supp.2d 1095 (N.D. Cal.

6             2008) (an earlier motion);

7        •    *Bancroft v. Trizechahn Corp.,* No. CV 02-2373 SVW (FMOx), Order

8             Granting Plaintiffs Reasonable Attorneys' Fees and Costs In the Amount

9             of $168,886.76, Dkt. 278 (C.D. Cal. Aug. 14, 2006);

10       •    *Willoughby v. DT Credit Corp.,* No. CV 05-05907 MMM (CWx),

11            Order Awarding Attorneys' Fees After Remand, Dkt. 65 (C.D. Cal. July

12            17, 2006);

13       •    *Oberfelder v. City of Petaluma,* 2002 U.S. Dist. LEXIS 8635 (N.D.

14            Cal. 2002), aff'd 2003 U.S. App. LEXIS 11371 (9th Cir. 2003);

15  In addition, numerous unreported fee awards from trial courts and arbitrators have

16  referred favorably to my declaration testimony. See, e.g., *Hansen v. Coca Cola,* SD

17  Superior Ct. No. 37-2016-00021046 –CU-MC-CTL, Fee Order filed 6/22/20,a t p.

18  16 "The court's conclusion [regarding hourly rates] are cemented by the very

19  thorough and persuasive discussion contained in [Mr. Pearl's declarations.]"

20                    **Counsel's Requested Hourly Rates Are Reasonable.**

21      11.    Under *Blum v. Stenson,* 465 U.S. 886, 895 (1984) , prevailing parties

22  under 42 U.S.C. §1988 are entitled to their attorneys' requested hourly rates if those

23  rates are "in line with" the rates charged by attorneys of reasonably comparable

24  qualifications for reasonably similar services.  *Blum,* 465 U.S. at 895n. 11. In this

25  case, I am aware that as a 26th-year attorney with extensive litigation experience,

26  Plaintiffs request $750 per hour for Mr. Briggs's work in this case.

27      12.    Through my writing and practice, I have become very familiar with the

28  hourly rates charged by attorneys in California and elsewhere.  I have obtained this

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**Exhibit 2
2-9**

1   familiarity in several ways: (1) by representing litigants and/or their attorneys in
2   attorneys' fee litigation; (2) by serving as a consultant and/or expert in numerous fee
3   matters; (3) by discussing fees with other attorneys; (4) by reviewing declarations
4   regarding prevailing market rates and other factors filed in mine and other attorneys'
5   cases; and (5) by reviewing attorneys' fee applications and awards in other cases, as
6   well as surveys and articles on attorney's fees in the legal newspapers and treatises.

7        13.    Based on the foregoing experience and the data presented below, it is
8   my opinion that Mr. Briggs's requested rate here is well in line with hourly rates
9   charged by comparably qualified San Diego attorneys for similarly complex
10  litigation.  I base that in part on my prior knowledge of Mr. Briggs's work,
11  expertise, and skills, which are top-rate, and on my current review of the work
12  counsel performed in achieving a successful result here. The following data also
13  supports my opinion:

14
15                    **Rates Found Reasonable in Other Cases**

16       14.    Numerous fee awards issued by San Diego Area courts confirm my
17  opinion that counsel's hourly rate is reasonable:

18   • In *In re Easysaver Rewards Litigation*, 2020 U.S.Dist.LEXIS 77483 (S.D.
19     Cal. 2020), a consumer class action, the court found that hourly rates up to
20     $850 per hour (see Tables 1-5) were reasonable for the plaintiffs' attorneys'
21     work.

22   • In *Hansen v. Coca Cola,* SD Superior Ct. No. 37-2016-00021046 –CU-MC-
23     CTL, Fee Order filed 6/22/20, a trademark infringement action, the San Diego
24     Superior Court found the following hourly rates reasonable:

25
26  | Neville Johnson | 1975 | Partner | $925-$975 |
    | Douglas Johnson | 2000 | Partner | $650-$700 |
27  | Jordanna Thigpen | 2004 | Senior Counsel | $525-$575 |

28   • In *Corona v. Remington Lodging & Hospitality, LLC*, 2019 U.S.Dist.LEXIS

                                           9
          DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

                                                                    **Exhibit 2
                                                                    2-10**

68116 (S.D.Cal. 2019), a wage and hour class action, the court found that counsel's usual billing rates -- $750 for 33-year attorney and $550 for a 14-year attorney – were reasonable.

- In *Hollis v. Union Pac. R.R. Co.*, 2018 U.S.Dist.LEXIS 161232 (S.D.Cal. 2018), a PAGA (Private Attorney General Act) action, the court found the following hourly rates reasonable: $890 and $800 for two 45-year attorneys; $717 for a 14-year attorney; $500 for a 9-year attorney; $440 for 5-year attorney;  and $125 -$195 for paralegals and legal assistants.

- In *Weinstein v. Mortgage Contracting Services, LLC*, 2018 U.S.Dist.LEXIS 182718 (S.D.Cal. 2018), a wage and hour class action, the court found that $750 was a reasonable rate for a 41-year attorney, $625 per hour for 2005 Bar Admittees, and $450 per hour for a 10-year attorney.

- In *Lewis v. County of San Diego,* 2017 U.S.Dist.LEXIS 203457 (S.D. Cal. 2017), an unlawful search action against county social workers, the court awarded a 25-year attorney with 19 years of civil rights practice $600 per hour, a 4-year attorney $250 per hour, and $100 per hour for paralegal work.

- In *Beaver v. Tarsadia Hotels,* 2017 U.S.Dist.LEXIS 160214 (S.D. Cal. 2017), a consumer class action, the court approved, as part of the lodestar cross-check for a common fund award, hourly rates that included $875 for a 40-year attorney, $725 for a 25-year attorney, $650 for a 16-year attorney, and $400 for a seven year attorney.

- In *Dilts v. Penske Logistic, LLC,* 2017 WL 2620664 (S.D. Cal. 2017), a wage and hour class action based in part on the UCL, the court awarded San Diego's Cohelen Khoury & Singer rates of $750 per hour for a 33-year attorney, $550 for a 22-year attorney, and $170-200 for paralegal work.

- In *Makaef v. Trump University, LLC,* 2015 U.S.Dist.LEXIS 46749 (S.D. Cal. 2015), a fee award fees for a successful anti-SLAPP motion under California

10

law and the subsequent appeals therefrom, the court found the following 2015 hourly rates reasonable for San Diego's Robins Geller Rudman & Dowd: $825 for a 20-year attorney, $660 for a 15-year attorney, and $360 for an 8-year associate. For San Diego's Zeldes Haeggquist & Eck, it found $600 and $690 per hour reasonable for 20-year attorneys.

- In *Hohnbaum v. Brinker Restaurants, Inc.,* San Diego County Superior Court No. GIC834348, Order and Judgment Granting Plaintiffs' Motion for Final Approval and Class Action Settlement and Motion for Award of Attorneys' Fees, Costs, Class Representative Service Payments, Claims Administration Exhibits, filed December 15, 2014, plaintiffs' requested hourly rates included rates of $850 per hour for San Diego attorneys with as little as 24 years' experience and paralegal rates of up to $195 per hour.

- In *Beltran v. D III Transportation Corp.*, San Diego Superior Court No. 77-2012-00099241-CU-OE-CTL, Order Granting (1) Final Approval of Class Settlement and Entering Judgment; and (2) Award of Attorneys' Fees and Costs etc., filed June 20, 2014, the court found $750 per hour reasonable for a 30-year San Diego attorney.

- In *Chaikin v. Lululemon USA Inc*., 2014 WL 1245461 (S.D. Cal. 2014), a consumer class action, the court found the following hourly rates reasonable: 2000 Bar admittee - $650;  2002 Bar admittee - $500; 2007 Bar admittee - $500; and 2011 Bar admittee - $350.

- In *Reed v. 1-800 Contacts, Inc.,* 2014 WL 29011 (S.D. Cal. 2014), a consumer class action alleging violations of Penal Code §630 *et seq.,* the court found that $650 was a reasonable hourly rate for attorneys with 24 and 27 years of experience. It also found that a 2.9 lodestar multiplier was reasonable.

- In *Johansson-Dohrmann v. CBR Sys.*, 2013 WL 3864341 (S.D. Cal. 2013), a

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

**Exhibit 2
2-12**

representative action alleging invasion of privacy, the court found that lead class counsel's rate of $695 per hour was reasonable for a 20-year attorney. It also found that a 2.07 multiplier was reasonable.

- In *Hartless v. Clorox,* 273 F.R.D. 630, 644 (S.D. Cal. 2011), the Court found, *inter alia,* that class counsel's requested rates were consistent with the hourly rates found reasonable in numerous other class actions and with rates charged by other firms in the San Diego area, including rates of $795 per hour for a 25-year attorney and $675 per hour for an experienced partner. 273 F.R.D. at 644.

- In *Shames v. Hertz Corp.,* 2012-2 Trade Case. (CCH) ¶78,120 (S.D. Cal. 2012), the Court, relying on *Hartless,* found that plaintiffs' San Diego Counsel there were comparable in skill and experience to the attorneys whose rates were found reasonable in *Hartless* at *59-61.

- In *Briarwood Capital LLC v. HCC Investors LLC,* San Diego Superior Court No. GIC877446, on March 30, 2011, the court found that the 2009 hourly rates charged by the San Diego office of Bernstein Litowitz Berger & Grossman LLP -- $725 for partners, $490-550 for associates -- were reasonable.

- In the same case, the court found that the 2009 rates charged by the Century City office of O'Melveny & Myers LLP, including rates of $860-950 for a 36-37 year attorney and $700-710 for 16-18 year attorneys also were reasonable for San Diego litigation.

## Rate Information from Surveys

15.     Plaintiff's counsel's rates also are consistent with the "Adjusted Laffey Matrix" (laffeymatrix.com), which is based on a survey of hourly rates charged in the Baltimore-Washington, D.C. area and is used by some courts to evaluate the reasonableness of rates.   The Adjusted Laffey Matrix lists current rates of **$914** per

1  hour for attorneys like Mr. Briggs who have been out of law school for more than 20

2  years.  Recognizing that San Diego rates are somewhat less than those charged in

3  the Baltimore-Washington D.C. area, even with such an adjustment, the Adjusted

4  Laffey Matrix supports the reasonableness of counsel's requested rate here.

5       I declare under penalty of perjury under the laws of the United States that the

6  foregoing facts are true and correct.

7       Executed on January 28, 2021 at Berkeley, California.

8

9

10  _____

11  Richard M. Pearl

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Exhibit 2
2-14

Exhibit 3 to Declaration of Paul L. More

1    Matthew Rodriquez
     Acting Attorney General of California
2    Renuka George
     Senior Assistant Attorney General
3    Emilio Varanini (SBN 163952)
     Supervising Deputy Attorney General
4    Malinda Lee (SBN 263806)
     Michael Battaglia (SBN 290464)
5    Deputy Attorney General
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Tel 415.510.3541 / Fax 415.703.5480
7    Email: Emilio.Varanini@doj.ca.gov
     *Attorneys for Plaintiff, People of the State of*
8    *California*

9    Richard L. Grossman (SBN 112841)
     Philip L. Pillsbury Jr. (SBN 072261)
10   Pillsbury & Coleman, LLP
     100 Green Street
11   San Francisco, CA 94111
     Tel 415.433.8000 / Fax 415.433.4816
12   Email: UEBT@pillsburycoleman.com
     *Lead Counsel for Plaintiff UFCW & Employers Benefit*
13   *Trust and the Class (Additional Counsel not listed)*

14

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                      COUNTY OF SAN FRANCISCO

17   UFCW & Employers Benefit Trust, on behalf    Case No. CGC 14-538451
     of itself and all others similarly situated   Consolidated with
18                                                  Case No. CGC-18-565398
19              Plaintiffs,

20       vs.
                                                    **DECLARATION OF RICHARD M. PEARL**
21   Sutter Health, et al.,                         **IN SUPPORT OF PLAINTIFFS'**
                                                    **COUNSEL'S JOINT MOTION FOR**
22              Defendants.                         **ATTORNEYS' FEES, COSTS, AND**
                                                    **SERVICE AWARD**
23   People of the State of California, ex rel.
     Xavier Becerra,                                Date:       July 19, 2021
24                                                  Time:       9:15 a.m.
                Plaintiff,                          Dept.:      304
25                                                  Judge:      Hon. Anne-Christine Massullo
         vs.
26
     Sutter Health,                                 Action Filed:  April 7, 2014
27
                Defendant.
28

─────────────────────────────────────────────────────────

**Exhibit 3**
**3-1**

ELECTRONICALLY
F I L E D
*Superior Court of California,*
*County of San Francisco*

03/29/2021
Clerk of the Court
BY: SANDRA SCHIRO
Deputy Clerk

I, Richard M. Pearl, hereby declare:

1.      I am an attorney at law licensed and duly admitted to practice before all the courts of the State of California and am a member in good standing of the California State Bar.  If called as a witness I could and would competently testify to the following.  I make this declaration in support of Plaintiffs' Counsel's Joint Motion for Attorneys' Fees, Costs, and Service Award.

2.      I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California.  My practice now consists almost entirely of cases and issues involving court-awarded attorneys' fees, expenses, and costs, including representation of parties in fee litigation and appeals, consulting on fee issues, service as an expert witness, and service as a mediator and arbitrator in disputes concerning attorneys' fees and related issues.

3.      I have been retained by the five Class Counsel law firms, Pillsbury & Coleman LLP, Farella Braun + Martel LLP, McCracken, Stemerman & Holsberry, LLP, Cohen Milstein Sellers & Toll PLLC, and Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. (collectively, "Class Counsel") to render my opinion on the reasonableness of Class Counsel's lodestar.

## I.    SUMMARY OF OPINIONS

4.      It is my opinion that Class Counsel's lodestar for work performed over the past seven-plus years is reasonable.  My opinion is based on the conclusion that both constituent elements of the lodestar – rates and hours – are reasonable.

5.      As an initial matter, I understand that Class Counsel are using the percentage method, with a lodestar cross-check, to support their fee request.  I agree that the percentage method is most appropriate in this case because the amount of the common monetary fund is certain, *see California Attorney Fee Awards* (3d ed Cal. CEB) § 8.14, and for the reasons articulated in the Joint Motion.  Although I was retained only to opine on Class Counsel's lodestar, I have reviewed the declaration of Professor Charles Silver – a nationally known and highly respected expert on attorneys' fees – and I agree with Professor Silver's conclusion that 32% is reasonable.[1]  Because the lodestar multiplier for Class Counsel of 1.67 or 1.92 is within the

---

[1] California courts utilizing the percentage method typically apply the percentage to the settlement fund prior to deduction of reasonable costs.  *See, e.g.*, *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th

PEARL DECL. ISO JOINT MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD
Case Nos. CGC-14-538451 & CGC-18-565398

**Exhibit 3**
**3-2**

1   normal range, I agree with Professor Silver that it is reasonable.

2         6.     Class Counsel's hourly rates are well within the range of hourly rates charged by

3   and awarded to comparably qualified and experienced attorneys in the Bay Area legal market for

4   similarly complex litigation.  I have examined each timekeeper's hourly rate, along with that

5   timekeeper's experience, expertise, and background.  My opinion that these rates are reasonable is

6   based on four factors.  First, courts have repeatedly found that Class Counsel's rates are

7   reasonable.  Second, Class Counsel's rates are consistent with the rates of other law firms found

8   reasonable by courts in the San Francisco Bay Area.  Third, Class Counsel's rates are consistent

9   with the rates charged by attorneys in the Bay Area.  Fourth, the firms representing the class have

10  fee-paying clients in the Bay Area or California that pay the same hourly rates used in this case.

11        7.     The number of hours spent by Class Counsel over the past seven-plus years is also

12  reasonable.  Class Counsel's hours reflect the long, heavily contested history of this litigation, the

13  difficult and novel legal and factual issues it presented, and the results achieved for the Class.  I

14  have reviewed Class Counsel's hours, as set out in the declarations of Christopher Wheeler,

15  Richard Grossman, Daniel Bird, Sarah Grossman-Swenson, and Daniel Small, as well as many of

16  the most significant pleadings and expert declarations.[2]  The total number of hours and the

17  distribution of work between and among the five Class Counsel law firms are reasonable for a case

18  of this intensity, difficulty, novelty, and duration in which Class Counsel have achieved such

19  extraordinary results.

20  **II.      MY PROFESSIONAL BACKGROUND**

21        8.     Briefly summarized, my background is as follows: I am a 1969 graduate of

22  Berkeley Law (formerly Boalt Hall School of Law), University of California, Berkeley, California.

23  I passed the California Bar Exam in November 1969, but because I was working out of state, I was

24  _____

25   480, 503 (2016); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65 (2008); *Roos v. Honeywell Inter., Inc.*, No. CGC-04-436205, 2014 WL 10999210, at *3 (Cal. Super. May 30, 2014) (Karnow, J.), affirmed, 241 Cal. App. 4th 1472.

26

27  [2] I have also reviewed the declaration of Deputy California Attorney General Emilio Varanini and have taken into account the work done by the California Attorney General's office since filing its complaint in March 2018.  I understand that Class Counsel and the California Attorney General

28  coordinated their efforts after the California Attorney General joined the case in 2018.

**Exhibit 3**
**3-3**

1  not formally admitted until February 1970.  I worked for Legal Aid Society of Atlanta from

2  October 1969 until the summer of 1971, and then California Rural Legal Assistance, Inc.

3  ("CRLA"), a statewide legal services program serving low-income persons.  In 1974, I became

4  CRLA's Director of its statewide support center serving other legal services programs.  In 1977, I

5  became CRLA's Director of Litigation, where my responsibilities included supervising more than

6  fifty attorneys.  In 1982–1983, I transitioned into private practice, first in a small law firm, then as

7  a sole practitioner.  Martindale Hubbell rates my law firm "AV."  I also have been selected as a

8  Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011,

9  2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, and 2020.  A true and correct copy of my

10  resume is attached as Exhibit A.

11       9.       Since 1982, my practice has been a general civil litigation and appellate practice,

12  with an increasing emphasis on cases and appeals involving court-awarded attorneys' fees.  In

13  addition to serving as an advocate for litigants and their attorneys, I have frequently been retained

14  as an expert witness and/or consultant on attorneys' fee issues.  I also have  written extensively on

15  court-awarded attorneys' fees and lectured on the subject before a wide variety of groups, was a

16  member of the California State Bar's Attorneys' Fees Task Force, and have testified before the

17  State Bar Board of Governors and the California Legislature on attorneys' fee issues.

18       10.      I am the author of California Continuing Education of the Bar's ("CEB") California

19  Attorney Fee Awards, 3d Ed. (Calif. Cont. Ed. of Bar 2010) and its 2011, 2012, 2013, 2014, 2015,

20  2016, 2017, 2018, 2019, and March 2020 Supplements.  I also authored California Attorney Fee

21  Awards, 2d Ed. (Calif. Cont. Ed. of Bar 1994), and its annual supplements from 1995 through

22  2008.  I also co-authored CEB's original California Attorney's Fees Award Practice, published in

23  1983, and authored its 1984, 1985, 1987, 1988, 1990, 1991, 1992, and 1993 supplements.  Many

24  courts have referred to this treatise as "[t]he leading California attorney fee treatise."  *Calvo Fisher*

25  *& Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 621 (2015); *see also, e.g.*, *Int'l Billing Servs., Inc.*

26  *v. Emigh*, 84 Cal. App. 4th 1175, 1193 (2000) ("the leading treatise"); *Stratton v. Beck*, 30 Cal.

27  App. 5th 901, 911 (2019) ("a leading treatise"); *Orozco v. WPV San Jose, LLC*, 36 Cal. App. 5th

28  375, 409 (2019) ("a leading treatise on California attorney's fees").  It also has been cited by the

**Exhibit 3
3-4**

California Supreme Court and Court of Appeal on many occasions.  *See*, *e.g.*, *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 576, 584 (2004); *Lolley v. Campbell*, 28 Cal. 4th 367, 373 (2002); *In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214–15, 1217 (2010)); *Yost v. Forestiere*, 51 Cal. App. 5th 509, 530 n. 8 (2020); *Highland Springs Conference & Training Ctr. v. City of Banning*, 42 Cal. App. 5th 416, 428 n. 11 (2019); *Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*, 36 Cal. App. 5th 970, 988 (2019); *Hardie v. Nationstar Mortg. LLC*, 32 Cal. App. 5th 714, 720 (2019); *Syers Props III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698, 700 (2014).  California Superior Courts also cite the treatise with approval.  *See, e.g., Davis v. St. Jude Hosp.*, No. 30201200602596, 2018 WL 7286170, at *4 (Orange Cty. Super. Ct. Aug. 31, 2018); *Hartshorne v. Metlife, Inc.*, No. BC576608, 2017 WL 1836635, at *10 (Los Angeles Super. Ct. May 02, 2017).  Federal courts also have cited it with approval.  *See In re Hurtado*, Case No. 09-16160-A-13, 2015 WL 6941127 (E.D. Cal. Nov. 6, 2015); *TruGreen Cos., LLC v. Mower Bros., Inc.*, 953 F. Supp. 2d 1223, 1236 ns. 50, 51 (D. Utah 2013).  In addition, I authored a federal manual on attorneys' fees entitled "Attorneys' Fees: A Legal Services Practice Manual," published by the Legal Services Corporation.  I also co-authored the chapter on "Attorney Fees" in Volume 2 of CEB's Wrongful Employment Termination Practice, 2d Ed. (1997).  My other written publications are set out in my resume (Exhibit A).

   11. More than 95% of my practice is devoted to issues involving reasonable attorneys' fees, as an advocate, an expert, or a consultant.  I have been counsel of record in over 200 attorneys' fee applications in state and federal courts, primarily representing other attorneys.  I also have briefed and argued more than 40 appeals, at least 30 of which have involved attorneys' fees issues.  I have successfully handled five cases in the California Supreme Court involving court-awarded attorneys' fees: (1) *Maria P. v. Riles*, 43 Cal. 3d 1281 (1987), which upheld a fee award under California Code of Civil Procedure section 1021.5 based on a preliminary injunction obtained against the California Superintendent of Education, despite the fact that the case ultimately was dismissed under C.C.P. section 583; (2) *Delaney v. Baker*, 20 Cal. 4th 23 (1999), which held that heightened remedies, including attorneys' fees, are available in suits against nursing homes under California's Elder Abuse Act; (3) *Ketchum v. Moses,* 24 Cal. 4th 1122

**Exhibit 3
3-5**

(2001), which held, among other things, that contingent risk multipliers remain available under California attorneys' fee law, despite the U.S. Supreme Court's contrary ruling under federal law (in *Ketchum*, I was primary appellate counsel in the Court of Appeal and "second chair" in the California Supreme Court); (4) *Flannery v. Prentice*, 26 Cal. 4th 572 (2001), which held, again despite an adverse U.S. Supreme Court ruling under federal law, that in the absence of an agreement to the contrary, statutory attorneys' fees belong to the attorney whose services they are based upon; and (5) *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004), which held that, among other things, the catalyst theory of attorneys' fee recovery remained valid under California law despite adverse federal law.  In *Graham*, I represented trial counsel in both the Court of Appeal (twice) and California Supreme Court, as well as on two remands in the trial court.  I also represented and argued on behalf of amicus curiae in *Conservatorship of McQueen*, 59 Cal. 4th 602 (2014), which held that statutory attorneys' fees for appellate work were not considered "enforcement fees" under California law.  Along with the Western Center on Law and Poverty, I also prepared and filed a brief on behalf of amicus curiae in *Vasquez v. State of California*, 45 Cal. 4th 243 (2009), which held that pre-filing settlement demands were not required to obtain fees under Code of Civil Procedure section 1021.5 in non-catalyst cases.  I have handled many other trial court motions and appeals involving court-awarded attorneys' fees, including: *Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992); *Mangold v. CPUC*, 67 F.3d 1470 (9th Cir. 1995); *Velez v. Wynne*, 220 F. App'x 512 (9th Cir. 2007); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008); *Center for Biological Diversity v. County of San Bernardino*, 185 Cal. App. 4th 866 (2010); *Environmental Protection Information Center v. California Department of Forestry & Fire Protection et al.*, 190 Cal. App. 4th 217 (2010); *Heron Bay Home Owners Association v. City of San Leandro*, 19 Cal. App. 5th 376 (2018); *Guerrero v. California Dep't of Corr. & Rehab.*, 701 F. App'x 613 (9th Cir. 2017); *Orr v. Brame*, 727 F. App'x 265, 266 (9th Cir. 2018) and 793 F. App'x 485, 487 (9th Cir. 2019); ; and *Robles v. EDD*, 38 Cal. App. 5th 191 (2019).  For an expanded list of cases with which I was involved, see Exhibit A at 4–8.

   12.  I have been retained by various governmental entities, including the State of California on several occasions, to consult with them and serve as an expert witness regarding

PEARL DECL. ISO JOINT MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD
Case Nos. CGC-14-538451 & CGC-18-565398

**Exhibit 3
3-6**

their affirmative attorneys' fee claims.  *See*, *e.g.*, *In re Tobacco Cases I*, 216 Cal. App. 4th 570, 584 (2013); *Dep. of Fair Employ. and Hous. v. Law Sch. Admission Council, Inc.*, 2018 WL 5791869 (N.D. Cal. No. 12-cv-08130, filed Nov. 5, 2018).

13.     I am frequently called upon to opine about the reasonableness of attorneys' fees, and many state and federal courts have relied on my testimony on those issues.  The following California appellate and trial court cases have referenced my expert testimony favorably:

- *Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88 (2015);
- *Habitat and Watershed Caretakers v. City of Santa Cruz*, No. H040762, 2015 WL 5827045 (Oct. 6, 2015);
- *Laffitte v. Robert Half Int'l Inc.*, 231 Cal. App. 4th 860 (2014), *aff'd*, 1 Cal. 5th 480 (2016);
- *In re Tobacco Cases I*, 216 Cal. App. 4th 570 (2013);
- *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972 (2013);
- *Wilkinson v. S. City Ford*, 2010 WL 4292631 (Oct. 29, 2010);
- *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740 (2002);
- *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628 (1996);
- *Kaku v. City of Santa Clara,* No. 17CV319862, 2019 WL 331053, at *3 (Santa Clara Cty. Super. Ct. Jan. 22, 2019), *aff'd* 59 Cal. App. 5th 385, 431 (2020);
- *Davis v. St. Jude Hosp.*, No. 30201200602596CUOECX, 2018 WL 7286170, at *4 (Orange Cty. Super. Ct. Aug. 31, 2018);
- *Hartshorne v. Metlife, Inc.*, No. BC576608, 2017 WL 1836635, at *10 (Los Angeles Super. Ct. May 2, 2017).

In addition, many California superior courts have relied on my testimony in unreported fee awards.

14.     Many federal cases have referenced my expert testimony favorably, including most recently in *Human Rights Defense Center v. County of Napa*, 20-cv-01296-JCS, Doc. 50 (March 28, 2021); there, "the Court place[d] significant weight on the opinion of Mr. Pearl that the rates charged by all of the timekeepers listed above are reasonable and in line with the rates charged by

**Exhibit 3
3-7**

law firms that engage in federal civil litigation in the San Francisco Bay Area.  Mr. Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California [] in determining reasonable billing rates."  *Id*. at 18–19.  The following federal decisions have also referenced my expert testimony favorably:

- *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 08-55867 (9th Cir. 2012), Order filed Dec. 26, 2012, at 6;

- *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (the expert declaration referred to is mine);

- *Indep. Living Ctr. of S. Cal. v. Kent*, No. 2:08-CV-03315, 2020 WL 418947 (C.D. Cal. Jan. 24, 2020);

- *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017), *aff'd on the merits*, 269 F.3d 1066 (9th Cir. 2020);

- *Beaver v. Tarsadia Hotels*, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017);

- *Notter v. City of Pleasant Hill*, No. 16-CV-04412-JSC, 2017 WL 5972698 (N.D. Cal. Nov. 30, 2017);

- *Villalpando v. Exel Direct, Inc.*, No. 12-CV-04137-JCS, 2016 WL 1598663 (N.D. Cal. Apr. 21, 2016);

- *State Comp. Ins. Fund v. Khan et al.*, Case No. SACV 12-01072-CJC (JCG) (C.D. Cal.), Order Granting in Part and Denying in Part the Zaks Defendants' Motion for Attorneys' Fees, filed July 6, 2016 (Doc. No. 408);

- *In re Cathode Ray Tube Antitrust Litig.*, Master File No. 3:07-cv-5944 JST, MDL No. 1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) (Report and Recommendation of Special Master Re Motions (1) To Approve Indirect Purchaser Plaintiffs' Settlements With the Phillips, Panasonic, Hitachi, Toshiba, Samsung SDI, Technicolor, and Technologies Displays Americas Defendants, and (2) For Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards to Class Representative, Doc. 4351, dated January 28, 2016, adopted in

8

**Exhibit 3
3-8**

1   relevant part, 2016 U.S. Dist. LEXIS 88665;

2   • *Gutierrez v. Wells Fargo Bank*, 2015 WL 2438274 (N.D. Cal. May 21, 2015);

3   • *Holman v. Experian Info. Sols., Inc.*, No. 11-cv-0180, 2014 WL 7186207 (N.D.

4   Cal. Dec. 12, 2014);

5   • *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827

6   (N.D. Cal.), Report and Recommendation of Special Master Re Motions for

7   Attorneys' Fees and Other Amounts by Indirect-Purchaser Class Plaintiffs and

8   State Attorneys General, Doc. 7127, filed Nov. 9, 2012, adopted in relevant part,

9   2013 U.S. Dist. LEXIS 49885 (N.D. Cal. 2013) (TFT-LCD (Flat Panel) Report &

10   Recommendation);

11   • *Walsh v. Kindred Healthcare*, 2013 WL 6623190 (N.D. Cal. Dec. 16, 2013);

12   • *A.D. v. California Highway Patrol*, 2009 U.S. Dist. LEXIS 110743, at *4 (N.D.

13   Cal. Nov. 10, 2009), *rev'd on other grounds*, 712 F.3d 446 (9th Cir. 2013),

14   *reaffirmed and additional fees awarded on remand*, 2013 U.S. Dist. LEXIS 169275

15   (N.D. Cal. Nov. 27, 2013);

16   • *Hajro v. U.S. Citizenship & Immigration Serv.*, 900 F. Supp. 2d 1034, 1054 (N.D.

17   Cal 2012);

18   • *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1002 (N.D. Cal. 2012);

19   • *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 U.S. Dist. LEXIS 39832, at *9 (N.D. Cal.

20   2011), *aff'd*, 2013 U.S. App. LEXIS 6369 (9th Cir. 2013);

21   • *Armstrong v. Brown*, 2011 WL 344922 (N.D. Cal. Aug. 8, 2011);

22   • *Lira v. Cate*, No. C00-0905, 2010 WL 727979 (N.D. Cal. Feb. 26, 2010);

23   • *Californians for Disability Rights, Inc. v. California Dep't of Trans.*, No. No. C 06–

24   05125 SBA (MEJ), 2010 WL 8746910 (N.D. Cal. Dec. 13, 2010);

25   • *Nat'l Fed'n of the Blind v. Target Corp.*, No. 06-cv-01802, 2009 WL 2390621

26   (N.D. Cal. Aug. 3, 2009);

27   • *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095 (N.D. Cal. 2008) (an

28   earlier motion);

- *Bancroft v. Trizechahn Corp.*, No. 02-cv-2373, Order Granting Plaintiff's Reasonable Attorneys' Fees and Costs in the Amount of $168,886, Doc. 278 (C.D. Cal. Aug. 14, 2006);

- *Willoughby v. DT Credit Corp.*, No. CV 05-05907, Order Awarding Attorneys' Fees After Remand, Doc. 65 (C.D. Cal. July 17, 2006);

- *Oberfelder v. City of Petaluma*, No. C-98-1470, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002), *aff'd*, 2003 U.S. App. LEXIS 11371 (9th Cir. 2003).

## III.   ASSIGNMENT AND DOCUMENTS REVIEWED

15.     In this case, I have been asked by Class Counsel to express my opinion as to the reasonableness of Class Counsel's lodestar.  To form this opinion, I have reviewed numerous documents in the case, including the following:

   a.   The Settlement Agreement and [Proposed] Final Judgment;

   b.   Plaintiffs' Motion for Class Certification, Defendants' Opposition, Plaintiffs' Reply, and Order Granting Class certification;

   c.   Defendants' Motion for Summary Adjudication on Statute of Limitations and Fraudulent Concealment, Plaintiffs' Opposition, Defendants' Reply, and Order;

   d.   Defendants' Motion for Summary Judgement, Plaintiffs' Opposition, Defendants' Reply, and Order;

   e.   Defendants' Motion for Summary Adjudication on Counts I and III, Plaintiffs' Opposition, Defendants' Reply, and Order;

   f.   Defendants' Motion to Decertify Class, Plaintiffs' Opposition, Defendants' Reply, and Order;

   g.   Plaintiffs' Motion for Preliminary Approval of Settlement;

   h.   Plaintiffs' May 22 Supplemental Submission Related to Preliminary Approval of Settlement;

   i.   Plaintiffs' Counsel's Joint Motion for Attorneys' Fees, Costs, and Service Award and the supporting declarations of Richard Grossman, Christopher Wheeler, Daniel Bird, Daniel Small, Sarah Grossman-Swenson, and Emilio Varanini; and

   j.   The Declaration of Professor Charles Silver in Support of Plaintiffs' Counsel's Joint Motion for Attorneys' Fees, Costs, and Service Award; and

   k.   The Declaration of Martin Gaynor in Support of Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Counsel's Joint Motion for Fees and Costs.

**Exhibit 3**
**3-10**

1

## IV.    CLASS COUNSEL'S RATES AND HOURS ARE REASONABLE.

2      16.    Class Counsel's lodestar is summarized in each of the five Class Counsel firms'

3   declarations.  *See* Grossman Decl. ¶¶ 51–72; Wheeler Decl. ¶¶ 330 &  Ex. 16; Small Decl. ¶ 38;

4   Bird Decl. ¶¶ 50–55 & Ex. 5; Swenson Decl. ¶¶ 35–39.  A chart listing each timekeeper's date of

5   bar admission or law school graduation and applicable rate is attached hereto as Exhibit B.  In my

6   opinion, each element of Class Counsel's lodestar is reasonable.

7                **A.**      **Class Counsel's Hourly Rates Are Within the Range of Reasonable**
                        **Rates Charged by, and Awarded to, Comparably Qualified and**
8                        **Experienced  Attorneys Engaged in Highly Complex Litigation.**

9      17.    Under California law, Class Counsel's hourly rates should be "within the range of

10   reasonable rates charged by and judicially awarded comparable attorneys for comparable work."

11   *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002).  In my opinion, Class

12   Counsel's 2020 hourly rates readily meet this standard.[3]

13      18.    Through decades of writing and practice, I have become very familiar with the

14   hourly rates charged by attorneys in California and elsewhere.  I have obtained this familiarity in

15   several ways by: (1) representing litigants and/or their attorneys in attorneys' fee litigation; (2)

16   serving as a consultant and/or expert in fee matters; (3) discussing fees with other attorneys; (4)

17   reviewing declarations regarding prevailing market rates and hours filed in my and other

18   attorneys' cases, as well as fee applications and awards in other cases, and (5) regularly reviewing

19   surveys and articles on attorneys' fees in legal publications and treatises.

20      19.    In preparing my opinion on the reasonableness of Class Counsel's hourly rates, I

21   have become familiar with Counsel's respective backgrounds and experience, the nature and

22

23   ─────────────────────
[3] In my experience, court-awarded attorneys' fees in California are almost always determined
24   based on current rates, i.e., the attorney's rate at the time a motion for fees is made, rather than the
    historical rate at the time the work was performed.  This is a common and accepted practice to
25   compensate attorneys for the delay in being paid.  *See Graham v. DaimlerChrysler*, 34 Cal. 4th at
    583–584; California Attorney Fee Awards (3d ed Cal. CEB, Mar. 2020 Supp.) § 9.113.  Here,
26   Class Counsel conservatively are using their 2020 rates though their fee motion is being filed in
    2021.  Moreover, for former employees, Class Counsel have reasonably used the rates under their
27   2020 rate structures that would be applicable to professionals with the background, skill, and
    experience that the former employees had at the time they left the firms.  For example, if a third-
28   year associate left the firm in 2018, Class Counsel have used the third-year associate rate under
    their firms' 2020 rate structures.

**Exhibit 3**
**3-11**

1   number of issues involved in this case, the quality of work produced by Class Counsel, and the

2   results they have achieved.  From my review, it is apparent to me that Class Counsel are among

3   the leading antitrust litigators in the nation, as demonstrated by, among other things, the very high

4   level of skill, expertise, and experience they have shown in this complex antitrust class action.

5          20.    Based on that review, and for the reasons discussed below, in my opinion Class

6   Counsel's 2020 hourly rates are reasonable for this hard-fought, complex, novel, and highly

7   successful litigation.

8                  **B.    Many Courts, Including California Courts, Have Found Class
                          Counsel's Hourly Rates Reasonable.**
9

10         21.    My opinion that Class Counsel's hourly rates are reasonable is based, in part, on

11  the fact that, as described in Class Counsel's declarations, their hourly rates have been found

12  reasonable by numerous other courts, including several California courts.

13         22.    Cohen Milstein's rates were found reasonable in *In re Google LLC St. View Elec.*

14  *Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *9 (N.D. Cal. Mar. 18, 2020)

15  (noting that Cohen Milstein's "standard billing have been approved multiple times in this

16  District").  *See also* Small Decl. ¶ 44.

17         23.    Farella's rates have repeatedly been found reasonable by Bay Area courts and

18  arbitrators, including in *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-CV-01370-EJD,

19  2020 WL 1677328, at *2 (N.D. Cal. Apr. 6, 2020) ("The Court concurs with the Special Master's

20  finding that the hourly rates for Farella's attorneys were 'wholly reasonable' and consistent with

21  market rates in the San Francisco Bay Area.").  *See also* Wheeler Decl. ¶ 294.

22         24.    Kellogg Hansen's rates have been found reasonable in various class action and

23  other cases, including in *In re CRT Antitrust Litig.*, Case No. 3:07-cv-05944 (N.D. Cal. June 8,

24  2017) [ECF 5169 at 5] (approving lodestar cross-check that included Kellogg Hansen's time at its

25  customary hourly rates).  *See also* Bird Decl. ¶ 53 & Ex. 6.

26         25.    Pillsbury's rates were most recently found reasonable in *Dimry v. NFL Player*

27  *Retirement Plan,* Case No. 3:16-cv-01413-JD, an ERISA dispute in the U.S. District Court for the

28  Northern District of California ending in 2018.  *See* Grossman Decl. ¶ 55 and Ex. 15.  Finding that

**Exhibit 3
3-12**

1    the materials submitted by Pillsbury in support of its motion for fees and costs "discharged the fee

2    claimant's burden of submitting evidence supporting the reasonableness of their rates," Judge

3    Donato approved Pillsbury's associate and partner rates for the lawyers working on that case.

4    Although the Pillsbury partner in charge of the *Dimry* litigation was 12 years junior to Lead

5    Counsel Richard Grossman here, the 2018 partner rate ($900) approved by Judge Donato was

6    identical to the rate charged by Mr. Grossman at that time. *Id.*

7       26.     McCracken's rates have been found reasonable in various class actions and other

8    cases, including most recently in *Martinez v. Flying Food Group Pacific Inc.*, Los Angeles

9    Superior Court Case Nos. BC553539 & BC569325 (Feb. 8, 2018) (approving rates requested by

10    McCracken and holding that the fee request was "well-supported by the lodestar"). *See* Swenson

11    Decl., ¶ 4 and Exs. 2–5.

12       27.     The fact that other California and federal courts have so often approved Class

13    Counsel's rates is strong evidence of their reasonableness. *See California Attorney Fee Awards*

14    (3d ed Cal. CEB) § 9.121(2).

**C.      Class Counsel's Rates Are Consistent with Rates Found Reasonable by San Francisco Bay Area Courts.**

17       28.     Class Counsel's hourly rates also are well within the range of the hourly rates

18    found reasonable by Bay Area courts for complex litigation. Attached as Exhibit C is a

19    compilation of the hourly rates found reasonable in ten local cases. Class Counsel's 2020 hourly

20    rates are entirely consistent with these prior rate determinations as shown in the below table based

21    on Exhibit C:

13

**Exhibit 3**
**3-13**

| Title | Range of Rates Approved by Bay Area Courts[4] | Range of Class Counsel's Rates[5] |
|---|---|---|
| Partners | $520 – $1,310 | $660 – $1,250 |
| Of Counsel | $500 – $975 | $700 – $960 |
| Associates | $310 – $910 | $400 – $805 |
| Staff Attorneys | $275 – $910 | $400 – $460 |
| Contract Attorneys | $200 – $385 | $44 – $200 [capped][6] |
| Paralegals | $170 – $400 | $225 – $430 |

29.    In addition, Class Counsel's blended rates are below the blended rates that Bay Area courts have found reasonable.  For example, the blended rates of each Class Counsel firm, as well as Class Counsel's aggregate blended rate of $531, is well below the $634.48 blended rate that the Northern District found reasonable in *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) ("Courts in this district would

---

[4] To allow for an apples-to-apples comparison, I have adjusted the range of rates awarded in years prior to 2020 using the Consumer Price Index and rounded to the nearest ten dollars.  For example, for a rate of $1,000 found to be reasonable in 2015, the CPI-adjusted rate in 2020 is $1,103.  *See* U.S. Dept. of Labor, Bureau of Labor Stats., CPI Inflation Calculator, available at https://www.bls.gov/data/inflation_calculator.htm (last visited August 7, 2020).  This adjustment is conservative because there is considerable evidence that law firm rate increases have far exceeded the CPI.  For example, a ten percent (10%) increase in 2016 rates over 2015 rates was found reasonable in *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-CV-01130-WHO, 2017 WL 783490, at *11 (N.D. Cal. Mar. 1, 2017) (absent "specific justification" supporting higher increase, plaintiff's attorneys entitled to 10 percent increase in 2016 rates over 2015 rates).  Similar rate increases in the legal marketplace have been observed by commentators. *See, e.g.*, Simons, Big Law Should Raise Partner Billing Rates 10+ Percent Now, The Recorder, Nov. 15, 2018, at 3 ("In a normal year, partner rates would go up around 5 or 6 percent").

[5] *See* Exhibit B for each timekeeper's title, date of bar admission or law school graduation, and applicable hourly rate.

[6] The hourly rates for contract attorneys charged here are substantially less than the rates that courts have approved in prior cases.  *See, e.g., In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *8 (N.D. Cal. Dec. 6, 2017), aff'd, 768 F. App'x 651 (9th Cir. 2019) (finding counsel's $300–$350 per hour rates for contract attorneys, as set forth in the Supplemental Declaration of Steve W. Berman in Support of Motion for Attorneys' Fees, Expenses, and Service Awards, Doc. 697, "in line with market rates"); *Andrews v. Lawrence Livermore Nat. Sec., LLC*, No. 11-3930, 2012 WL 160117, at *2 (N.D. Cal. Jan. 18, 2012) (approving $300/hour as reasonable rate for contract attorney).  Each firm's practices regarding contract attorneys are described in their individual declarations. *See* Grossman Decl. ¶¶ 56, 76; Wheeler Decl. ¶ 332 & 332 n.6; Small Decl. ¶¶ 30, 39 n.4, 40, 46 & n.5; Swenson Decl. ¶ 25 & n. 1; Bird Decl. ¶¶ 47–49.

---

Exhibit 3
3-14

1  generally find that the blended rate of $634.48 is within the reasonable range of rates.").  For each

2  firm's blended rate, see Grossman Decl. ¶ 54; Wheeler Decl. ¶ 33; Bird Decl. ¶ 52; Swenson Decl.

3  ¶ 37; Small Decl. ¶ 43.

4          30.     Given the high level of skill, experience, and expertise Class Counsel have

5  exhibited here, as well as the excellent results they have obtained, it is evident to me that their

6  rates are well within the range of rates awarded for complex litigation in the Bay Area legal

7  community.

8          **D.     Class Counsel's Rates Are Consistent with Rates Charged by Attorneys
               in the Bay Area**
9

10         31.     My opinion that Class Counsel's rates are reasonable also is based on the standard

11  non-contingent hourly rates for complex litigation charged by and/or awarded to many Bay Area

12  law firms or law firms with offices or practices in Bay Area, as set out in Exhibit D.

13         32.     Exhibit D, which I have compiled from court filings, sworn declarations and

14  depositions, surveys, and other reliable sources, such as direct communications with law firms,

15  demonstrates that Class Counsel's rates are well within the normal range of hourly rates charged

16  by attorneys and staff for litigation in the Bay Area.  The table below summarizes the data in

17  Exhibit D by position.

18
| Title | Rates Charged by Other Attorneys in the Bay Area[7] | Range of Class Counsel's Rates |
|---|---|---|
| Partners | $579 – $1,895 | $660 – $1,250 |
| Of Counsel | $650 – $1,120 | $700 – $960 |
| Associates | $313 – $1,311 | $400 – $805 |
| Paralegals | $174 – $480 | $225 – $430 |

24  The table below summarizes the data in Exhibit D for attorneys by years of experience when titles

25  were unavailable.

26

27  ———————————————

28  [7] To allow for an apples-to-apples comparison, I have adjusted the range of rates awarded  in years prior to 2020 using the Consumer Price Index and rounded to the nearest dollar.  *See* n. 4, *infra.*

| Years of Experience | Rates Charged by Other Attorneys in the Bay Area[8] | Range of Class Counsel's Rates |
|---|---|---|
| 30+ | $767 – $1,500 | $550 – $1,250 |
| 21–30 | $728 – $1,425 | $400 – $1,095 |
| 11–20 | $560 – $1,060 | $415 – $890 |
| 0–10 | $358 – $910 | $400 – $890 |

33.     Comparing individual Class Counsel rates also shows that the requested rates here are well within the range of local rates charged by comparably qualified attorneys for highly complex litigation.  For example, in 2020, Gibson Dunn & Crutcher billed its senior partners at $1,395 to $1,525 per hour, senior associates at $960 per hour, and paralegals at $480 per hour. Class Counsel's rates here are well below those figures.

34.     Moreover, as shown below, the law firms defending Sutter in this case have charged rates that are comparable to Class Counsel's.  This further supports my opinion that Class Counsel's rates are well within the range of rates charged by comparably qualified attorneys for complex litigation in the Bay Area.

35.     For example, Jones Day has charged the following rates for its Bay Area attorneys: $1,025 in 2018 for a partner with over thirty years of experience; $850 in 2016 for a partner with twelve years of experience; $675 in 2016 for an associate with six years of experience; and over $400 in 2020 for a law clerk.  *See* Monthly Statement of Services Rendered and Expenses Incurred by Jones Day, Doc. 1132, 18-35672 (Bankr. S.D.T.X.), filed Jan. 24, 2019, at Ex. B; McConnell Declaration in Support of Motion for Attorneys' Fees of Jones Day, Doc. 39-1, 16-cv-06311 (N.D. Cal.), filed Jan. 24, 2017, at 4; Declaration of Patrick T. Michael in Support of Defendant Xilinx Inc.'s Motion for Attorneys' Fees, Doc. 102-2, 16-cv-00925 (N.D. Cal.), filed June 23, 2016, at 3-4; Third Monthly Fee Statement of Jones Day for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Special Counsel to the Debtors for the Period from

---

[8] To allow for an apples-to-apples comparison, I have adjusted the range of rates awarded in years prior to 2020 using the Consumer Price Index and rounded to the nearest dollar.  *See* n. 4, *infra*.

**Exhibit 3
3-16**

1  January 1, 2020 through January 31, 2020, Doc. 938, 19-23649-rdd (Bankr. S.D.N.Y.), filed

2  Mar. 16, 2020, at Ex. A.

3       36.    Similarly, Keker, Van Nest & Peters charged the following rates in 2019: $1,075

4  for Of Counsel who graduated in 1980; $775 for Of Counsel who graduated in 2001; and $700 for

5  a partner who graduated in 2010.  *See* Declaration of Nicholas S. Goldberg (Keker) in Support of

6  OpenGov, Inc.'s Motion for Attorneys' Fees, Doc. 40-1, Case No. 18-cv-07198 (N.D. Cal.), filed

7  March 14, 2019.  In 2018, Keker charged the following rates: $875 for a partner who graduated

8  law school in 2002; $600 for a fifth-year associate; and $500 for a third-year associate.  *See*

9  Declaration of Steven P. Ragland In Support Of Plaintiffs' Motion For Award Of Reasonable

10  Attorneys' Fees And Expenses, Doc. 135-3, Case No. 2:13-cv-00882 (E.D. Cal.), filed April 11,

11  2018.

12       37.    Likewise, Quinn Emanuel, which represented Sutter earlier in this case, charged the

13  following rates in 2018: $1,135 for a Bay Area partner who graduated law school in 1980; $910

14  for Bay Area of counsel who graduated in 2008; and $630 for a Bay Area second-year associate.

15  *See* Declaration of Daniel L. Brockett in Support of Lead Counsel's Motion for an Award of

16  Attorneys' Fees and Litigation Expenses Filed on Behalf of Quinn Emanuel Urquhart & Sullivan,

17  Doc. 699, 14-cv-07126 (S.D.N.Y), filed Sept. 28, 2018.

18       38.    I also have reviewed Class Counsel's charges for non-attorney professionals with

19  specialized, non-clerical skills (e.g. paralegals, investigators, summer associates, IT directors,

20  research managers and analysts, litigation support specialists, and trial coordinators), and have

21  considered the roles those professionals played in this case, as described in Class Counsel's

22  declarations.  In my experience, it is common practice for California and Bay Area law firms to

23  bill for such services, *see California Attorney Fee Awards* (3d ed Cal. CEB) §§ 9.29, 9.119(b), and

24  the rates requested by Class Counsel for that work are within the range of rates charged by those

25  firms.

26       39.    The foregoing data supports my opinion that Class Counsel's rates for their work in

27  this litigation are well within, and sometimes significantly below, the range of rates charged by,

28  and awarded, comparably qualified attorneys and professional staff in the local legal community

1    for similarly complex work.

2        **E.    Class Counsel's Hourly Rates Are Paid by Bay Area Clients**

3        40.    Class Counsel firms also represent fee-paying (i.e., non-contingent) clients in the

4    Bay Area or California who pay Class Counsel the same (or higher) hourly rates than they have

5    used to calculate their lodestar for cross-check purposes in this case.  *See* Grossman Decl. ¶ 53;

6    Wheeler Decl. ¶ 294; Bird Decl. ¶¶ 5, 51; Small Decl. ¶ 45; *see also* Swenson Decl. ¶ 25 n.1.  The

7    fact that fee-paying clients in the Bay Area pay these lawyers at the same or higher rates than the

8    rates they present here shows that, in the Bay-Area market for legal services, clients consider these

9    rates reasonable  for the skill, experience, and quality of work those Class Counsel provide.  *See*

10   *California Attorney Fee Awards* (3d ed Cal. CEB) § 9.121(2).

11       **V.    CLASS COUNSEL'S HOURS ARE REASONABLE.**

12       41.    Based on my review of the materials noted above, my experience with complex

13   class actions, and my review of the time expended on the case by Class Counsel, Class Counsel's

14   hours appear to be reasonable for a case of this scope, complexity, novelty, and duration.[9]

15       42.    The factors that have influenced my opinion that Class Counsel's hours are

16   reasonable, as detailed more fully in Class Counsel's declarations, include: the amounts at stake

17   and the results obtained, for the Class and for the public; Sutter's vigorous defense (involving over

18   60 outside counsel at high caliber law firms); the difficulty, novelty, and complexity of the issues,

19   both legal and factual; and the exceptional work performed by Class Counsel to succeed in the

20   face of these difficulties.

21       43.    The fact that Class Counsel's hours are based on daily, contemporaneous time

22   records further confirms the reliability and credibility of their hours.  *Cf. Horsford v. Bd. of*

23   *Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("We think the verified time

24

25   ─────────────────────

26   [9] Consistent with this being only a cross-check, I have not done an entry-by-entry review of
     counsel's time records.  *See Laffitte*, 1 Cal. 5th at 505 (for cross-check, appropriate focus is on
27   "the general question of whether the fee award appropriately reflects the degree of time and effort
     expended by the attorneys.").  I have, however, reviewed Class Counsel's hours by phase, as set
28   forth in the Wheeler, Grossman, Bird, Small, and Swenson declarations, and that review has
     confirmed for me that the hours by phase for each of the Class Counsel firms are reasonable.

1  statements of the attorneys, as officers of the court, are entitled to credence in the absence of a

2  clear indication the records are erroneous.").

3       44.     It also is relevant to me that Class Counsel have exercised significant billing

4  judgment in presenting their hours.  I understand that, where appropriate, Class Counsel have not

5  included in their lodestar certain time for attorneys with minimal involvement in the case, hours

6  billed by some additional attorneys at depositions or hearings, hours spent by attorneys on

7  arguably administrative or clerical tasks, time spent by more senior attorneys for work that

8  arguably could have been performed by more junior attorneys, and time spent investigating

9  Sutter's practices before counsel was consulted by someone connected to UEBT.  All told, I

10  understand that Class Counsel are not claiming millions of dollars that could have been included

11  in the lodestar.  Grossman Decl. ¶¶ 73–79; Wheeler Decl. ¶ 331; Bird Decl. ¶ 50 & n.6, 55; Small

12  Decl. ¶ 41; Swenson Decl. ¶ 7.

13       45.     Finally, Class Counsel's 194,643 total hours are similar to the number of hours

14  found reasonable in several large, complex cases.  *See, e.g.*, *In re: Cathode Ray Tube (CRT)*

15  *Antitrust Litig*., No. 1917, 2016 WL 4126533, at *9 (N.D. Cal. Aug. 3, 2016) (finding that Class

16  Counsel's billing 183,000 hours "was necessary given the size and scope of the litigation."); *In re:*

17  *Urethane Antitrust Litig.*, No. 04-1616, 2016 WL 4060156, at *7–8, *8 n.9 (D. Kan. July 29,

18  2016) (awarding 33% of approximately $833.5 and finding that counsel's $100,800,000 lodestar,

19  reflecting more than 193,000 hours, was reasonable, as was the 3.2 lodestar multiplier);  *Kirk Dahl*

20  *v. Bain Capital Partners LLC*, No. 1:07-cv-12388, Doc. Nos. 1051, 1502 (awarding 33% of

21  $590.5 million common fund for 186,000 hours).[10]

22  **VI.    CONCLUSION**

23       46.     Class Counsel achieved an extraordinary result in a landmark antitrust class action

24  litigated against nationally renowned defense counsel.  Class Counsel's rates are well within the

25

26

27

28

---

[10] Though I have not been asked to opine on the reasonableness of the lodestar multiplier that would be implied based on an award of 30% of the common fund (the portion sought by Class Counsel), as I note above, I agree with Professor Silver's conclusion that a multiplier of 1.67 or 1.92 for Class Counsel, being within the normal range, is reasonable.

1  range of rates charged by and awarded to comparably qualified and experienced attorneys in the

2  Bay Area legal market for complex litigation, and the number of hours they have worked over the

3  past seven years is reasonable.  Class Counsel's lodestar is reasonable.

4          I declare under penalty of perjury under the laws of the State of California that the

5  foregoing is true and correct.

6          Executed this 29th day of March 2021, in Berkeley, California.

7

8

9  _____

10  Richard M. Pearl

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38351\13609194.2

PEARL DECL. ISO JOINT MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD
Case Nos. CGC-14-538451 & CGC-18-565398

**Exhibit 3**
**3-20**

# EXHIBIT A

**Exhibit 3**
**3-21**

# RESUME OF RICHARD M. PEARL

**RICHARD M. PEARL**
**LAW OFFICES OF RICHARD M. PEARL**
1816 Fifth Street
Berkeley, CA 94710
(510) 649-0810
(510) 548-3143 (facsimile)
rpearl@interx.net (e-mail)

## EDUCATION

University of California, Berkeley, B.A., Economics (June 1966)
Berkeley School of Law (formerly Boalt Hall), Berkeley, J.D. (June 1969)

## BAR MEMBERSHIP

Member, State Bar of California (admitted February 1970)
Member, State Bar of Georgia (admitted June 1970) (inactive)
Admitted to practice before all California State Courts; the United States Supreme Court; the United States Court of Appeals for the District of Columbia and Ninth Circuits; the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, for the District of Arizona, and for the Northern District of Georgia; and the Georgia Civil and Superior Courts and Court of Appeals.

## EMPLOYMENT

LAW OFFICES OF RICHARD M. PEARL (April 1987 to Present): Civil litigation practice (AV rating), with emphasis on court-awarded attorney's fees, class actions, and appellate practice. Selected Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019 and 2020.

QUALIFIED APPELLATE MEDIATOR, APPELLATE MEDIATION PROGRAM, California Court of Appeal, First Appellate District (October 2000 to 2013) (program terminated).

ADJUNCT PROFESSOR, HASTINGS COLLEGE OF THE LAW (January 1988 to 2014): Taught *Public Interest Law Practice*, a 2-unit course that focused on the history, strategies, and issues involved in the practice of public interest law.

PEARL, McNEILL & GILLESPIE, Partner (May 1982 to March 1987): General civil litigation practice, as described above.

1

**Exhibit 3**
**3-22**

CALIFORNIA RURAL LEGAL ASSISTANCE, INC. (July 1971 to September 1983) (part-time May 1982 to September 1983):

> Director of Litigation (July 1977 to July 1982)
> Responsibilities: Oversaw and supervised litigation of more than 50 attorneys in CRLA's 15 field offices; administered and supervised staff of 4-6 Regional Counsel; promulgated litigation policies and procedures for program; participated in complex civil litigation.

> Regional Counsel (July 1982 to September 1983 part-time)
> Responsibilities: Served as co-counsel to CRLA field attorneys on complex projects; provided technical assistance and training to CRLA field offices; oversaw CRLA attorney's fee cases; served as counsel on major litigation.

> Directing Attorney, Cooperative Legal Services Center (February 1974 to July 1977) (Staff Attorney February 1974 to October 1975)
> Responsibilities: Served as co-counsel on major litigation with legal services attorneys in small legal services offices throughout California; supervised and administered staff of four senior legal services attorneys and support staff.

> Directing Attorney, CRLA McFarland Office (July 1971 to February 1974) (Staff Attorney July 1971 to February 1972)
> Responsibilities: Provided legal representation to low income persons and groups in Kern, King, and Tulare Counties; supervised all litigation and administered staff of ten.

HASTINGS COLLEGE OF THE LAW, Instructor, Legal Writing and Research Program (August 1974 to June 1978)
Responsibilities: Instructed 20 to 25 first year students in legal writing and research.

CALIFORNIA AGRICULTURAL LABOR RELATIONS BOARD, Staff Attorney, General Counsel's Office (November 1975 to January 1976, while on leave from CRLA)
Responsibilities: Prosecuted unfair labor practice charges before Administrative Law Judges and the A.L.R.B. and represented the A.L.R.B. in state court proceedings.

ATLANTA LEGAL AID SOCIETY, Staff Attorney (October 1969 to June 1971)
Responsibilities: Represented low-income persons and groups as part of 36-lawyer legal services program located in Atlanta, Georgia.

**Exhibit 3**
**3-23**

**PUBLICATIONS**

Pearl, *California Attorney Fee Awards, Third Edition* (Cal. Cont. Ed. Bar 2010) and February 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, and March 2020 Supplements

Pearl, *California Attorney Fee Awards, Second Edition* (Cal. Cont. Ed. Bar 1994), and 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 Supplements

*Graham v. DaimlerChrysler Corp.* and *Tipton-Whittingham v. City of Los Angeles*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Feb. 2005)

*Current Issues in Attorneys' Fee Litigation*, California Labor and Employment Law Quarterly (September 2002 and November 2002)

*Flannery v. Prentice: Shifting Attitudes Toward Fee Agreements and Fee-Shifting Statutes*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Nov. 2001)

*A Practical Introduction to Attorney's Fees*, Environmental Law News (Summer 1995)

Wrongful Employment Termination Practice, Second Edition (Cal. Cont. Ed. Bar 1997) (co-authored chapter on "Attorney Fees")

California Attorney's Fees Award Practice (Cal. Cont. Ed. Bar 1982) (edited), and 1984 through 1993 Supplements

Program materials on attorney fees, prepared as panelist for CEB program on Attorneys' Fees: Practical and Ethical Considerations in Determining, Billing, and Collecting (October 1992)

Program materials on Attorney's Fees in Administrative Proceedings: California Continuing Education of the Bar, prepared as panelist for CEB program on Effective Representation Before California Administrative Agencies (October 1986)

Program materials on Attorney's Fees in Administrative Proceedings: California Continuing Education of the Bar, prepared as panelist for CEB program on Attorneys' Fees: Practical and Ethical Considerations (March 1984)

*Settlors Beware/The Dangers of Negotiating Statutory Fee Cases* (September 1985) Los Angeles Lawyer

Program Materials on Remedies Training (Class Actions), sponsored by Legal Services Section, California State Bar, San Francisco (May 1983)

Attorneys' Fees: A Legal Services Practice Manual (Legal Services Corporation 1981)

3

**Exhibit 3**
**3-24**

**PUBLIC SERVICE**

Member, Attorneys' Fee Task Force, California State Bar

Member, Board of Directors, California Rural Legal Assistance Foundation

**REPRESENTATIVE CASES**

*ACLU of N. Cal. v. DEA*
> (N.D. Cal. 2012) 2012 U.S.Dist.LEXIS 190389

*Alcoser v. Thomas*
> (2011) 2011 Cal.App.Unpub.LEXIS 1180

*Arias v. Raimondo*
> (2018) 2018 U.S.App.LEXIS 7484

*Boren v. California Department of Employment*
> (1976) 59 Cal.App.3d 250

*Cabrera v. Martin*
> (9th Cir. 1992) 973 F.2d 735

*Camacho v. Bridgeport Financial, Inc.*
> (9th Cir. 2008) 523 F.3d 973

*Campos v. E.D.D.*
> (1982) 132 Cal.App.3d 961

*Center for Biological Diversity v. County of San Bernardino*
> (2010) 185 Cal.App.4th 866

*Children & Families Commission of Fresno v. Brown*
> (2014) 228 Cal.App.4th 45

*Committee to Defend Reproductive Rights v. A Free Pregnancy Center*
> (1991) 229 Cal.App.3d 633

*David C. v. Leavitt*
> (D. Utah 1995) 900 F.Supp. 1547

*Delaney v. Baker*
> (1999) 10 Cal.4th 23

**Exhibit 3**
**3-25**

**REPRESENTATIVE CASES (cont.)**

*Dixon v. City of Oakland*
        (2014) 2014 U.S.Dist.LEXIS 169688

*Employment Development Dept. v. Superior Court (Boren)*
        (1981) 30 Cal.3d 256

*Environmental Protection Info. Ctr. v Department of Forestry & Fire Protection*
        (2010) 190 Cal.App.4th 217

*Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*
        (N.D. Cal. 2002) 229 F. Supp.2d 993, *aff'd* (9th Cir. 2004) 103 Fed. Appx. 627

*Flannery v Prentice*
        (2001) 26 Cal. 4th 572

*Guerrero v. Cal. Dept. of Corrections etc.*
        (2016) 2016 U.S.Dist.LEXIS 78796, *aff'd in relevant part,* (9th Cir. 2017) 701
        Fed.Appx. 613

*Graham v. DaimlerChrysler Corp.*
        (2004) 34 Cal. 4th 553

*Heron Bay Home Owners Assn. v. City of San Leandro*
        (2018) 19 Cal.App.5th 376

*Horsford v. Board of Trustees of Univ. of Calif.*
        (2005) 132 Cal.App.4th 359

*Ketchum v. Moses*
        (2001) 24 Cal.4th 1122

*Kievlan v. Dahlberg Electronics*
        (1978) 78 Cal.App.3d 951, *cert. denied* (1979)
        440 U.S. 951

*Lealao v. Beneficial  California, Inc.*
        (2000) 82 Cal.App.4th 19

*Lewis v. California Unemployment Insurance Appeals Board*
        (1976) 56 Cal.App.3d 729

**Exhibit 3**
**3-26**

**REPRESENTATIVE CASES (cont.)**

*Local 3-98 etc. v. Donovan*
> (N.D. Cal. 1984) 580 F.Supp. 714,
> *aff'd* (9th Cir. 1986) 792 F.2d 762

*Mangold v. California Public Utilities Commission*
> (9th Cir. 1995) 67 F.3d 1470

*Maria P. v. Riles*
> (1987) 43 Cal.3d 1281

*Martinez v. Dunlop*
> (N.D. Cal. 1976) 411 F.Supp. 5,
> *aff'd* (9th Cir. 1977) 573 F.2d 555

*McQueen, Conservatorship of*
> (2014) 59 Cal.4th 602 (argued for *amici curiae*)

*McSomebodies v. Burlingame Elementary School Dist.*
> (9th Cir. 1990) 897 F.2d 974

*McSomebodies v. San Mateo City School Dist.*
> (9th Cir. 1990) 897 F.2d 975

*Molina v. Lexmark International*
> (2013) 2013 Cal.App. Unpub. LEXIS 6684

*Moore v. Bank of America*
> (9th Cir. 2007) 2007 U.S. App. LEXIS 19597

*Moore v. Bank of America*
> (S.D. Cal. 2008) 2008 U.S. Dist. LEXIS 904

*Mora v. Chem-Tronics, Inc.*
> (S.D. Cal. 1999) 1999 U.S. Dist. LEXIS 10752,
> 5 Wage & Hour Cas. 2d (BNA) 1122

*Nadaf-Rahrov v. Nieman Marcus Group*
> (2014) 2014 Cal.App. Unpub. LEXIS 6975

*Orr v. Brame*
> (9th Cir. 2018) 727 Fed.Appx. 265, 2018 U.S.App.LEXIS 6094

**Exhibit 3**
**3-27**

**REPRESENTATIVE CASES (cont.)**

*Orr v. Brame*
(9th Cir. 2019) 793 Fed.Appx. 485

*Pena v. Superior Court of Kern County*
(1975) 50 Cal.App.3d 694

*Ponce v. Tulare County Housing Authority*
(E.D. Cal 1975) 389 F.Supp. 635

*Ramirez v. Runyon*
(N.D. Cal. 1999) 1999 U.S. Dist. LEXIS 20544

*Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017), *aff'd on merits (fees not appealed)* 269 F.3d 1066 (9th Cir. 2020)

*Robles v. Employment Dev. Dept.*
(2019) 38 Cal.App.5[th] 191

*Rubio v. Superior Court*
(1979) 24 Cal.3d 93 (amicus)

*Ruelas v. Harper*
(2015) 2015 Cal.App. Unpub.LEXIS 7922

*Sokolow v. County of San Mateo*
(1989) 213 Cal. App. 3d. 231

*S.P. Growers v. Rodriguez*
(1976) 17 Cal.3d 719 (amicus)

*Swan v. Tesconi*
(2015) 2015 Cal.App. Unpub. LEXIS 3891

*Tongol v. Usery*
(9th Cir. 1979) 601 F.2d 1091,
*on remand* (N.D. Cal. 1983) 575 F.Supp. 409,
*revs'd* (9th Cir. 1985) 762 F.2d 727

*Tripp v. Swoap*
(1976) 17 Cal.3d 671 (amicus)

7

**Exhibit 3**
**3-28**

**REPRESENTATIVE CASES (cont.)**

*United  States (Davis) v. City and County of San Francisco*
        (N.D. Cal. 1990) 748 F.Supp. 1416, *aff'd in part*
        *and revs'd in part sub nom Davis v. City and County*
        *of San Francisco* (9th Cir. 1992) 976 F.2d 1536,
        *modified on rehearing* (9th Cir. 1993) 984 F.2d 345

*United  States v. City of San Diego*
        (S.D.Cal. 1998) 18 F.Supp.2d 1090

*Vasquez v. State of California*
        (2008) 45 Cal.4th 243 (*amicus*)

*Velez v. Wynne*
        (9th Cir. 2007) 2007 U.S. App. LEXIS 2194

**SEPTEMBER 2020**

**Exhibit 3
3-29**

# EXHIBIT B

**Exhibit 3**
**3-30**

**Exhibit B: 2020 Rates of Class Counsel**

**Pillsbury & Coleman**

| Timekeeper | Title | Law School Grad. Year | 2020 Rate |
|---|---|---|---|
| Richard L. Grossman | Of Counsel | 1979 | $960 |
| Philip L. Pillsbury Jr. | Partner | 1976 | $675 |
| Ingrid Leverett | Special Counsel | 1990 | $550[1] |
| Azin Jalali | Associate | 2010 | $475 |
| Kathy Rogers | Paralegal | N/A | $225 |
| Stephen Kightlinger | Contract Attorney | 1997 | $200* |
| Donald Hilla | Contract Attorney | 1989 | $200 * |
| Neeraja Viswanathan | Contract Attorney | 2000 | $200 * |
| Nathan Clark | Contract Attorney | 2007 | $200* |
| Karis Daggs | Contract Attorney | 2008 | $200* |
| Angela Kaaiohelo | Contract Attorney | 2012 | $200* |

**Farella Braun + Martel**

| Timekeeper | Title | Bar Admission | 2020 Rate |
|---|---|---|---|
| Christopher C. Wheeler | Partner | 2003 | $785 |
| Karen P. Kimmey | Partner | 1994 | $895 |
| John L. Cooper | Partner | 1972 | $1250 |
| Roderick M. Thompson | Partner | 1980 | $975 |
| Matthew M. Lewis | Partner | 1985 | $935 |
| Steven R. Lowenthal | Partner | 1982 | $925 |
| Gary M. Kaplan | Partner | 1991 | $795 |
| Jin Kim | Partner[2] | 2000 | $660 |
| Alex Reese | Associate/Partner[3] | 2011 | $710 |
| Janice W. Reicher | Associate | 2012 | $675 |
| Nell Clement | Associate | 2008 | $710** |
| Aviva J. Gilbert | Associate | 2014 | $650 |

---

[1] Pillsbury used Ms. Leverett's rate from 2016, her last year with Pillsbury, because there is no comparable attorney currently employed at Pillsbury & Coleman.
[2] Ms. Kim is a partner at Dwyer + Kim.
[3] Mr. Reese became a partner effective January 1, 2020.

1

**Exhibit 3**
**3-31**

| Timekeeper | Title | Bar Admission | 2020 Rate |
|---|---|---|---|
| Claire Johnson | Associate | 2015 | $560 |
| Russell Taylor | Associate | 2018 | $515 |
| Alicia Jovais | Associate | 2014 | $560** |
| Ryan H. Wessels | Associate | 2017 | $460 |
| Paul B. Duncan | Paralegal | NA | $355 |
| Charity G. Van Dyke | Paralegal | NA | $350 |
| Fernando Esponda | Paralegal | NA | $350 |
| Diane Marangio | Paralegal | NA | $345 |
| Dina M. Aguilar | Paralegal | NA | $285 |
| Roshni Sopariwalla | Case Clerk | NA | $190 |
| Sara Costello | Practice Support Supervisor | NA | $325 |
| Jessica Birdsall | Practice Support Project Manager | NA | $285 |
| Christina Kueppers | Contract Attorney | 2000 | $200* |
| Clark Ludlow | Contract Attorney | 2012 | $200* |
| Eric G. Ogawa | Contract Attorney | 2009 | $200* |
| Kristin C. Castle | Contract Attorney | 1999 | $200* |
| Molly O. Barton | Contract Attorney | 1999 | $200* |
| Ibtesam Salman | Contract Attorney | 2012 | $200* |
| Sean M. Ward | Contract Attorney | 2000 | $200* |

## McCracken, Stemerman & Holsberry LLP

| Timekeeper | Title | Law School Grad. Year | 2020 Rate |
|---|---|---|---|
| Steven L. Stemerman | Partner | 1975 | $850 |
| Elizabeth A. Lawrence | Partner | 1983 | $850** |
| Florence E. Culp | Partner | 1990 | $800** |
| Yul M. Miller | Of Counsel | 2005 | $700** |
| Sarah T. Grossman-Swenson | Partner | 2008 | $750 |
| Kyrsten Skogstad | Associate | 2011 | $575** |
| Yonina Alexander | Associate | 2012 | $575** |
| A. Mirella Nieto | Associate | 2014 | $575 |
| Kimberley C. Weber | Associate | 2014 | $575 |
| F. Benjamin Kowalczyk | Associate | 2017 | $400** |

2

**Exhibit 3**
**3-32**

| Timekeeper | Title | Law School Grad. Year | 2020 Rate |
|---|---|---|---|
| Richard N. Treadwell | Associate | 2018 | $400 |
| Luke N. Dowling | Associate | 2019 | $400 |
| Jose Aparicio | Contract Attorney | 1998 | $200* |
| Glenn Goffin | Contract Attorney | 1988 | $200* |
| Hope Greenhill | Contract Attorney | 1966 | $200* |
| Marina Kagramano | Contract Attorney | 2010 | $200* |
| Antho J. Marshall | Contract Attorney | 2010 | $200* |
| Allen Shimea | Contract Attorney | 2004 | $200* |
| James Sloat | Contract Attorney | 2000 | $200* |
| William Vongdeuane | Contract Attorney | 2009 | $200* |
| Sean Ward | Contract Attorney | 1994 | $200* |

**Kellogg, Hansen, Todd, Figel & Frederick PLLC**

| Timekeeper | Title | Bar Admission | 2020 Rate |
|---|---|---|---|
| Aaron M. Panner | Partner | 1995 | $1,095 |
| Daniel G. Bird | Partner | 2005 | $890 |
| Joshua D. Branson | Partner | 2011 | $890 |
| Kenneth M. Fetterman | Partner | 1997 | $890 |
| Linda A. Elliott | Of Counsel | 1988 | $835 |
| Collin R. White | Associate | 2014 | $805 |
| Jacob E. Hartman | Associate | 2015 | $750 |
| Albert Y. Pak | Associate | 2017 | $690** |
| Julius P. Taranto | Associate | 2017 | $690 |
| Benjamin J. Gottesman | Associate | 2016 | $635** |
| Mark P. Hirschboeck | Associate | 2018 | $535** |
| Joseph M. Davies | Staff Attorney | 2007 | $460 |
| Michael J. Grody | Staff Attorney | 2000 | $460 |
| Thomas B. Samuels | Staff Attorney | 1997 | $460 |
| Donna L. Owens | Staff Attorney | 2002 | $460** |
| Michael W. Purkey | Staff Attorney | 1998 | $400 |
| James M. Thunder | Staff Attorney | 1977 | $400 |
| Ronald S. Little | Staff Attorney | 1999 | $460** |

3

**Exhibit 3**
**3-33**

| Timekeeper | Title | Bar Admission | 2020 Rate |
|---|---|---|---|
| Brian McConville | Staff Attorney | 1991 | $460** |
| James T. Hill | Staff Attorney | 2012 | $400** |
| Bernadette M. Murphy | Paralegal Director | N/A | $430 |
| Susan D. Cohen | Paralegal | N/A | $430 |
| Kathleen N. Jackson | Paralegal | N/A | $345 |
| James A. Birmingham | Paralegal | N/A | $315 |
| Chandler J. Sella | Paralegal | N/A | $315 |
| Renee L. Lowder | Paralegal | N/A | $275 |
| Peter S. Jorgensen | Summer Associate | N/A | $185** |
| Brian A. Kulp | Summer Associate | N/A | $185** |
| Alyssa J. Picard | Summer Associate | N/A | $185** |
| Chase H. Robinett | Summer Associate | N/A | $185** |
| Carver D. Sinn | Research Manager | N/A | $260 |
| Vegas F. Kastberg | Research Analyst | N/A | $160** |
| Oliver R. Goodridge | Research Analyst | N/A | $160** |
| David L. Althoff | IT Director | N/A | $200 |
| James A. Brennan | Litigation Support Specialist | N/A | $145 |
| Joyce D. Cannon | Trial Coordinator | N/A | $115 |
| Hope Greenhill | Contract Attorney | 1966 | $52.50 |
| Caroline De Luca | Contract Attorney | 2011 | $44 |
| Dustin Dean | Contract Attorney | 2006 | $44 |
| Ronald Kimble | Contract Attorney | 2002 | $44 |
| Matthew Venuti | Contract Attorney | 2014 | $44 |

**Cohen Milstein Sellers & Toll PLLC**

| Timekeeper | Title | Law School Grad. Year | 2020 Rate |
|---|---|---|---|
| Karen L. Handorf | Partner | 1975 | $975 |
| Kit A. Pierson | Partner | 1983 | $995 |
| Daniel Small | Partner | 1986 | $975 |
| George F. Farah | Partner | 2005 | $720** |
| Laura Alexander | Partner | 2007 | $680** |
| Matthew W. Ruan | Of Counsel | 2003 | $725 |
| Jeffrey B. Dubner | Associate | 2009 | $650** |

4

**Exhibit 3**
3-34

| Timekeeper | Title | Law School Grad. Year | 2020 Rate |
|---|---|---|---|
| Jessica Weiner | Associate | 2014 | $535 |
| Alicia Gutierrez | Discovery Counsel | 2002 | $550 |
| Nada Sulaiman | Staff Attorney | 1993 | $445 |
| Kalpish Mehta | Staff Attorney[4] | 2002 | $430 |
| Kathleen Wucher | Staff Attorney | 2005 | $415** |
| Ngan Tran | Staff Attorney | 2006 | $415** |
| Michael Butler | Contract Attorney | 1989 | $200* |
| Evan Sosler | Contract Attorney | 1996 | $200* |
| Richard B. Rogers | Contract Attorney | 1998 | $200* |
| Angela C. Allen | Contract Attorney | 2004 | $200* |
| Davee L. Datta | Contract Attorney | 2004 | $200* |
| Kiley Frank | Contract Attorney | 2004 | $200* |
| Lucrecia Johnson | Contract Attorney | 2012 | $200* |
| Suzanne Clarke | Investigator | N/A | $515 |
| JiHoon Lee | Paralegal | N/A | $325 |
| Richard Burner | Paralegal | N/A | $310** |
| Jay Clayton | Paralegal | N/A | $310** |
| Nathaniel Dickstein | Paralegal | N/A | $310 |
| Jeannette Sanchez | Paralegal | N/A | $310** |
| Brenda Peterson | Paralegal | N/A | $310** |
| Marit Vike | Paralegal | N/A | $310 |

\* Capped.  See individual declarations for each firm's practice regarding contract attorneys.  *See* Grossman Decl. ¶¶ 56, 76; Wheeler Decl. ¶ 332 & 332 n.6; Small Decl. ¶¶ 30, 39 n.4, 40, 46 & n.5; Swenson Decl. ¶ 25 & n. 1; Bird Decl. ¶¶ 47–49.

\*\* Timekeeper no longer employed by the firm.  For timekeepers who left their respective firms during this litigation, Class Counsel have reasonably used the rates under their firms' 2020 rate structures for someone of the skill and experience that the former employees had at the time of departure from the firm.

13569176.2

---

[4] Mr. Mehta began on this case as contract attorney before joining Cohen Milstein as a staff attorney.

5

**Exhibit 3**
**3-35**

# EXHIBIT C

**Exhibit 3**
**3-36**

**Exhibit C**

Rates Approved by Bay Area Courts

In *Human Rights Defense Center v. County of Napa*, the court found that Plaintiffs' counsel's 2020 hourly rates were reasonable, "plac[ing] significant weight on the opinion of Mr. Pearl . . . [who] has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California (including the undersigned) in determining reasonable billing rates."  Order Granting In Part And Denying In Part Motion For Attorneys' Fees, Costs And Expenses at 18, Doc. 50, No. 20-cv-01296 (N.D. Cal. March 28, 2021).

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|------------------------|------|
| **Rosen Bien Galvan & Grunfeld LLP** | | | |
| | Partner | 1962 | $1,110 |
| | Partner | 1981 | $950 |
| | Senior Counsel | 2009 | $625 |
| | Senior Paralegal | NA | $350 |

In *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO, 2020 WL 7626410 (N.D. Cal. Dec. 22, 2020), the court found that Plaintiffs' counsel's 2020 hourly rates were "reasonable given the scope and complexity of this case, as well as in light of rates approved in this District for partners, associates, and paralegals for similarly experienced counsel and staff at similar firms." *Id.* at *3, *3 n.4.

| Firm | Title | Bar Admission | Rate |
|------|-------|---------------|------|
| **Arnold & Porter Kaye Scholer LLP** | | | |
| | Partner | 1974 | $1,280 |
| | Partner | 1993 | $1,150 |
| | Partner | 1990 | $1,085 |

1

**Exhibit 3**
3-37

| Firm | Title | Bar Admission | Rate |
|---|---|---|---|
| | Partner | 2005 | $1,015 |
| | Partner | 2002 | $925 |
| | Senior Associate | 2005 | $910 |
| | Senior Associate | 2012 | $910 |
| | Senior Associate | 2015 | $815 |
| | Associate | 2018 | $675 |
| | Staff Attorney | 2008 | $545 |
| | Paralegal | NA | $405 |
| | Paralegal | NA | $390 |
| **Planned Parenthood** | | | |
| | General Counsel | 1982 | $1,115 |
| | Sr. Staff Attorney | 2012 | $910 |

In *Schneider v. Chipotle Mexican Grill*, a consumer class action, the court found that counsel for the putative class's 2020 hourly rates were "on the high end, although in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020).

| Firm | Title | Bar Admission | Rate |
|---|---|---|---|
| **Kobre & Kim** | | | |
| | Partner | 1993 | $1,275 |
| | Partner | 1987 | $1,275 |
| | Partner | 1997 | $995 |
| | Associate | 2011 | $695 |
| | Analyst | NA | $495 |
| | Legal Assistant | NA | $195 |
| | Legal Assistant | NA | $195 |

2

**Exhibit 3**
**3-38**

In *Lee One, LLC, et al., v. Facebook, Inc.*, a class action challenging Facebook's advertising rate practices, the court found that class counsel's 2020 hourly rates were "reasonable and in line with the prevailing rates in the community for complex class action litigation." *See* Order and Judgment Granting Motion for Final Approval of Class Action Settlement and Awarding Attorneys' Fees, Costs, and Service Awards at 3–4, Doc. 211, No. 4:16-cv-06232 (N.D. Cal. June 26, 2020).

| Firm | Title | Bar Admission | Rate |
|------|-------|---------------|------|
| **Cohen Millstein Sellers & Toll** | | | |
| | Partner | 1983 | $940 |
| | Partner | 2000 | $790 |
| | Partner | 2004 | $740 |
| | Associate | 2012 | $545 |
| | Associate | 2014 | $505 |
| | Staff Attorney | 2012 | $395 |
| | Contract Attorney | 2003 | $385 |
| | Contract Attorney | 2014 | $250 |
| | Contract Attorney | 2017 | $250 |
| | Law Clerk | 2019 | $290 |
| | Paralegals | | $300-315 |
| **Gibbs Law Group** | | | |
| | Partner | 1995 | $910 |
| | Partner | 2000 | $750 |
| | Partner | 2003 | $720 |
| | Partner | 2007 | $710 |
| | Associate | 2014 | $460 |
| | Associate | 2016 | $430 |
| **Eglet Adams** | | | |
| | Partner | 1988 | $870 |
| | Partner | 1998 | $800 |

3

**Exhibit 3**
**3-39**

| Firm | Title | Bar Admission | Rate |
|---|---|---|---|
| | Partner | 1999 | $690 |
| | Partner | 1999 | $650 |
| | Associate | 2011 | $450 |
| | Contract Attorney | 1998 | $200 |

In *Perez v. Rash Curtis & Associates*, a consumer action under federal and state law, the court found the blended rate of $634 was "within the reasonable range of rates" for firms in the "San Francisco Bay Area, specializing in complex, high-stakes litigation." Order, Doc. 427, at 34, No. 4:16-cv-03396 (N.D. Cal. Apr. 17, 2020). The blended rate was derived from the following 2020 hourly rates.

| Firm | Title | Law School Grad. Year | Rate |
|---|---|---|---|
| **Bursor & Fisher** | | | |
| | Partner | 1997 | $1,000 |
| | Partner | 1997 | $1,000 |
| | Partner | 2002 | $850 |
| | Partner | 2006 | $750 |
| | Partner | 2009 | $650 |
| | Partner | 2013 | $550 |
| | Associate | 2010 | $450 |
| | Associate | 2013 | $525 |
| | Associate | 2016 | $400 |
| | Associate | 2017 | $375 |
| | Associate | 2019 | $325 |
| | Law Clerk | NA | $300 |
| | Senior Litig. Support Specialist | NA | $275-300 |
| | Litig. Support Specialist | NA | $250 |

**Exhibit 3**
**3-40**

In *In re National Collegiate Athletic Assn. Athletic Grant-In-Aid Antitrust Litigation*, an antitrust class action, the court found the following 2019 "hourly rates are reasonable." *See* Order Granting in Part and Denying in Part Plaintiffs' Motion for Attorneys' Fees, Expenses, Service Awards, and Taxed Costs, Doc. 1259, at 4, No. 14-md-02541 (N.D. Cal. Dec. 6, 2019).

| Firm | Title | Bar Admission | Rate |
|---|---|---|---|
| **Winston & Strawn LLP** | | | |
| | Partner | 1978 | $1,515 |
| | Partner | 1985 | $1,245 |
| | Partner | 2002 | $1,105 |
| | Partner | 1996 | $1,025 |
| | Associate | 2012 | $825 |
| | Associate | 2016 | $660 |
| | Associate | 2017 | $615 |

In an earlier decision in the same case, the court also found the following <u>2017</u> hourly rates were "in line with market rates in this District." *See id.* at Doc. 745 (N.D. Cal. Dec. 6, 2017).

| Firm | Title | Bar Admission | Rate |
|---|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | | | |
| | Partner | 1982 | $950 |
| | Associate | 1999 | $630 |
| | Associate | 2014 | $475 |
| | Contract Attorney | 2013 | $350 |
| | Contract Attorney | 2006 | $300 |
| **Pearson, Simon & Warshaw LLP** | | | |

5

**Exhibit 3**
**3-41**

| Firm | Title | Bar Admission | Rate |
|------|-------|---------------|------|
| | Partner | 1983 | $1,035 |
| | Partner | 1981 | $1,035 |
| | Of Counsel | 2001 | $900 |
| | Associate | 2006 | $635 |
| | Associate | 2008 | $520 |

In *Shaw v. AMN Service, LLC*, a wage-and-hour class action, the court found that the following 2018 "hourly rates [were] within the prevailing range of hourly rates." *See* Order Granting Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs, Doc. 167, at 2, No. 3:16-cv-02816 (N.D. Cal. May 31, 2019).

| Firm | Title | Bar Admission | Rate |
|------|-------|---------------|------|
| **Schneider Wallace Cottrell Konecky Wotkyns LLP** | | | |
| | Partner | 1996 | $835 |
| | Associate | 2009 | $750 |
| | Associate | 2014 | $675 |
| | Associate | 2017 | $380 |
| | Staff Attorney | 1996 | $600 |
| | Staff Attorney | 2016 | $400 |
| | Paralegal | | $300 |

In *In re Anthem, Inc. Data Breach Litigation*, the court found the following 2017 billing rates were "reasonable in light of prevailing market rates in this district." *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018).

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|------------------------|------|
| **Altshuler Berzon** | | | |
| | Partner | 1992 | $860 |
| | Partner | 1994 | $820 |

6

**Exhibit 3**
**3-42**

| Firm | Title | Law School Grad. Year | Rate |
|---|---|---|---|
|  | Partner | 1998 | $770 |
|  | Partner | 2001 | $690 |
|  | Associate | 2010 | $460 |
|  | Associate | 2012 | $405 |
|  | Legal Clerks | NA | $285 |
|  | Paralegals | NA | $250 |
| **Gibbs Law Group** |  |  |  |
|  | Partner | 1995 | $805 |
|  | Partner | 1988 | $740 |
|  | Partner | 2000 | $685 |
|  | Partner | 2003 | $660 |
|  | Partner | 2004 | $635 |
|  | Partner | 2007 | $605 |
|  | Partner | 2008 | $575 |
|  | Associate | 2011 | $525 |
|  | Associate | 2012 | $450 |
|  | Associate | 2014 | $415 |
|  | Associate | 2012 | $400 |
|  | Associate | 2000 | $395 |
|  | Associate | 2008 | $375 |
|  | Associate | 2015 | $365 |
|  | Associate | 2015 | $350 |
|  | Associate | 2016 | $340 |
|  | Contract Attorney | 2014 | $240 |
|  | Paralegals |  | $190-$220 |
| **Lieff Cabraser Heimann & Bernstein** |  |  |  |
|  | Partner | 1989 | $900 |
|  | Partner | 2001 | $675 |
|  | Partner | 2002 | $650 |
|  | Partner | 2004 | $625 |

7

**Exhibit 3
3-43**

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|-----------------------|------|
| | Partner | 2006 | $565 |
| | Partner | 2006 | $510 |
| | Associate | 2011 | $455 |
| | Associate | 2015 | $370 |
| | Contract Attorneys | 1994-2017 | $240 |
| | Paralegals | NA | $350-$360 |
| **Finkelstein Thompson LLP** | | | |
| | Partner | 1993 | $850 |
| | Partner | 2000 | $600 |
| | Of Counsel | 2005 | $475 |
| | Of Counsel | 1997 | $850 |
| | Associate | 2013 | $300 |

In *Max Sound Corp. v. Google Inc.*, a patent action, the court found the following 2014 - 2016 hourly rates were "well in line with the billing rates for attorneys with similar qualifications in the Bay Area." *See* Order Granting in Part and Denying in Part Defendants' Motion for Attorneys' Fees, Doc. 198, at 23, 2017 U.S. Dist. LEXIS 168541, No. 14-CV-04412 (N.D. Cal. Sept. 25, 2017).

| Firm | Title | Law School Grad. Year | Rate |
|------|-------|-----------------------|------|
| **Cooley LLP** | | | |
| | Partner | 1995 | $905 |
| **Wilson Sonsini Goodrich & Rosati** | | | |
| | | | |
| | Partner | 1998 | $650-950 |
| | Associate/Partner | 2006 | $520-715 |
| | Associate | 2007 | $504-608 |
| | Associate | 2012 | $336-575 |

8

**Exhibit 3**
**3-44**

In *Animation Workers Antitrust Litigation*, a class action alleging defendants violated the antitrust laws by engaging in a fraudulent conspiracy to fix wages, the court found the following 2016 hourly rates were "fair, reasonable, and market-based, particularly for the 'relevant community' in which counsel work." *See* Order Granting Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Awards, Doc. 347, at 10, No. 14-CV-4062 (N.D. Cal. Nov. 11, 2016).

| Firm | Title | Law School Grad. Year | Rate |
|---|---|---|---|
| **Susman Godfrey LLP** | | | |
| | Partner | 1969 | $1,200 |
| | Partner | 1998 | $700 |
| | Partner | 2005 | $550 |
| | Associate | 2013 | $325 |
| | Associate | 2008 | $475 |
| | Associate | 2011 | $375 |
| | Associate | 2010 | $425 |
| | Staff Attorney | 2006 | $275 |
| | Staff Attorney | 2007 | $275 |
| | Staff Attorney | 2014 | $275 |
| | Paralegals | NA | $230-270 |
| **Hagens Berman Sobol Shapiro LLP** | | | |
| | Partner | 1980 | $950 |
| | Partner | 1994 | $735 |
| | Partner | 2001 | $605 |
| | Partner | 1993 | $605 |
| | Of Counsel | 2002 | $575 |
| | Associate | 2010 | $425 |
| | Associate | 2015 | $420 |
| | Associate | 2008 | $400 |

**Exhibit 3**
**3-45**

| Firm | Title | Law School Grad. Year | Rate |
|---|---|---|---|
| | Contract Attorney | 2007 | $250 |
| | Paralegal | NA | $265 |
| | Paralegal | NA | $265 |
| | Paralegal | NA | $190 |
| | Paralegal | NA | $158 |

In *Civil Rights Education and Enforcement Center v. Ashford Hospitality Trust, Inc.*, an action challenging defendants' hotels' failure to provide wheelchair accessible transportation, the court found the following 2015 hourly rates were "in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California." No. 15-CV-00216, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016).

| Firm | Title | Law School Grad. Year | Rate |
|---|---|---|---|
| **Civil Rights Education and Enforcement Center** | | | |
| | Senior Counsel | 1974 | $900 |
| | Co-Director | 1991 | $750 |
| | Co-Director | 2007 | $500 |
| | Staff Attorney | 2010 | $430 |
| | Paralegal | NA | $250 |

38351\13553810.4

10

**Exhibit 3**
**3-46**

# EXHIBIT D

**Exhibit 3**
**3-47**

**Exhibit D**

Rates Charged by Attorneys Practicing in the Bay Area

| Altshuler Berzon LLP | | |
|---|---|---|
| **2018 Rates** | **Graduation Year** | **Rate** |
| | 1968-1983 | $940 |
| | 1985 | $920 |
| | 1989 | $900 |
| | 1991 | $885 |
| | 1992 | $875 |
| | 1994 | $835 |
| | 1998 | $795 |
| | 2000 | $740 |
| | 2001 | $725 |
| | 2008 | $540 |
| | 2009 | $515 |
| | 2010 | $485 |
| | 2012 | $435 |
| | 2013 | $415 |
| | 2014 | $390 |
| | 2015 | $365 |
| | Law Clerks | $285 |
| | Paralegals | $250 |
| **2017 Rates** | **Years of Experience/Level** | **Rates** |
| | Senior Partners | $930 |
| | Junior Partners (1991-2001) | $875-690 |
| | Associates (2008-2013) | $510-365 |
| | Paralegals | $250 |
| **2015 Rates** | **Years of Experience/Level** | **Rates** |
| | 32 | $895 |
| | Junior Partners | $825-630 |

1

**Exhibit 3**
**3-48**

| | Associates | $450-340 |
| | Paralegals | $250 |

| Arnold Porter LLP | | |
| --- | --- | --- |
| **2015 Rates** | **Level** | **Rates** |
| | Partner | Up to $1,085 |
| | Associates | Up to $710 |
| **2014 Rates** | **Years of Experience** | **Rates** |
| | 49 | $995 |
| | 45 | $720 |
| | 39 | $655 |

| The Arns Law Firm LLP | | |
| --- | --- | --- |
| **2014 Rates** | **Years of Experience** | **Rates** |
| | 37 | $950 |
| | Law Clerks | $165 |

| Boies Schiller & Flexner LLP | | |
| --- | --- | --- |
| **2017 Rates** | **Bar Admission or Law School Grad. Year** | **Rates** |
| | 1986 | $1,049 |
| | 2006 | $972 |
| | 1999-2000 | $830 |
| | 2004 | $760 |
| | 2006 | $680 |
| | 2007 | $714 |
| | 2009 | $800 |
| **2016 Rates** | **Bar Admission** | **Rates** |
| | 1988 | $960 |
| | 2000 | $830 |
| | 2001 | $880 |

2

**Exhibit 3**
**3-49**

| Cooley LLP | | |
| --- | --- | --- |
| **2017 Rates** | **Years of Experience** | **Rates** |
| | 22 | $902 |
| **2014 Rates** | **Years of Experience** | **Rates** |
| | 31 | $1,095 |
| | 17 | $770 |
| | 9 | $685 |

| Cotchett, Pitre & McCarthy, LLP | | |
| --- | --- | --- |
| **2019 Rates** | **Bar Admission** | **Rates** |
| | 1965 | $950 |
| | 1992 | $925 |
| | 1994 | $850 |
| | 2006 | $750 |
| | Senior Associate | $600 |
| | Associates | $375-425 |
| | Paralegals, Case Assistants, Law Clerks | $225-325 |

| Duane Morris LLP | | |
| --- | --- | --- |
| **2018 Rates** | **Bar Admission** | **Rates** |
| | 1973 | $1,005 |
| | 2008 | $605 |
| | 2011 | $450 |
| | 2017 | $355 |
| | Sr. Paralegal | $395 |
| **2016 Rates** | **Years of Experience** | **Rates** |
| | 43 | $880 |
| | 41 | $880 |
| | 26 | $720 |
| | 25 | $695 |

3

**Exhibit 3**
**3-50**

| Fenwick & West LLP | | |
|---|---|---|
| **2020 Rates** | **Title (Bar Admission)** | **Rates** |
| | Partner (1995) | $1,040 |
| | Partner (2001) | $860 |
| | Partner (2005) | $745 |
| | Senior Associate (2010) | $720 |
| | Senior Associate (2011) | $665 |
| | Associate (2016) | $710 |
| | Associate (2017) | $495 |
| | Associate (2018) | $425 |
| | Associate  (2020) | $325 |
| | Paralegal | $395 |
| | Paralegal | $393 |
| **Gibson Dunn & Crutcher LLP** | | |
| **2020 Rates** | **Level** | **Rates** |
| | Senior Partners | $1,395 – 1,525 |
| | Senior Associate | $960 |
| | Mid-level Associate | $740 |
| | Paralegals | $480 |
| **2017 Rates** | **Bar Admission or Law School Grad. Year** | **Rates** |
| | 1987 | $956 |
| | 1987 | $944 |
| | 1997 | $960 |
| | 2006 | $736 |
| | 2008 | $592/$696 |
| | 2013 | $$600 |
| | 2015 | $520 |
| | 2016 | $472 |
| | Non-Attorneys | $216-$335 |
| **2016 Rates** | **Bar Admission** | **Rates** |
| | 1987 | $852 |

4

**Exhibit 3**
**3-51**

|  | 2010 | $540 |
|  | 2013 | $404 |
| **2015 Rates** | **Years of Experience** | **Rates** |
|  | 37 | $1,125 |
|  | 23 | $955 |
|  | 3 | $575 |

| Goldstein Borgen Dardarian & Ho | | |
|---|---|---|
| **2019 Rates** | **Law School Grad. Year** | **Rates** |
|  | 1987 | $925 |
|  | 2006 | $710 |
|  | 2008 | $595 |
|  | 2013 | $475 |
|  | 2015 | $450 |
|  | 2017 | $400 |
|  | Law Student | $300 |
|  | Sr. Paralegals | $325 |
|  | Paralegals | $275-$295 |

| Hagens Berman Sobol Shapiro LLP | | |
|---|---|---|
| **2017 Rates** | **Levels** | **Rates** |
|  | Senior Attorney | $950 |
|  | Other Partners | $578-$760 |
|  | Associates | $295-$630 |

| Hooper, Lundy & Bookman | | |
|---|---|---|
| **2019 Rates** | **Law School Grad. Year** | **Rates** |
|  | 1975 | $1,025 |
|  | 1976 | $965 |
|  | 1979 | $1,025 |
|  | 2007 | $815 |

5

**Exhibit 3**
**3-52**

|  | 2011 | $800 |
|  | 2015 | $640 |
|  | 2016 | $600 |
|  | 2019 | $440 |
| **2018 Rates** | **Law School Grad. Year** | **Rates** |
|  | 1975 | $1,025 |
|  | 1976 | $930 |
|  | 1979 | $995 |
|  | 2015 | $570 |

| Jones Day | | |
|---|---|---|
| **2016 Rates** | **Bar Admission** | **Rates** |
|  | 2001 | $900 |
|  | 2014 | $450 |
| **2015 Rates** | **Bar Admission** | **Rates** |
|  | 2001 | $875 |
|  | 2014 | $400 |

| Keker & Van Nest, LLP | | |
|---|---|---|
| **2019 Rates** | **Title (Law School Grad. Year)** | **Rates** |
|  | Of Counsel (1980) | $1,075 |
|  | Of Counsel (2001) | $775 |
|  | Partner  (2010) | $700 |
|  |  |  |
| **2018 Rates** | **Years of Experience** | **Rates** |
|  | 16 | $875 |
|  | 5 | $600 |
|  | 3 | $500 |
| **2017 Rates** | **Years of Experience** | **Rates** |
|  | 9 | $650 |
|  | 5 | $525 |

6

**Exhibit 3**
**3-53**

|  | Other Partners | $525-$975 |
|  | Associates | $340-$500 |
|  | Paralegals/Support Staff | $120-$260 |

| Kirkland & Ellis | | |
| --- | --- | --- |
| **2021 Rates** | **Title** | **Rates** |
|  | Partners | $1,085–$1,895 |
|  | Associates | $625–$1,195 |
|  | Paraprofessionals | $255–$475 |
| **2017 Rates** | **Years of Experience** | **Rates** |
|  | 20 | $1,165 |
|  | 9 | $995 |
|  | 8 | $965 |
|  | 5 | $845 |
|  | 4 | $845 |
|  | 3 | $810 |
|  | 2 | $555 |
| Latham & Watkins | | |
| **2016 Rates** | **Average** | **Rates** |
|  | Average Partner | $1,186 |
|  | Highest Partner | $1,595 |
|  | Lowest Partner | $915 |
|  | Average Associate | $755 |
|  | Highest Associate | $1,205 |
|  | Lowest Associate | $395 |

| Lieff Cabraser Heimann & Bernstein, LLP | | |
| --- | --- | --- |
| **2020 Rates** | **Law School Grad. Year** | **Rates** |
|  | 1972 | $1,075 |
|  | 1998 | $950 |
|  | 1993 | $900 |

7

**Exhibit 3
3-54**

|  | 1984 | $850 |
|---|---|---|
|  | 2000 | $775 |
|  | 2001–2002 | $700 |
|  | 2005 | $650 |
|  | 2007 | $590 |
|  | 2008 | $560 |
|  | 2012 | $480-$510 |
|  | 2015 | $440 |
|  | 2017 | $395 |
|  | Law Clerk | $375-$395 |
|  | Paralegal/Clerk | $345-390 |
|  | Litigation Support/Research | $345-495 |
| **2017 Rates** | **Years of Experience** | **Rates** |
|  | 11-16 | $510-$675 |
|  | 2-6 | $370-$455 |
|  | 0-13 (Contract Atty) | $415 |
|  | Paralegals | $360 |
| **2015 Rates** | **Bar Admission** | **Rates** |
|  | 1972 | $975 |
|  | 1989 | $850 |
|  | 2001 | $625 |
|  | 2006 | $435 |
|  | 2009 | $435 |
| **2014 Rates** | **Bar Admission** | **Rates** |
|  | 1998 | $825 |

| **Milbank, Tweed, Handley & McCloy LLP** | | |
|---|---|---|
| **2016 Rates** | **Bar Admission** | **Rates** |
|  | 1983 | $1,025 |
|  | 1984 | $1,350 |
|  | 1992 | $1,350 |

8

**Exhibit 3**
**3-55**

| | 2002 (Associate) | $915 |
|---|---|---|
| **Morrison Foerster LLP** | | |
| **2018 Rates** | **Years of Experience** | **Rates** |
| | 40 | $1,050 |
| | 22 | $950 |
| | 11 | $875 |
| | 3 | $550 |
| | Paralegal | $325 |
| **2017 Rates** | **Bar Admission** | **Rates** |
| | 2007 | $608 |
| | 2012 | $575 |
| **2016 Rates** | **Bar Admission** | **Rates** |
| | 1975 | $1,025 |
| | 1999 | $975 |
| | 1993 | $975 |
| **Munger, Tolls & Olson** | | |
| **2016 Rates (unless otherwise noted)** | **Bar Admission or Law School Grad. Year** | **Rates** |
| | 1966 (Partner) | $1,000 (2015); $1,245 (2016) |
| | 1977 | $1,110 (2015) |
| | 1981 | $910 |
| | 1985 | $995 |
| | 1992 | $875-$885 |
| | 1995 | $910 |
| | 2002 | $750 |
| | 1976 (Of Counsel) | $705 |
| | 2009 (Associates) | $615 (2015); $660 (2016) |
| | Non-Attorney Timekeepers | $380-90 |

9

**Exhibit 3**
**3-56**

| O'Melveny & Myers | | |
|---|---|---|
| **2019 Rates** | **Level** | **Rates** |
| | Senior Partner | $1,250 |
| | Partner (1998 Bar Admitted) | $1,050 |
| | 3rd Year Associate | $640 |
| | 2nd Year Associate | $656 |
| **2016 Rates** | **Bar Admission** | **Rates** |
| | 1985 | $1,175 |
| | 2004 | $895 |
| | 2005 | $780 |
| | 2007 | $775 |
| | 2010 | $725 |
| | 2011 | $700 |
| | 2012 | $655 |
| | 2013 | $585 |
| | 2014 | $515 |
| | 2015 | $435 |
| **Paul Hastings LLP** | | |
| **2020 Rates** | **Years of Experience** | **Rates** |
| | 25 | $1,425 |
| | 7 | $885 |
| | 5 | $775 |
| | 3 | $645 |
| | Research assistant | $335 |
| **2016 Rates** | **Bar Admission** | **Rates** |
| | 1973 | $1,175 |
| | 1997 | $895 |
| | 1990 | $750 |

10

**Exhibit 3**
**3-57**

| Pearson Simon & Warshaw LLP | | |
| --- | --- | --- |
| **2019 Rates** | **Years of Experience** | **Rates** |
| | 23-38 | $1,150 |
| | 10 | $900 |
| | Of Counsel | $825 |
| | 6 | $500 |
| | 4 | $450 |
| | Paralegals | $225 |
| **2018 Rates** | **Years of Experience** | **Rates** |
| | 22-37 | $1,050 |
| | 9 | $650 |
| | Of Counsel | $725 |
| | 5 | $450 |
| | 3 | $400 |
| **2017 Rates** | **Years of Experience** | **Rates** |
| | 35-36 | $1,035 |
| | 8 | $520 |
| | 4 | $400 |
| | 2 | $350 |

| Reed Smith LLP | | |
| --- | --- | --- |
| **2020 Rates** | **Years of Experience** | **Rates** |
| | 22 | $930 |
| | 14 | $840 |
| | 16 | $780 |
| | Paralegals | $250 |

| Ropes & Gray | | |
| --- | --- | --- |
| **2016 Rates** | **Level** | **Rates** |
| | Partner | $880-$1,450 |

11

**Exhibit 3**
**3-58**

|  | Counsel | $605-$1,425 |
|---|---|---|
|  | Associate | $460-$1050 |
|  | Paralegals | $160-$415 |

| Rosen, Bien, Galvan & Grunfeld LLP | | |
|---|---|---|
| **2020 Rates** | **Law School Grad. Year** | **Rate** |
| *Partners* | | |
|  | 1962 | $1,100 |
|  | 1980 | $1,100 |
|  | 1981 | $950 |
|  | 1984 | $875 |
|  | 1997 | $825 |
|  | 2005 | $730 |
|  | 2008 | $660 |
| *Of Counsel* | | |
|  | 1993 | $740 |
|  | 2003 | $715 |
| *Senior Counsel* | | |
|  | 2008 | $635 |
|  | 2009 | $625 |
|  | 2010 | $565 |
| *Associates* | | |
|  | 2011 | $540 |
|  | 2013 | $480 |
|  | 2015 | $460 |
|  | 2016 | $440 |
|  | 2017 | $395 |
| *Sr. Paralegals* | | $320-$350 |
| *Paralegals* | | $250-$275 |
| *Litigation Support/Paralegal Clerks* | | $225 |

12

**Exhibit 3**
**3-59**

| | Class | Rates |
|---|---|---|
| *Law Students* | | $275 |
| *Word Processing* | | $85 |
| **2019 Rates** | **Class** | **Rates** |
| *Partners* | | |
| | 1962 | $1,050 |
| | 1980 | $1,000 |
| | 1981 | $940 |
| | 1984 | $860 |
| | 1997 | $800 |
| | 2005 | $700 |
| | 2008 | $640 |
| *Of Counsel* | | |
| | 1993 | $725 |
| | 2003 | $700 |
| *Senior Counsel* | | |
| | 2008 | $610 |
| | 2009 | $585 |
| *Associates* | | |
| | 2010 | $540 |
| | 2011 | $525 |
| | 2013 | $460 |
| | 2015 | $440 |
| | 2016 | $400 |
| | 2017 | $350 |
| *Senior Paralegals* | | $350 |
| *Litigation Support/Paralegal Clerks* | | $225 |
| *Law Students* | | $275 |
| *Word Processing* | | $85 |
| **2018 Rates** | **Class** | **Rates** |
| *Partners* | | |

13

**Exhibit 3**
**3-60**

|  | 1962 | $1,000 |
|  | 1980 | $965 |
|  | 1981 | $920 |
|  | 1984 | $835 |
|  | 1997 | $780 |
|  | 2005 | $650 |
| *Of Counsel* |  |  |
|  | 1983 | $800 |
|  | 1993 | $700 |
|  | 2003 | $675 |
| *Senior Counsel* |  |  |
|  | 2008 | $585 |
| *Associates* |  |  |
|  | 2009 | $535 |
|  | 2010 | $525 |
|  | 2011 | $500 |
|  | 2013 | $440 |
|  | 2015 | $410 |
|  | 2016 | $375 |
| *Paralegals* |  | $340-$240 |
| *Litigation Support/Paralegal Clerks* |  | $225 |
| *Law Students* |  | $275 |
| *Word Processing* |  | $85 |
| **2017 Rates** | **Class/Level** | **Rates** |
| *Partners* |  |  |
|  | 1962 | $1,000 |
|  | 1980 | $950 |
|  | 1981 | $900 |
|  | 1984 | $825 |
|  | 1997 | $780 |

14

**Exhibit 3**
**3-61**

|  | 2005 | $650 |
| --- | --- | --- |
| *Of Counsel* |  |  |
|  | 1983 | $800 |
|  | 1993 | $700 |
|  | 2003 | $675 |
| *Associates* |  |  |
|  | 2008 | $575 |
|  | 2009 | $515 |
|  | 2010 | $500 |
|  | 2011 | $490 |
|  | 2013 | $425 |
|  | 2015 | $400 |
|  | 2016 | $375 |
| *Paralegals* |  | $325-$240 |
| *Litigation Support/Paralegal Clerks* |  | $225 |
| *Law Students* |  | $275 |
| *Word Processing* |  | $85 |
| **2016 Rates** | **Class/Level** | **Rates** |
|  | 1962 | $995 |
|  | 1980 | $900 |
|  | 1985 | $800 |
|  | 1997 | $740 |
|  | 2008 | $545 |
|  | 2009 | $490 |
| *Certified Law Student* |  | $275 |
| *Paralegal* |  | $275 |
| **2015 Rates** | **Years of Experience/Level** | **Rates** |
| *Partners* |  |  |
|  | 53 | $930 |

15

**Exhibit 3**
**3-62**

| | 35 | $840 |
|---|---|---|
| | 33 | $775 |
| | 31 | $710 |
| | 18 | $690 |
| | 9 | $525 |
| *Of Counsel* | | $590-$610 |
| *Associates* | | |
| | 9 | $490 |
| | 8 | $480 |
| | 7 | $470 |
| | 6 | $440 |
| | 5 | $420 |
| | 4 | $400 |
| | 3 | $380 |
| *Paralegals* | | $250-$295 |
| *Litigation Support/Paralegal Clerks* | | $200-$220 |
| *Law Students* | | $275 |
| *Word Processing* | | $85 |

| Schneider Wallace Cottrell Konecky Wotkyns LLP | | |
|---|---|---|
| **2019 Rates** | **Law School Grad. Year** | **Rate** |
| | 1993 | $925 |
| | 1977 (Of Counsel) | $875 |
| | 1997 | $840 |
| | 2009 | $725 |
| | 2014 | $680 |
| | 2017 | $575 |
| | Sr. Paralegal | $300 |
| | Paralegal | $250 |

16

**Exhibit 3**
**3-63**

| 2018 Rates | Bar Admission | Rate |
|---|---|---|
| *Partners* | | |
| | 1993-2000 | $835 |
| | 1992 | $775 |
| *Of Counsel/ Associates* | | |
| | 1977-1994 | $825 |
| | 1998-1990 | $775 |
| | 2008-2009 | $675-$750 |
| **2017 Rates** | **Law School Grad. Year** | **Rate** |
| | 1993 | $835 |
| | 1997 | $750 |
| | 2009 | $650 |
| *Paralegals and Legal Assistants* | | $300 |
| *Associates* | | $350-$700 |
| *Law Clerks/Paralegals* | | $135-$300 |
| **2015 Rates** | **Years of Experience/Level** | **Rate** |
| *Partners* | 14-23 | $750 |
| *Associates* | | $350-$700 |
| *Law Clerks/Paralegals* | | $135-$300 |

| Schonbrun, DeSimone, Seplow, Harris & Hoffman | | |
|---|---|---|
| **2019 Rates** | **Years of Experience** | **Rate** |
| | 43 | $1,050 |

| Law Office of James Sturdevant | | |
|---|---|---|
| | 2000 | $950 |
| **2019 Rates** | **Years of Experience** | **Rates** |
| | 47 | $975 |
| | | |

17

**Exhibit 3**
**3-64**

| Winston & Strawn | | |
|---|---|---|
| **2019 Rates** | **Title** | **Rates** |
| | Partners | $1,515 |
| | | $1,245 |
| | | $1,105 |
| | | $1,025 |
| | Associates | $825 |
| | | $660 |
| | | $615 |
| **2018 Rates** | **Title** | **Rates** |
| | Partners | $1,445 |
| | | $1,185 |
| | | $1,050 |
| | | $820 |
| | Associates | $765 |
| | | $585 |
| | Paralegals | $170-$340 |
| | Litigation Support Mgr. | $275 |
| | Review Attorneys | $85 |
| **2017 Rates** | **Title** | **Rates** |
| | Partners | $1,365 |
| | | $1,120 |
| | | $990 |
| | Associates | $760 |
| | | $690 |
| | | $645 |
| | | $520 |
| | | $495 |
| | Paralegals | $165-$295 |
| **2016 Rates** | **Title** | **Rates** |

18

**Exhibit 3**
**3-65**

|  | Partners | $1,290 |
|---|---|---|
|  |  | $1,095 |
|  |  | $965 |
|  |  | $960 |
|  |  | $885 |
|  | Associates | $715 |
|  |  | $615 |
|  |  | $575 |
|  |  | $470 |
|  | Paralegals | $170-$280 |
|  | Litigation Support Mgr. | $250 |

38351\13544398.1

19

Exhibit 3
3-66

Exhibit 4 to Declaration of Paul L. More

W. David Holsberry, SBN 66219
Paul L. More, SBN 228589
Sarah Grossman-Swenson, SBN 259792
McCracken, Stemerman & Holsberry, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Telephone:     415-597-7200
Fax:              415-597-7201
Email: wdh@msh.law
         pmore@msh.law
         sgs@msh.law

*Attorneys for Intervenors*

## SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| CITY OF OAKLAND | Case No.  RG 11580626 |
| | ASSIGNED FOR ALL PURPOSES TO: |
| Plaintiff and Petitioner, | JUDGE: HON. EVELIO GRILLO<br>DEPARTMENT: 15 |
| vs. | **DECLARATION OF RICHARD PEARL**<br>**IN SUPPORT OF INTERVENORS'**<br>**MOTION FOR ATTORNEYS' FEES** |
| OAKLAND POLICE AND FIRE RETIREMENT SYSTEM; OAKLAND POLICE AND FIRE RETIREMENT SYSTEM BOARD; CITY OF OAKLAND; and DOES 1 through 20, inclusive, | Date: July 2, 2019<br>Time: 3:00 p.m. |
| Defendants and Respondents. | Reservation No. R-2071685 |
| RETIRED OAKLAND POLICE OFFICERS ASSOCIATION, ET AL., | |
| Intervenors. | |

DECLARATION OF RICHARD PEARL IN SUPPORT OF INTERVENORS'
MOTION FOR ATTORNEYS' FEES
CASE NO. RG 11580626

Exhibit 4
4-1

I, RICHARD M. PEARL, hereby declare the following:

1. I am a member in good standing of the California State Bar. I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California. I specialize in issues related to court-awarded attorneys' fees, including the representation of parties in fee litigation and appeals, serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys' fees and related issues. In this case, I have been asked by David Holsberry of McCracken, Stemerman & Holsberry, LLP, attorneys for Intervenors Retired Oakland Police Officers Association ("ROPOA") to respond to some of the assertions expressed in the City of Oakland's Opposition to ROPOA's fee motion.

2. Briefly summarized, my background is as follows: I am a 1969 graduate of Boalt Hall School of Law (now Berkeley Law), University of California, Berkeley, California. I took the California Bar Examination in August 1969 and passed it in November of that year, but because I was in Atlanta, Georgia working as an attorney for the Legal Aid Society of Atlanta (LASA), I was not admitted to the California Bar until February 1970. I worked for LASA until the summer of 1971, when I then went to work in California's Central Valley for California Rural Legal Assistance, Inc. (CRLA), a statewide legal services program. From 1977 to 1982, I was CRLA's Director of Litigation, supervising more than fifty attorneys. In 1982, I went into private practice, first in a small law firm, then as a sole practitioner. Martindale Hubbell rates my law firm "AV." I also have been selected as a Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019. A copy of my Resume is attached hereto as **Exhibit A**.

3. Since 1982, my practice has been a general civil litigation and appellate practice, with an emphasis on cases and appeals involving court-awarded attorneys' fees. I have lectured and written extensively on court-awarded attorneys' fees. I have been a member of the California State Bar's Attorneys Fees Task Force and have testified before the State Bar Board of Governors and the California Legislature on attorneys' fee issues. I am the author of California Attorney Fee Awards (3d ed Cal. CEB 2010) and its 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019 Supplements. I also was the author of California Attorney Fee Awards, 2d Ed. (Calif. Cont. Ed. of Bar 1994), and its 1995, 1996,

**Exhibit 4**
**4-2**

1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 Supplements. This treatise has been cited by the California appellate courts on numerous occasions.  *See, e.g., Graham v. DaimlerChrysler Corp.*(2004) 34 Cal.4th 553, 576, 584; *Lolley v. Campbell* (2002) 28 Cal.4th 367, 373; *Stratton v. Beck* (2018) 30 Cal.App.5th 901, 911; *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1259; *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698, 700.  I also authored the 1984, 1985, 1987, 1988, 1990, 1991, 1992, and 1993 Supplements to its predecessor, CEB's California Attorney's Fees Award Practice.  In addition, I authored a federal manual on attorneys' fees entitled Attorneys' Fees:  A Legal Services Practice Manual, published by the Legal Services Corporation.  I also co-authored the chapter on "Attorney Fees" in Volume 2 of CEB's Wrongful Employment Termination Practice, 2d Ed. (1997).

      4.     More than 90% of my practice is devoted to issues involving court-awarded attorney's fees. I have been counsel in over 200 attorneys' fee applications in state and federal courts, primarily representing other attorneys. I also have briefed and argued more than 40 appeals, at least 30 of which have involved attorneys' fees issues. I have successfully handled five cases in the California Supreme Court involving court-awarded attorneys' fees: (1) *Maria P. v. Riles*, 43 Cal.3d 1281 (1987), which upheld a C.C.P. section 1021.5 fee award based on a preliminary injunction obtained against the State Superintendent of Education, despite the fact that the case ultimately was dismissed under C.C.P. section 583; (2) *Delaney v. Baker*, 20 Cal.4th 23 (1999), which held that heightened remedies, including attorneys' fees, are available in suits against nursing homes under California's Elder Abuse Act; (3) *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), which held, *inter alia,* that contingent risk multipliers remain available under California attorney fee law, despite the United States Supreme Court's contrary ruling on federal law (note that in *Ketchum,* I was primary appellate counsel in the Court of Appeal and "second chair" in the Supreme Court); (4) *Flannery v. Prentice*, 26 Cal.4th 572 (2001), which held that in the absence of an agreement to the contrary, statutory attorneys' fees belong to the attorney whose services they are based upon; and (5) *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (2004), which I handled, along with trial counsel, in both the Court of Appeal and Supreme Court. I also represented and argued on behalf of *amicus curiae* in *Conservatorship of McQueen*, 59 Cal.4th 602 (2014), presenting

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES
493680.3

**Exhibit 4**
4-3

the argument relied upon by the Court. Along with the Western Center on Law and Poverty, I also prepared and filed an *amicus curiae* brief in *Vasquez v. State of California*, 45 Cal.4th 243 (2009). I also have handled numerous other appeals, including: *Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992); *Mangold v. CPUC*, 67 F.3d 1470 (9th Cir. 1995); *Velez v. Wynne*, 2007 U.S. App. LEXIS 2194 (9th Cir. 2007); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008); *Center for Biological Diversity v. County of San Bernardino*, 185 Cal.App.4th 866 (2010); *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection et al*, 190 Cal.App.4th 217 (2010); and *Heron Bay Home Owners Assn. v. City of San Leandro,* 19 Cal.App.5th 376 (2018). For an expanded list of my appellate decisions, *see* **Exhibit A**, pp. 4-8.

5.       I also have been retained by various governmental entities, including the California Attorney General's office and the California Department of Fair Employment and Housing, at my then current rates to consult with them regarding their affirmative attorney fee claims.

6.       I am frequently called upon to opine about the reasonableness of attorneys' fees, and my declarations on that issue have been cited favorably by numerous state and federal courts. The following California appellate courts also have referenced my declaration testimony favorably:

- *Kerkeles v. City of San Jose*, 243 Cal.App.4th 88,  96, 105 (2015);
- *Habitat and Watershed Caretakers v. City of Santa Cruz*, 2015 Cal. App. Unpub. LEXIS 7156, 2015 WL 5827045 (2015);
- *Laffitte v. Robert Half Int'l Inc.*, 231 Cal.App.4th 860 (2014), aff'd (2016) 1 Cal.5th 480;
- *In re Tobacco Cases I*, 216 Cal.App.4th 570 (2013);
- *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal.App.4th 972 (2013);
- *Wilkinson v. South City Ford*, 2010 Cal. App. Unpub. LEXIS 8680, 2010 WL 4292631 (2010);
- *Children's Hospital & Medical Center v. Bonta*, 97 Cal.App.4th 740 (2002);
- *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628 (1996).

7.       The following federal courts also have cited my declaration testimony favorably:

- *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017)

3

**Exhibit 4**
**4-4**

- *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 08-55867 (9th Cir. 2012), Order filed Dec. 26, 2012, at 6;

- *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir. 2010) (the expert declaration referred to is mine);

- *Notter v. City of Pleasant Hill,* 2017 U.S.Dist.LEXIS 197404, 2017 WL 5972698 (N.D. Cal. 2017)

- *Villalpando v. Exel Direct, Inc.*, 2016 WL 1598663 (N.D. Cal. 2016);

- *State Compensation Insurance Fund v. Khan et al*, Case No. SACV 12-01072-CJC (JCGx) (C.D. Cal.), Order Granting in Part and Denying in Part the Zaks Defendants' Motion for Attorneys' Fees, filed July 6, 2016 (Dkt. No. 408);

- *In re Cathode Ray Tube Antitrust Litig.,* Master File No. 3:07-cv-5944 JST, MDL No. 1917 (N.D. Cal. 2016) 2016 U.S.Dist.LEXIS 24951 (Report And Recommendation Of Special Master Re Motions (1) To Approve Indirect Purchaser Plaintiffs' Settlements With the Phillips, Panasonic, Hitachi, Toshiba, Samsung SDI, Technicolor, And Technologies Displays Americas Defendants, and (2) For Award Of Attorneys' Fees, Reimbursement Of Litigation Expenses, And Incentive Awards To Class Representative, Dkt. 4351, dated January 28, 2016, *adopted in relevant part,* 2016 U.S.Dist.LEXIS 88665;

- *Gutierrez v. Wells Fargo Bank*, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. 2015);

- *Holman v. Experian Information Solutions, Inc.*, 2014 U.S. Dist. LEXIS 173698 (N.D. Cal. 2014);

- *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M 07-1827 SI, MDL No. 1827 (N.D. Cal.), Report and Recommendation of Special Master Re Motions for Attorneys' Fees And Other Amounts By Indirect-Purchaser Class Plaintiffs And State Attorneys General, Dkt. 7127, filed Nov. 9, 2012, adopted in relevant part, 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. 2013) (*"TFT-LCD (Flat Panel)* Report & Recommendation");

- *Walsh v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 176319 (N.D. Cal. 2013);

- *A.D. v. California Highway Patrol*, 2009 U.S. Dist. LEXIS 110743, at *4 (N.D. Cal. 2009), rev'd on other grounds, 712 F.3d 446 (9th Cir. 2013), reaffirmed and additional fees awarded on remand, 2013 U.S. Dist. LEXIS 169275 (N.D. Cal. 2013);

- *Hajro v. United States Citizenship & Immigration Service*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal 2012);

- *Rosenfeld v. United States Dep't of Justice*, 904 F. Supp. 2d 988, 1002 (N.D. Cal. 2012);

- *Garcia v. Resurgent Capital Servs.,* 2012 U.S.Dist.LEXIS 123889 (N.D. Cal. 2012);

- *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 U.S. Dist. LEXIS 39832, at *9 (N.D. Cal. 2011) (thorough discussion), aff'd 2013 U.S. App. LEXIS 6369 (9th Cir. 2013);

- *Armstrong v. Brown*, 2011 U.S. Dist. LEXIS 87428 (N.D. Cal. 2011);

- *Lira v. Cate*, 2010 WL 727979 (N.D. Cal. 2010);

4

**Exhibit 4**
**4-5**

- *Californians for Disability Rights, Inc. v. California Dep't of Transportation*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010);

- *Nat'l Federation of the Blind v. Target Corp.*, 2009 U.S. Dist. LEXIS 67139 (N.D. Cal. 2009);

- *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095 (N.D. Cal. 2008) (an earlier motion);

- *Bancroft v. Trizechahn Corp.*, No. CV 02-2373 SVW (FMOx), Order Granting Plaintiffs' Reasonable Attorneys' Fees and Costs In the Amount of $168,886.76, Dkt. 278 (C.D. Cal. Aug. 14, 2006);

- *Willoughby v. DT Credit Corp.*, No. CV 05-05907 MMM (CWx), Order Awarding Attorneys' Fees After Remand, Dkt. 65 (C.D. Cal. July 17, 2006);

- *Oberfelder v. City of Petaluma*, 2002 U.S. Dist. LEXIS 8635 (N.D. Cal. 2002), aff'd 2003 U.S. App. LEXIS 11371 (9th Cir. 2003);

8.       Numerous California trial courts, including this Court, also have relied on my declaration or in person testimony.  See, e.g., *Living Rivers Council v. State Water Resources Control Board*, Alameda County Superior Ct. No. RG10-543923, Order Granting in Part Motion of Petitioner for Award of Fees. CCP 1021.5, filed March 22, 2013  (copy attached as Exhibit B); *Kaku v. City of Santa Clara*, Santa Clara Superior Court No. 17CV319862, Fee Order filed January 22, 2019, reported at 2019 WL 331053 (Cal.Super. 2019).

9.       In this case, I have been asked by Intervenors' law firm to express my opinion regarding the following matters raised by the City of Oakland's Opposition to Intervenors' fee motion: 1) whether the 2019 hourly rates Intervenors' attorneys are requesting are within the range of hourly rates currently being charged and/or awarded for comparable work; 2) whether the rate increases requested by Intervenor's counsel from their 2014 rates reasonably reflect increases in the legal marketplace; 3) whether the rates charged by the City's attorneys reflect the range of rates charged by and/or awarded to attorneys in the private legal marketplace; 4) whether in the legal marketplace,  lower rates are charged for appellate work involving attorneys' fee issues; 5) whether in the legal marketplace, attorneys routinely and properly charge for the work of two or three senior attorneys working on the same appeal; 6) whether in the legal marketplace, senior attorneys routinely and properly charge for performing legal research in cases in which they are responsible for preparing the appellate briefs; and 7) whether in the

5

**Exhibit 4**
**4-6**

1  legal marketplace, the total number of hours spent by Intervenors' attorneys are reasonable in light of

2  the difficulty of the appeal, the stakes involved, and the rigorous advocacy of the opposition.[1]

3       10.     Plaintiff/Petitioner City of Oakland's claim that Intervenors' attorneys' current hourly

4  rates are not reasonable for the work they have performed since April 2014, including their successful

5  appellate work. I strongly disagree.

6       11.     Under California law, successful attorneys are entitled to their requested rates if those

7  rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys

8  for comparable work" in the applicable community. *Children's Hosp. & Med. Ctr. v. Bonta* (2002) 97

9  Cal.App.4th 740, 783.

10       12.     Through my writing and practice, I have become familiar with the non-contingent market

11  rates charged by Bay Area attorneys for comparable work.  I have obtained this familiarity in several

12  ways:  (1) by handling attorneys' fee litigation; (2) by discussing fees with other attorneys; (3) by

13  obtaining declarations regarding prevailing market rates in cases in which I represent attorneys seeking

14  fees; and (4) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and

15  articles on attorney's fees in the legal newspapers and treatises.

16       13.     Based on that experience and knowledge, I can say without hesitation that Intervenors'

17  attorneys' rates are well within the range of hourly rates charged by comparably qualified attorneys for

18  comparable work, including appellate work. The following examples, taken from public filings and

19  personal knowledge gained as an expert, prove this point:

20       • In 2018, Altshuler Berzon, a prominent public interest trial and appellate firm, billed

21       senior partners at $940 per hour for appellate work [up from the $930 rates it charged in

22       2017);

23       • In 2019, the Moskovitz Appellate Team billed its most senior attorney at $875 per hour;

24       in 2017, it billed its senior attorneys at up to $800 per hour.

25       • In 2018, the San Francisco Superior Court awarded Michael Haddad of Haddad &

26       Sherwin, a 27-year civil rights trial and appellate attorney, $800 per hour for his appellate

27

28  [1] The absence of testimony on any particular issue raised by the City does not indicate my agreement with the City's position, only that I have not been asked to testify regarding that issue.

**Exhibit 4**
**4-7**

1    work and awarded me $826 per hour for my appellate work. See *Cornell v. City &*

2    *County of San Francisco,* San Francisco Superior Ct. No. CGC-11-509240, Fee Order

3    filed October 9, 2018.

4    • In 2017, Greines, Martin, Stein, & Richland, a prominent statewide appellate firm, billed

5    its senior appellate attorneys at $850 per hour

6    • In 2019, Rosen Bien Galvan & Grunfeld, another public interest firm with a substantial

7    appellate practice,  bills its senior partners at $1000-$835 per hour);

8    • In 2019, Jim Sturdevant, a 49-year consumer/appellate attorney, billed at $975 per hour

9    rate for his appellate work.

10   • In 2018, Duane Morris LLP billed its appellate services as follows: 45-year attorney -

11   $1,005 per hour; 10-year attorney -$605 per hour; 7-year attorney -$450 per hour; 1st-

12   year attorney -$355 per hour; senior paralegal -$395 per hour.

13   • Also in 2018, Schneider Wallace Cottrell Brayton Konecky LLP, and Emeryville-based

14   firm with a substantial appellate practice, billed its 18-year attorneys at $835 per hour;

15   • In 2015, Stebner and Associates, Ms. Stebner, a 30-year appellate attorney, billed her

16   appellate work at $750 per hour;

17   • In 2013, two local civil rights attorneys with 37 and 40 years of experience respectively,

18   John Scott and Amitai Schwartz, were awarded $725 per hour for their appellate work.

19   See *A.D. v. CHP* (N.D. Cal. 2013) 2013 U.S.Dist.LEXIS 169275 at *15. At the same

20   time, the court recognized that the Arnold Porter firm was charging $910 per hour for a

21   39-year appellate attorney and $800-$875 per hour 35-41 year appellate attorneys. *Id.* at

22   *18.

23   • My own hourly rate for appellate work is $875 per hour, and my then-current rates have

24   been approved by numerous courts, including this one, and paid by numerous fee-paying

25   clients. For example, I  was the lead appellate attorney in *Heron Bay Homeowners Assn.*

26   *v. City of San Leandro* (2018) 19 Cal.App.5[th] 376,  in which the Court of Appeal affirmed

27   a fee award issued by this Court. On remand, Petitioner's trial counsel (Robert Goodman)

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES
493680.3

**Exhibit 4**
**4-8**

1    and I settled our appellate fee claim for all of our hours at our full 2018 market rates:

2    $850 per hour for me, and $785 per hour for Mr. Goodman, a 35-year attorney.

3    14.    Other court awards also confirm this point. For example:

4

5    • In *California Building Industry Association v. City of San Jose et al.*, Santa Clara County

6    Superior Court, No. 110CV167289, Order on Submitted Matter filed December 23, 2016,

7    an action against the City of San Jose's affordable housing ordinance, the court awarded

8    fees to the Intervenors and found the following 2016 hourly rates reasonable:

9

| Year Admitted | Rate |
|---------------|------|
| 1980 | $810 |
| 1998 | $710 |

12    • In *Nadaf-Rahrov v. Nieman Marcus Group Inc.*, San Francisco Superior Court No. CGC-

13    05-437680, Order Granting in Part and Denying in Part Motion for Award of Reasonable

14    Attorney's Fees Following Appeal, filed July 18, 2014, an individual employment

15    discrimination case, the trial court (Judge Peter Busch) awarded plaintiff/respondent's

16    counsel total appellate fees of $505,733 for defending the trial court's judgment and fee

17    award, based on hourly rates of $675 per hour for Robert Rusky, an appellate attorney

18    with 36 years' experience, and $725 per hour for my appellate work, plus a 1.1 lodestar

19    enhancement.

20    • In *Alden v. Alden,* San Mateo County Superior Court No. CIV 524269, Order Granting

21    Petitioner Katherine Alden's Motion for Attorneys' Fees and Costs, filed November 23,

22    2015, a $343,993 fee award for appellate work under California C.C.P. § 527.6(r),  the

23    court found the following 2015 hourly rates paid by the client to be reasonable:

24

| Years of Experience | Rate |
|---------------------|------|
| 49 | $1,045 |
| 42 | $1,035 |
| 41 | $990 |
| 22 | $875 |

8

**Exhibit 4**
**4-9**

| 10 | $600 |
| 3 | $500 |

15.    The City also challenges the rate increases taken by Intervenors' counsel from their 2014 rates, claiming they are unjustified. That claim too is insupportable. In fact, the rate increases taken by Intervenor's firm have been far more modest than most firms'. My own rate, which many courts have found reasonable and my clients have paid, has increased 16.7% since 2014. Applying the same rate to Mr. Holsberry's rates, for example, a 2019 rate for his services would be more than *$750* per hour, considerably more than his requested $700 per hour.

16.    Similarly, in 2018, Rosen, Bien, Galvan & Grunfeld, LLP, raised their 2017 rates for their 1997 Bar Admittee by $45 per hour, a 5.4% increase.  Similarly, Schneider Wallace Cottrell Brayton Konecky LLP, another comparable firm, raised their 2015 rates for experienced attorneys by $85 per hour in 2017 (from $750 to $835), reflecting an 11.33% total increase and a 5.66% annual increase.

17.    General increases in the legal marketplace also have been confirmed by the courts and the commentators. For example, in *Our Children's Earth Foundation v. National Marine Fisheries Service* (N.D. Cal. 2017) 2017 U.S.Dist.LEXIS 29130, at *46, the court authorized counsel to use "a rate for 2016 that is no more than 10% above their 2015 rates, unless otherwise justified." See also, e.g., , Simons, Big Law Should Raise Partner Billing Rates 10+ Percent Now, The Recorder, Nov. 15, 2018 (attached hereto as Exh. C), at p. 3 ("In a normal year, partner rates would go up around 5 or 6 percent"); Rozen, Sorry Clients: Higher Law Firm Billing Rates Do Pay Off, The American Lawyer, February 21, 2018 (attached hereto as Exhibit D) (average billing rates increasing  annually at 3.3% rate nationally, with higher percentages for better performing firms; "[b]illing rates overall have continued a steady climb in recent years, despite pressure from clients on discounts, decreases, and other cost savings"); Strom, Are Law Firms Charging Less or Just Making Less?, The Am Law Daily, October 3, 2017 (attached hereto as Exhibit E) (reaching similar conclusions regarding attorney rate increases). Moreover, regardless of any market-wide increases, the McCracken firm's rate increases would be fully justified by their five additional years of increased expertise, experience, and reputation

9

**Exhibit 4**
**4-10**

18.     I can also say without qualification that the City's attempt to compare Intervenors' private market rates to the rates the City has paid its own attorneys is fundamentally at odds with the legal marketplace. It is indisputable that the rates government entities routinely pay their private attorneys are heavily-discounted at the top end; law firms accept them because they can provide a high volume of work, which often is done by associates whose rates are not as heavily discounted and who produce a significant profit margin. They also present no risk of non-payment. The same considerations do not apply to the law firms facing them in litigation, as the courts frequently and uniformly have recognized. See, e.g., *Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911, 925; *Chabner v. United of Omaha* (N.D.Cal 1999) 1999 U.S.Dist.LEXIS 16552, at *5 fn 2, *aff'd* (9th Cir. 2000) 225 F.3d 1042, 1052 n.11 (defense rates present "inapt reference point for the rates of public interest civil rights lawyers"); *Burks v. Siemen Energy & Automation, Inc.* (8th Cir. 2000) 215 F.3d 880, 884 (plaintiff's and defendant's rates are "apples and oranges").

19.     The City also claims that Intervenors' attorneys' appellate rates should be reduced because attorneys' fee appeals are "less complex" than other appeals. Based on my own experience, I categorically disagree with that statement, especially in this case. Attorney fees appeals often involve very high stakes for the parties and/or their attorneys involved, and must be taken just as seriously as any other type of case. They also involve an evolving field of law, which requires both careful attention to new developments and the ability to craft arguments to in the many new, gray areas. For example, this fee appeal involved the unique issue of whether a litigant's relative poverty can be considered in the C.C.P. 1021.5 analysis and resulted in a published opinion on that issue. Most importantly, fee appeals involve a field in which the appellate courts defer greatly to trial courts, a very heavy barrier to overcome in most cases.

20.     This particular appeal was especially daunting. Intervenor *lost* its fee motion in the trial court, and therefore had to convince the Court of Appeal that there had been an abuse of discretion. On its face, that prospect would not have been encouraging: unlike most C.C.P. § 1021.5 cases, on its face it appeared that millions of dollars were at stake, making the "financial burden" element a significant obstacle. Intervenors' counsel's ability to plow new ground with its successful approach overcame that

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES
493680.3

Exhibit 4
4-11

obstacle, but  even with my extensive experience with court-awarded attorneys' fees and the appeals that they often lead to, I would not have given anywhere near a 50% chance of winning this case in the appellate courts.  For Intervenors' attorneys to have done so is simply a reflection of the hard work and the thorough and creative energies that they put into the appeal.

21.    The proof is also in the pudding. I have been awarded or settled for my full hourly rates for appellate work on fees issues in numerous cases, including the *Nadaf-Rahrov, Cornell,* and *Heron Bay* cases cited above,  and by this Court in *Bank of America v. Beavers,* Alameda Superior Court No. RG10543658, Order granting motion for attorney fees filed November 19, 2013.

22.    The City also claims that it was unreasonable for Intervenors to have more than one senior attorney working on the appeal. Again, there is no evidence to support that proposition. In my experience, when appellate firms like Horvitz & Levy take on significant work, they often assign both a senior and a junior partner to the case, recognizing that it is vital to enable counsel to work out strategies, divide responsibilities, and review work, i.e., provide a second set of eyes.  In my own practice, although I am a sole practitioner, the attorneys who tried the case often perform the same function and are compensated for their appellate work either by their client or, as in the *Cornell* and *Heron Bay* cases, by the opposing party. The courts also recognize that this practice is both common and effective.  For example, in *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.4th 213, 234, the Court of Appeal found that it was reasonable for two attorneys to spend ten hours a day for two days before oral argument helping the lead attorney prepare for that argument.   See also *Horsford v. Bd. Of Trustees* (2005) 132 Cal.App.4th 359, 397 (participation by three attorneys in drafting reply brief reflects "completely ordinary practice in a law firm handling a case of this magnitude").

23.    It also is my experience that it is entirely common and reasonable for senior attorneys to do legal research themselves rather than have to delegate it to lower-billing associates. In my experience, delegating research to less-experienced attorneys is a far less common practice when doing appellate work than it is for pre-trial and trial preparation: the task of preparing a case for trial involves far more work suitable for an associate (e.g. discovery) than the task of preparing appellate briefs or for oral argument.  It also is my experience that it is not necessarily cost-efficient to delegate such tasks

**Exhibit 4**
**4-12**

because a) an experienced attorney can do the work faster and better, at a lower ultimate cost; and b) even if the lower billing attorney does the work, it will have to be reviewed by the senior attorney. In my practice, I try to minimize delegable work, but do not lower my rate because I don't necessarily believe a lower overall fee would have resulted from delegating that work.

24.     These principles apply squarely to appellate work. Many highly-regarded appellate attorneys are sole practitioners, and consequently do all their own research. Even when associates are available, my experience has been that the senior attorneys generally do much of their own research because it is often less efficient and/or effective to delegate that research to attorneys with less knowledge of the facts and issues: not only would it take less-experienced attorneys longer to find and analyze the case law, but all that work would have to be checked and (often redone by the attorney who is actually writing the brief.  In *Alden v. Alden, supra,* for example, in which I served as an expert witness, the lead attorney testified that he read every case addressing the statute at issue, his client paid for every one of those hours, and the court found those hours reasonable even at his $1,035 hourly rate.

25.     Contrary to the City's claims, the total number of hours devoted by Intervenor's attorneys to post-2014 work is well within the ballpark of what I would expect. The fact that it is fully-documented by contemporaneous time records is important to me, as is the result. Moreover, comparable or higher appellate fees have been awarded in many cases.  For example, in *Citizens Against Rent Control v. City of Berkeley, supra,* 181 Cal.App.4th at 232, the Court of Appeal affirmed an award for 1,940 hours spent in *one year* on a federal Supreme Court matter, even though the issue had previously been briefed in both the California Court of Appeal and California Supreme Court.  See also *Jones v. Union Bank* (2005) 127 Cal.App.4th 542 (affirming award that included at least $329,779 for work in Court of Appeal); *Valliete v. Fireman's Fund Insurance Co.* (1993) 18 Cal.App.4th 680, 684 fn.23 (fee award of $344,600 for work in Court of Appeal); *Boller v. Signal Oil and Gas Co.*  (1964) 230 Cal.App.2d 648 (641.5 hours reasonable for work in Court of Appeal).  At the trial court level, *see, e.g.,* *Nadaf- Rahrov v. Nieman Marcus, supra* (awarding $505,733 appellate lodestar for defending judgment and fee award in single-plaintiff FEHA case); *Lealao v. Beneficial California, Inc.*, San Francisco Superior Ct. No. 972921 (Order Awarding Attorneys' Fees and Costs, filed December 5, 2000)(9 App.

Exhibit 4
4-13

2330) (606.7 hours reasonable for work performed on one attorneys' fee appeal in Court of Appeal); *Aguilar v. Avis, Inc.*, San Francisco Superior Ct. No. 948597, Order Awarding Plaintiffs Reasonable Attorneys' Fees and Costs, filed November 2, 2000 (9 App. 2338) (334 hours reasonable just to prepare Opposition to Certiorari); *Pulido v. State of California*, Marin County Superior Ct. No. 154651, Order re Attorneys Fees on Appeal, filed July 31, 1997 (9 App. 2341) (734.9 hours reasonable for time spent defending employment discrimination judgment in Court of Appeal); *Beasley v. Wells Fargo Bank*, San Francisco Superior Court Nos. 861555 and 868914, Order Awarding Attorneys' Fees, Costs and Expenses on Appeal, filed August 11, 1992 (9 App. 2345) (awarding appellate fees of $369,431.62 (in 1992 dollars) for defending merits and fee award in Court of Appeal); *Jordan v. Department of Motor Vehicles,* JAMS Ref. No. 1100040574, Arbitration Award and Decision issued April 14, 2004 (9 App. 2349) (the three-judge panel of arbitrators (Hon. Daniel Weinstein (Ret.), Hon. Charles A. Legge (Ret.), and Hon. Edward J. Wallin (Ret.)) (reasonable lodestar for defending trial court's decision in Court of Appeal was $716,000.   In my opinion, these awards and claims show that the number of hours spent here by Intervenor's counsel is perfectly consistent with how the legal marketplace charges for appellate work.

26.    In addition, although I have not reviewed any specific *pre*-2014 work, the amount of time spent by Intervenor's counsel on the case as a whole, including the trial, supersedeas proceedings, two appeals, and two vigorously contested fee motions, appears eminently reasonable in light of the stakes involved, the nature of the issues, the vigorous opposition, and the results.

If called as a witness, I could and would competently testify from my personal knowledge to the facts stated herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __ day of June, 2019 in Berkeley, California.

RICHARD M. PEARL

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES
493680.3

Exhibit 4
4-14

**EXHIBIT A**

Exhibit 4
4-15

# RESUME OF RICHARD M. PEARL

**RICHARD M. PEARL**
**LAW OFFICES OF RICHARD M. PEARL**
1816 Fifth Street
Berkeley, CA 94710
(510) 649-0810
(510) 548-3143 (facsimile)
rpearl@interx.net (e-mail)

## EDUCATION

University of California, Berkeley, B.A., Economics (June 1966)
Boalt Hall School of Law, Berkeley, J.D. (June 1969)

## BAR MEMBERSHIP

Member, State Bar of California (admitted February 1970)
Member, State Bar of Georgia (admitted June 1970) (inactive)
Admitted to practice before all California State Courts; the United States Supreme Court; the United States Court of Appeals for the District of Columbia and Ninth Circuits; the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, for the District of Arizona, and for the Northern District of Georgia; and the Georgia Civil and Superior Courts and Court of Appeals.

## EMPLOYMENT

LAW OFFICES OF RICHARD M. PEARL (April 1987 to Present): Civil litigation practice (AV rating), with emphasis on court-awarded attorney's fees, class actions, and appellate practice. Selected Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019.

QUALIFIED APPELLATE MEDIATOR, APPELLATE MEDIATION PROGRAM, California Court of Appeal, First Appellate District (October 2000 to 2013) (program terminated).

ADJUNCT PROFESSOR, HASTINGS COLLEGE OF THE LAW (January 1988 to 2014): Taught *Public Interest Law Practice*, a 2-unit course that focused on the history, strategies, and issues involved in the practice of public interest law.

PEARL, McNEILL & GILLESPIE, Partner (May 1982 to March 1987): General civil litigation practice, as described above.

1

**Exhibit 4**
**4-16**

CALIFORNIA RURAL LEGAL ASSISTANCE, INC. (July 1971 to September 1983) (part-time May 1982 to September 1983):

> Director of Litigation (July 1977 to July 1982)
> Responsibilities: Oversaw and supervised litigation of more than 50 attorneys in CRLA's 15 field offices; administered and supervised staff of 4-6 Regional Counsel; promulgated litigation policies and procedures for program; participated in complex civil litigation.

> Regional Counsel (July 1982 to September 1983 part-time)
> Responsibilities: Served as co-counsel to CRLA field attorneys on complex projects; provided technical assistance and training to CRLA field offices; oversaw CRLA attorney's fee cases; served as counsel on major litigation.

> Directing Attorney, Cooperative Legal Services Center (February 1974 to July 1977) (Staff Attorney February 1974 to October 1975)
> Responsibilities: Served as co-counsel on major litigation with legal services attorneys in small legal services offices throughout California; supervised and administered staff of four senior legal services attorneys and support staff.

> Directing Attorney, CRLA McFarland Office (July 1971 to February 1974) (Staff Attorney July 1971 to February 1972)
> Responsibilities: Provided legal representation to low income persons and groups in Kern, King, and Tulare Counties; supervised all litigation and administered staff of ten.

HASTINGS COLLEGE OF THE LAW, Instructor, Legal Writing and Research Program (August 1974 to June 1978)
Responsibilities: Instructed 20 to 25 first year students in legal writing and research.

CALIFORNIA AGRICULTURAL LABOR RELATIONS BOARD, Staff Attorney, General Counsel's Office (November 1975 to January 1976, while on leave from CRLA)
Responsibilities: Prosecuted unfair labor practice charges before Administrative Law Judges and the A.L.R.B. and represented the A.L.R.B. in state court proceedings.

ATLANTA LEGAL AID SOCIETY, Staff Attorney (October 1969 to June 1971)
Responsibilities: Represented low-income persons and groups as part of 36-lawyer legal services program located in Atlanta, Georgia.

**Exhibit 4**
**4-17**

## PUBLICATIONS

Pearl, *California Attorney Fee Awards, Third Edition* (Cal. Cont. Ed. Bar 2010) and February 2011, 2012, 2013, 2014, 2015, 2016, 2017, and March 2018 Supplements

Pearl, *California Attorney Fee Awards, Second Edition* (Cal. Cont. Ed. Bar 1994), and 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 Supplements

*Graham v. DaimlerChrysler Corp.* and *Tipton-Whittingham v. City of Los Angeles*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Feb. 2005)

*Current Issues in Attorneys' Fee Litigation*, California Labor and Employment Law Quarterly (September 2002 and November 2002)

*Flannery v. Prentice: Shifting Attitudes Toward Fee Agreements and Fee-Shifting Statutes*, Civil Litigation Reporter (Cal. Cont. Ed. Bar Nov. 2001)

*A Practical Introduction to Attorney's Fees*, Environmental Law News (Summer 1995)

Wrongful Employment Termination Practice, Second Edition (Cal. Cont. Ed. Bar 1997) (co-authored chapter on "Attorney Fees")

California Attorney's Fees Award Practice (Cal. Cont. Ed. Bar 1982) (edited), and 1984 through 1993 Supplements

Program materials on attorney fees, prepared as panelist for CEB program on Attorneys' Fees: Practical and Ethical Considerations in Determining, Billing, and Collecting (October 1992)

Program materials on Attorney's Fees in Administrative Proceedings: California Continuing Education of the Bar, prepared as panelist for CEB program on Effective Representation Before California Administrative Agencies (October 1986)

Program materials on Attorney's Fees in Administrative Proceedings: California Continuing Education of the Bar, prepared as panelist for CEB program on Attorneys' Fees: Practical and Ethical Considerations (March 1984)

*Settlors Beware/The Dangers of Negotiating Statutory Fee Cases* (September 1985) Los Angeles Lawyer

Program Materials on Remedies Training (Class Actions), sponsored by Legal Services Section, California State Bar, San Francisco (May 1983)

Attorneys' Fees: A Legal Services Practice Manual (Legal Services Corporation 1981)

3

**Exhibit 4**
**4-18**

**PUBLIC SERVICE**

Member, Attorneys' Fee Task Force, California State Bar

Member, Board of Directors, California Rural Legal Assistance Foundation

**REPRESENTATIVE CASES**

*Alcoser v. Thomas*
        (2011) 2011 Cal.App.Unpub.LEXIS 1180

*Arias v. Raimondo*
        (2018) 2018 U.S.App.LEXIS 7484

*Boren v. California Department of Employment*
        (1976) 59 Cal.App.3d 250

*Cabrera v. Martin*
        (9th Cir. 1992) 973 F.2d 735

*Camacho v. Bridgeport Financial, Inc.*
        (9th Cir. 2008) 523 F.3d 973

*Campos v. E.D.D.*
        (1982) 132 Cal.App.3d 961

*Center for Biological Diversity v. County of San Bernardino*
        (2010) 185 Cal.App.4th 866

*Children & Families Commission of Fresno v. Brown*
        (2014) 228 Cal.App.4th 45

*Committee to Defend Reproductive Rights v. A Free Pregnancy Center*
        (1991) 229 Cal.App.3d 633

*David C. v. Leavitt*
        (D. Utah 1995) 900 F.Supp. 1547

*Delaney v. Baker*
        (1999) 10 Cal.4th 23

*Dixon v. City of Oakland*
        (2014) 2014 U.S.Dist.LEXIS 169688

4

Exhibit 4
4-19

**REPRESENTATIVE CASES (cont.)**

*Employment Development Dept. v. Superior Court (Boren)*
  (1981) 30 Cal.3d 256

*Environmental Protection Info. Ctr. v Department of Forestry & Fire Protection*
  (2010) 190 Cal.App.4th 217

*Environmental Protection Information Center, Inc. v. Pacific Lumber Co.*
  (N.D. Cal. 2002) 229 F. Supp.2d 993, *aff'd* (9th Cir. 2004) 103 Fed. Appx. 627

*Flannery v Prentice*
  (2001) 26 Cal. 4th 572

*Guerrero v. Cal. Dept. of Corrections etc.*
  (2016) 2016 U.S.Dist.LEXIS 78796, *aff'd in relevant part,* (9th Cir. 2017) 701
  Fed.Appx. 613

*Graham v. DaimlerChrysler Corp.*
  (2004) 34 Cal. 4th 553

*Heron Bay Home Owners Assn. v. City of San Leandro*
  (2018) 19 Cal.App.5th 376

*Horsford v. Board of Trustees of Univ. of Calif.*
  (2005) 132 Cal.App.4th 359

*Ketchum v. Moses*
  (2001) 24 Cal.4th 1122

*Kievlan v. Dahlberg Electronics*
  (1978) 78 Cal.App.3d 951, *cert. denied* (1979)
  440 U.S. 951

*Lealao v. Beneficial California, Inc.*
  (2000) 82 Cal.App.4th 19

*Lewis v. California Unemployment Insurance Appeals Board*
  (1976) 56 Cal.App.3d 729

*Local 3-98 etc. v. Donovan*
  (N.D. Cal. 1984) 580 F.Supp. 714,
  *Aff'd* (9th Cir. 1986) 792 F.2d 762

**Exhibit 4**
**4-20**

**REPRESENTATIVE CASES (cont.)**

*Mangold v. California Public Utilities Commission*
   (9th Cir. 1995) 67 F.3d 1470

*Maria P. v. Riles*
   (1987) 43 Cal.3d 1281

*Martinez v. Dunlop*
   (N.D. Cal. 1976) 411 F.Supp. 5,
   *aff'd* (9th Cir. 1977) 573 F.2d 555

*McQueen, Conservatorship of*
   (2014) 59 Cal.4th 602 (argued for *amici curiae*)

*McSomebodies v. Burlingame Elementary School Dist.*
   (9th Cir. 1990) 897 F.2d 974

*McSomebodies v. San Mateo City School Dist.*
   (9th Cir. 1990) 897 F.2d 975

*Molina v. Lexmark International*
   (2013) 2013 Cal.App. Unpub. LEXIS 6684

*Moore v. Bank of America*
   (9th Cir. 2007) 2007 U.S. App. LEXIS 19597

*Moore v. Bank of America*
   (S.D. Cal. 2008) 2008 U.S. Dist. LEXIS 904

*Mora v. Chem-Tronics, Inc.*
   (S.D. Cal. 1999) 1999 U.S. Dist. LEXIS 10752,
   5 Wage & Hour Cas. 2d (BNA) 1122

*Nadaf-Rahrov v. Nieman Marcus Group*
   (2014) 2014 Cal.App. Unpub. LEXIS 6975

*Orr v. Brame*
   (2018) 2018 U.S.App.LEXIS 6094

*Pena v. Superior Court of Kern County*
   (1975) 50 Cal.App.3d 694

**Exhibit 4**
**4-21**

**REPRESENTATIVE CASES (cont.)**

*Ponce v. Tulare County Housing Authority*
(E.D. Cal 1975) 389 F.Supp. 635

*Ramirez v. Runyon*
(N.D. Cal. 1999) 1999 U.S. Dist. LEXIS 20544

*Rubio v. Superior Court*
(1979) 24 Cal.3d 93 (amicus)

*Ruelas v. Harper*
(2015) 2015 Cal.App. Unpub.LEXIS 7922

*Sokolow v. County of San Mateo*
(1989) 213 Cal. App. 3d. 231

*S.P. Growers v. Rodriguez*
(1976) 17 Cal.3d 719 (amicus)

*Swan v. Tesconi*
(2015) 2015 Cal.App. Unpub. LEXIS 3891

*Tongol v. Usery*
(9th Cir. 1979) 601 F.2d 1091,
*on remand* (N.D. Cal. 1983) 575 F.Supp. 409,
*revs'd* (9th Cir. 1985) 762 F.2d 727

*Tripp v. Swoap*
(1976) 17 Cal.3d 671 (amicus)

*United States (Davis) v. City and County of San Francisco*
(N.D. Cal. 1990) 748 F.Supp. 1416, *aff'd in part
and revs'd in part sub nom Davis v. City and County
of San Francisco* (9th Cir. 1992) 976 F.2d 1536,
*modified on rehearing* (9th Cir. 1993) 984 F.2d 345

*United States v. City of San Diego*
(S.D.Cal. 1998) 18 F.Supp.2d 1090

*Vasquez v. State of California*
(2008) 45 Cal.4th 243 (*amicus*)

Exhibit 4
4-22

**REPRESENTATIVE CASES (cont.)**

*Velez v. Wynne*
(9th Cir. 2007) 2007 U.S. App. LEXIS 2194

**FEBRUARY 2019**

8

**Exhibit 4**
**4-23**

**EXHIBIT B**

Exhibit 4
4-24



FILED
ALAMEDA COUNTY

MAR 2 2 2013

By _____

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ALAMEDA

LIVING RIVERS COUNCIL,

          Petitioner and Plaintiff,

vs.

STATE WATER RESOURCES CONTROL
BOARD,

          Respondent and Defendant.

RG10-543923

ORDER GRANTING IN PART
MOTION OF PETITIONER FOR
AWARD OF FEES. CCP 1021.5.

Date:  March 12, 2913
Time:  1:30 pm
Dept.:  31

The motion of Petitioner Living Rivers Council ("Living Rivers") for an award of

attorneys' fees under CCP 1021.5 came on regularly for hearing on March 12, 2013, in

Department 31 of this Court, Judge Evelio Grillo presiding.  The court GRANTS the

motion of Living Rivers and awards fees in the amount of $445,005.

BACKGROUND

      In 2004 the Legislature enacted Water Code 1259.4(a)(1), which stated that

before January 1, 2008, the State Water Resources Control Board ("the "Board") was to

"adopt principles and guidelines for maintaining instream flows in coastal streams [in

Northern California] as part of state policy for water quality control ... for the purposes

1

**Exhibit 4
4-25**

of water right administration." The Board noticed and distributed a draft Policy and draft SED in December 2007, received comments, provided responses, and then approved the "Policy for Maintaining Instream Flows in Northern California Coastal Streams" (the "Policy") on May 4, 2010. (AR 155-303).

Living Rivers filed a petition on October 27, 2010, asserting generally that the Policy failed to identify, discuss, or analyze mitigation measures concerning 58 significant adverse environmental impacts, and specifically identified the potential "depletion of instream flows as a result of increased groundwater extraction and use caused by adoption of the Policy." (Petn. Filed 10/27/10, para 33, also paras 3 and 32.)

Living Rivers filed a first amended petition on September 2, 2011, and opening brief on January 27, 2012, that asserted (1) the Policy violated Water Code § 1259.4 by not protecting salomonids adequately and (2) the Policy violated CEQA by failing to identify, discuss, or analyze mitigation measures generally and relating to the "depletion of instream flows as a result of increased groundwater extraction and use caused by adoption of the Policy" (1A Petn, para 39, 43, Brief at 19-31), failed to make separate findings for each of the identified environmental effects (Brief at 35-36), failed to identify the "regulatory mechanisms" that might mitigate the identified environmental effects, and failed to identify the feasible mitigation measures that could be adopted by other agencies, including specifically the county groundwater regulations (1A Petn, para 64-66; Brief at 36-37 ).

The court's statement of decision ("SOD") filed August 9, 2012, found:

(1) The Board complied with Water Code § 1259.4 in developing the Policy.

(SOD, p 5-9.)

2

Exhibit 4
4-26

(2) The Board failed to disclose adequately that "Groundwater Delineations" was a potential mitigation.  (SOD, p 12-16.)

(3) The Board complied with its disclosure obligations when it elected not to disclose as a mitigation measure the regulatory concept that persons who use groundwater in the delineated areas must report that pumping to the Board. (SOD, p 16-18.)

(4) The Board failed to disclose adequately that under the existing regulations in four of the five affected counties there likely will be little to no CEQA review of the anticipated increase in use of percolating groundwater.  (SOD, p 18-24.)

(5) The Board complied with its disclosure obligations when it disclosed that the Policy might lead to dam removal and construction of off stream storage, and that the Board and other agencies will need to implement mitigation efforts based on the specific impacts of each project.  (SOD, p 24-25.)

(6) The court did not reach whether the Board's substantive findings under Pub. Res. Code § 21081 are supported by substantial evidence.  (SOD, p 25-26.)

The court directed the Board to vacate Resolution 2010-0021 and to (1) evaluate the "Groundwater Delineations" as a potentially feasible mitigation measure; (2) make appropriate disclosures regarding the Board's evaluation of "Groundwater Delineations"; (3) present information to enable the public to consider meaningfully the legal framework for mitigating the potential increase in the use of percolating groundwater.

The court held that because the Policy was not adopted in compliance with CEQA it cannot remain in effect pending compliance with the writ and further CEQA review. The court stated, however, that the Board retains its regulatory authority to evaluate and

3

Exhibit 4
4-27

issue water permits with conditions while the CEQA process continues.  The court did not preclude the Board from treating the vacated Policy as a guideline and, if consistent with existing law and policies, processing water applications consistent with the vacated Policy until the CEQA process is completed.

LEGAL STANDARD.

C.C.P. 1021.5 is a general fee shifting statute designed to facilitate actions resulting in the enforcement of important rights that affect the public interest and confer a benefit on the public or a large class of persons.   The reasonableness of any fees is determined under the lodestar/multiplier analysis.  "The challenge to the trial courts is to make an award that provides fair compensation to the attorneys involved in the litigation at hand and encourages litigation of claims that in the public interest merit litigation, without encouraging the unnecessary litigation of claims of little public value."  (*Weeks v. Baker & McKenzie* (1998) 63 Cal. App. 4th 1128, 1172 (applying Gov't Code 12965(b)).)

ENTITLEMENT TO FEES UNDER CCP 1021.5.

To obtain fees under section 1021.5, Petitioners must demonstrate that (1) they were the prevailing party, (2) the action has resulted in the enforcement of an important right affecting the public interest, (3) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (4) the necessity and financial burden of private enforcement are such as to make the award appropriate. (*In re Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)

4

Exhibit 4
4-28

Prevailing party. In determining which party prevailed, the court considers "(a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two. ... [P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (*Karuk Tribe of Northern California v. California Regional Water Quality Control Bd.* (2010) 183 Cal.App.4th 330, 364.)

Living Rivers was the prevailing party in this litigation, as it sought to compel the Board to explain how the Board and other agencies planned to mitigate the adverse impacts of the increased use of groundwater that could result from the Policy. (1AC, para 65-66.) The judgment addresses this concern in that it requires the Board to evaluate the Groundwater Delineations as a potential mitigation measure and to explain how groundwater use is regulated and how the regulatory structure affects the ability to mitigate the potential increase in groundwater use.

Important right affecting the public interest. CCP 1021.5 "does not encompass the enforcement of 'any' or 'all' statutory rights. The statute directs the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved. (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 892.)

Living Rivers succeeded in enforcing an important right of public disclosure. CEQA's requirements are designed to "inform[] the public of the basis for environmentally significant decisions by public officials and thereby promotes accountability and informed self-government." (*Laurel Heights Improvement Assn. v.*

5

Exhibit 4
4-29

*Regents of University of California* (1998) 47 Cal.3d 376, 392.) "The EIR process protects not only the environment but also informed self-government." (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 924.) (See also 14 CCR §§ 15021(a), 15140, and 15147.) Although the disclosure might not change the terms of the post-remand Policy, the disclosure will permit informed public deliberation on the issues of how the Policy will likely affect groundwater use, whether any increase use will be an adverse impact, and whether the impact can be mitigated effectively given how California has chosen to regulate the use of groundwater.

Significant benefit conferred on the general public. Courts consider the "substantial benefit" criterion in CCP 1021.5 in the context of the outcome of the current litigation, and not on speculative future events. (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 895.)

Living Rivers has conferred a significant nonpecuniary benefit on the general public. The SED acknowledged that the Policy was likely to cause an increase in groundwater use, but failed to clearly disclose that the Board's permitting authority did not extent to groundwater and that the regulatory structure in four of the five affected counties do not appear to monitor or mitigate most groundwater use. Although the current state of the law may be a legal impediment to effective mitigation that is beyond the Board's control, the disclosure of a legal impediment that makes mitigation measures or alternatives infeasible might lead to public discussion and a solution just as disclosure of an economic, social, technological, or other impediment might lead to public discussion and a solution. (Pub Res Code § 21081.)

6

Exhibit 4
4-30

The Board's post-remand disclosures appear (for purposes of this fee motion and not for purpose of any subsequent CEQA challenge) to provide substantially more information regarding both the regulatory structure (Jenkins Dec,. Exh F) and the hydrology issues (Jenkins Dec,. Exh G).  This is not a case where the court's decision resulted in little more than an "augmented explanation" of the agency's decision. (Compare *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd.* (2010) 183 Cal.App.4th 330, 369.)

Necessity of private enforcement.  The need for private, as compared to public, enforcement is clear because the action proceeded against the governmental agency that bears responsibility for the Policy. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 941.)  The "necessity" of the action also requires the court to "take[] into consideration whether the party seeking fees attempted to resolve the matter without litigation." (*Environmental Protection Information Center v. California Dept. of Forestry and Fire* (2010) 190 Cal.App.4th 217, 236.  This analysis considers both the exhaustion of administrative remedies and efforts to resolve the case following the administrative process.  (*Id.*).  "The question a trial court must address in making its necessity determination is whether a reasonable settlement offer might have prevented a lawsuit."  (*Id.*)

The court will not require Living Rivers to prove that it made pre-litigation requests for exactly the relief it ultimately obtained.  Where writs under CCP 1094.5 are concerned there will usually be some disconnect between pre-litigation settlement negotiations and final judgments because the parties can agree that a public agency will make a certain commitment or undertake a certain course of conduct but in a judgment

7

**Exhibit 4**
**4-31**

the court can only remand the matter back to the agency for the agency to take action within the scope of its discretion. (CCP 1094.5(f); Pub. Res. Code § 21168.9(c).)  In addition, if the court were to limit fee awards to situations where plaintiffs obtained exactly the same relief that they sought pre-litigation, then it would create a perverse incentive for plaintiffs to make overbroad pre-litigation settlement demands just to make a record for potential fee applications.  For purposes of determining whether a prevailing party failed to make or consider reasonable settlement offers, "reasonable" encompasses a range of alternatives.  The court will not deny fees to a prevailing party who made or considered reasonable settlement offers but obtained a different, but still favorable, result.

The possibility that stream delineations might be an effective mitigation measure was not raised in the administrative process, but that is because it was not disclosed fully. The Board first disclosed that mapping information related to the "Groundwater Delineations" was available in its responses to comments of January 2010.  (AR 2586) This was only months before the Board adopted the Policy on May 4, 2010. (AR 155-303).  The Board produced the groundwater delineations and maps in December 2010 (Franger Dec., para 7), produced memoranda related to groundwater delineations on January 31, 2011 (Franger Dec., para 7(n), and under compulsion of a court order produced documents relating to its deliberations on the groundwater delineations in August 24, 2011 (Franger Dec., para 7(gg)).  Given how and when the Board disclosed its consideration of the groundwater delineations, Living Rivers may recover fees even though it did not try to resolve this issue before filing its opening brief in January 2012. Living Rivers Rivers raised the issue of the stream delineations as a potential mitigation

8

Exhibit 4
4-32

measure in its briefing. (POB filed 1/27/12 at 23:25-27:2, 27:20-28:11; PRB filed 3/26/12 at 7:14-10:21.)

The possibility that the Policy might lead to an increase in groundwater use and the need to mitigate the effects of that groundwater use was raised in the administrative process. Many persons commented on this issue and the Board responded to the comments. (AR 2687-2692.) On April 26, 2010, Living Rivers sent a letter specifically noting that the SED "discloses increased groundwater extraction in response to the policy may lead to reduced surface flows that could adversely impact water quality and recreation" and "does not identify any measures to mitigate these impacts." (AR 7799-7800.)

Living Rivers raised issues of groundwater regulation in post-filing settlement letters. The case was filed October 27, 2010. The Attorney General sent a letter on November 30, 2010, asking Living Rivers for a list of specific requests (Jenkins Dec., Exh A.) Living Rivers sent a letter on December 14, 2010, asking that the Policy require permit applicants seeking to use stream water to provide information about their use of groundwater and to require an EIR if the groundwater use would reduce streamflow and affect salmonids. (Lippe Dec., Exh. 4.) The Attorney General sent a letter on March 8, 2011, stating that the Board would not require permit applicants to provide information and prepare EIRs, but was willing to develop a standard permit term that would limit groundwater use when surface water use was unauthorized or limited and the Board could show a nexus between surface water diversion and groundwater use. (Lippe Dec., Exh. 5.) Living Rivers sent a letter on March 22, 2011, that expressed interest in the development of a standard permit term. (Lippe Dec., Exh. 6.) The Attorney General

9

Exhibit 4
4-33

sent a letter on April 18, 2011, that expressed interest in settling the case based on the development of a standard permit term.  (Lippe Dec., Ex 7.)  Living Rivers may have sent a letter on May 19, 2011, objecting to a lack of public process in the Board's proposed standard permit term but asking the Board to prepare a proposed standard permit term. (Jenkins Dec., Exh C.)  The Attorney General has no record of receiving the May 19, 2011, letter, and settlement negotiations stalled. (Jenkins Dec., Exh B and D.)

Living Rivers made reasonable post-filing effort to resolve its claims regarding whether the Policy had appropriate mitigation for the potential increase in groundwater use.  The parties were both endeavoring to find a way to develop substantive ways to mitigate the potential increase in groundwater use, but any potential substantive resolution was hindered by the Board's lack of permitting authority over groundwater. The negotiations regarding a substantive resolution were closely related to the legal limits on the Board's ability to monitor and regulate percolating groundwater, and the existence and effective disclosure of those legal limits is material to the public's ability to understand the Board's decisions in the Policy.

The court will not limit the ability of Living Rivers to recover fees because settlement negotiations stalled after April 2011.  The failure of either Living Rivers or the Board to pursue settlement after April 2011 is regrettable, but the parties share any fault equally.

Living Rivers argued in its opening and reply briefs that the Final SED did not have an adequate discussion regarding the mitigation of increased groundwater use because the Final SED included only general references to county regulation of

10

Exhibit 4
4-34

groundwater and an incomplete description of the Board's authority to regulate groundwater.  (POB filed 1/27/12 at 30:9-31:21; PRB filed 3/26/12 at 11:9-24.)

Considering all of the above, the court finds that the litigation was "necessary" and that  Living Rivers made reasonable efforts to raise and resolve its concerns before incurring substantial attorneys' fees.

Financial burden of private enforcement.  The "financial burden" concerns whether the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter."  The court considers only Petitioners' immediate monetary interest in the outcome of this specific case and not its other interests.  (*In re Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217.)  Living Rivers had no pecuniary interest in the litigation. (Malan Dec., para 2.)

AMOUNT OF FEES - LODESTAR.

Living Rivers asserts that its attorneys spent 1094 hours on the administrative proceedings, the preparation of the administrative record, and the litigation of the merits at rates ranging from $140 to $625 per hour (lodestar of $357,433).  Living Rivers voluntarily adjusted its lodestar to $324,120 in its billing judgment (Lippe Dec., para 5.b)  Living Rivers seeks a multiplier of 1.75, which would result in a merits fee award of $567,210.  In addition, Petitioners seek $35,000 for the fee motion (Lippe Dec., para 5.e) and $10,000 for the fee brief reply (Lippe Supp. Dec.), for a total fee motion fee award of $45,000.

Living Rivers agreed to pay counsel $70,000 plus out of pocket expenses and has paid its counsel approximately $52,000. (Lippe Dec., para 5.d).  The court's award of

11

Exhibit 4
4-35

fees under a fee-shifting statute is not decreased by counsel's contractual right to fees under a fee agreement.

<u>Number of hours billed.</u>

The Board challenges the time spent in the administrative process.  Living Rivers can recover for the time spent in the administrative process if it can make "the requisite showing that time spent in a related administrative proceeding was reasonably expended on the litigation because it was both useful and necessary and directly contributed to the resolution of the action."  (*Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 971-972.)  Counsel's letter to the Board in the administrative process is general in nature and is not closely related to the claims in this action.  Nevertheless, counsel's review and evaluation of the Policy and the related public record was a logical and necessary prerequisite to the lawsuit.  (*Jorgensen v. Taco Bell Corp.* (1996) 50 Cal.App.4th 1398, 1403 (permitting pre-lawsuit interviews with employees of a prospective defendant because "Frivolous litigation is frequently avoided by a careful lawyer's investigation of a client's claims before filing suit.")  The court finds that the time spent in the administrative proceeding was reasonably expended on the litigation because it was both useful and necessary and directly contributed to the resolution of the action.

The court has reviewed the time billed.  The case was staffed efficiently, with the vast majority of the 1095 hours billed by one senior attorney, Thomas Lippe (170 hours), one junior attorney, Kelly Franger (722 hours) and one paralegal, Amelia Mooney (137 hours).  Counsel voluntarily adjusted Ms. Franger's hours to 651 in their billing

12

**Exhibit 4**
**4-36**

judgment. The court finds that Petitioner reasonably spent the claimed 980 hours on this case.

Hourly rates. It is important to be realistic about the "regular rates" and make sure that they are either the actual hourly rates for paid hourly work by the person or similar to the regular billing rates for the paid hourly work of persons with similar experience. The "regular rate" should reflect "the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors." (*Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1138.) The court is aware that parties can be selective in what orders they present to the court and may therefore, when warranted, discount evidence that in some other case some other judge found an attorney's asserted billing rate to be a reasonable hourly figure. Hourly rate information in orders is also less persuasive when the orders were approving uncontested settlements. In addition, not all surveys are equal, as data in surveys of hourly rates charged by the high billers in high-end law firms (Pearl Dec., Exh. D) may differ from data in more broad based surveys (Pearl Dec., Exh. E).

The court finds that Thomas Lippe's rate of $625, Kelly Franger's rate of $290, and Amelia Mooney's rate of $140 reasonably reflect the general local hourly rate for counsel and staff with specialized legal knowledge in a fee-bearing case of similar education, experience, and background. The Board did not object to these hourly rates.

Lodestar calculation. The court finds that Petitioner reasonably spent the identified 980 hours on the merits at the asserted rates, which yields an attorney lodestar of $324,120 on the merits.

13

Exhibit 4
4-37

The court finds that Petitioner's reasonable fees for preparation of the fee application, including the reply and hearing, are $45,000. This would represent approximately 10 hours for Mr. Lippe, 100 hours for Ms. Franger, 20 hours for Ms. Mooney, and 10 hours for Mr. Pearl.

AMOUNT OF FEES -MULTIPLIER.

The Court determines whether to apply a multiplier based on its consideration of five factors: (1) the novelty and difficulty of the legal issues involved, (2) the skill of counsel, (3) the time commitment and preclusion of other employment, (4) the contingent nature of the fee award, and (5) the benefit conferred. (*Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1131-1132.)

This case did not involve exceptionally difficult CEQA issues. To the extent that CEQA cases are inherently difficult, the skill of counsel is reflected in the customary hourly rates of fee-charging CEQA lawyers. (*Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 880.)

Counsel for Petitioner displayed skill in presenting the evidence and the legal arguments to the Court. This skill is, however, already reflected in the hourly rates of counsel. The Court is aware of the danger of "double counting." (*Ketchum*, 24 Cal.4th at 1138-1139.)

The nature of the litigation precluded other employment by counsel for Petitioner and the case demanded a significant amount of time. The actual time spent is reflected in the hours billed.

Counsel assumed risk in undertaking this case on a contingent basis. The contingent risk is diminished somewhat because Living Rivers agreed to pay counsel a

14

Exhibit 4
4-38

base fee of $70,000 for the case, but the agreement also had an express provision for the recovery of fees as might be awarded by the court. (Lippe Dec., para 5.d.)  That risk warrants some multiplier. *(Ketchum*, 24 Cal.4th at 1132 and 1138; *Greene v. Dillingham Constr. N.A.* (2002) 101 Cal. App. 4th 418, 428-429.)

    The lawsuit conferred a significant benefit, but Living Rivers did not achieve complete victory. "A reduced fee award is appropriate when a claimant achieves only limited success" and "The trial court may reduce the amount of the fee award "where a prevailing party plaintiff is actually unsuccessful with regard to certain objectives of its lawsuit."" (*EPIC*, 190 Cal.App.4th at 238.)  The court first asks whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded.  If successful and unsuccessful claims are *related,* the court proceeds to the second inquiry, which is whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.  In this step, the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.  "Full compensation may be appropriate where the plaintiff has obtained excellent results, but may be excessive if a plaintiff has achieved only partial or limited success." (*EPIC*, 190 Cal.App.4th at 239.)  (See also *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 990 (denial of fees); *San Diego Police Officers Ass'n v. San Diego Police Dep't* (1999) 76 Cal. App. 4th 19, 24 (reducing fees to 20% of lodestar under C.C.P. 1021.5).

    Living Rivers asserted three primary claims: (1) the Board failed to comply with Water Code § 1259.4 in developing the Policy; (2) the Board failed to identify and disclose mitigation measures to reduce the impact of the anticipated increase in

Exhibit 4
4-39

groundwater use; and (3) the Board failed to identify and disclose mitigation measures to reduce the impact of caused by modification or removal of dams.

The Board prevailed on the first issue. The court found that the Board correctly determined that in Water Code § 1259.4 the legislature wanted the Policy to concern the protection of native fish populations through the Board's water right permitting and licensing system and that the statute did not extend the Board's ability to regulate the extraction of percolating groundwater. The court also found that the Policy reflected a reasoned approach to managing instream flows in coastal streams in Northern California consistent with the legislative goal of rehabilitating and protecting fish habitat. The court finds that these issues were primarily ones of statutory construction regarding the legislative mandate to the Board and were not related to the fact specific review of the Board's efforts to comply with that mandate. The court will limit counsel's hours for their lack of success on this issue. Living Rivers estimates that Mr. Lippe spent 30 hours and Ms. Franger spent 30 hours on this issue, for a total lodestar of $27,450. (Lippe Dec., para 5.e.)

Living Rivers prevailed on the second issue. The judgment requires the Board to the Board failed to identify and disclose feasible mitigation measures to reduce the impact of the anticipated increase in groundwater use. This claim was the central focus of the petition. Although the lawsuit might not lead to any substantive change in the post-remand Policy, the judgment requires disclosures that will permit an informed public discussion about legally feasible mitigation options.

The Board prevailed on the third issue. The court found substantial evidence that the draft SED adequately disclosed that the Policy might lead to dam removal and

16

Exhibit 4
4-40

construction of off stream storage, potential impacts, and that the Board and other agencies will need to implement mitigation efforts based on the specific impacts of each project. The court will limit counsel's lodestar by $30,000 for their lack of success on this issue.

This case was prosecuted through trial and was resolved on the merits. When awarding fees in *In re Vitamin Cases* (2003) 110 Cal. App. 4th 1041, 1056, the Court noted that a large multiplier might not be justified where a case is "resolved without the risks of trial." (See also *In re Auction Houses Antitrust Litig.* (S.D.N.Y. 2000) 197 F.R.D. 71, 76.) The resolution of the case on its merits warrants some multiplier.

The fact that a government entity will be paying the fees is not a consideration in setting the multiplier. The purpose of fee shifting is to compensate litigants and attorneys who step forward to engage in public interest litigation when there are insufficient financial incentives to justify the litigation in economic terms. (*In re Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217, 1210.) Because the focus is on the incentive to pursue meritorious litigation, the identity of the party that must pay the fees is not relevant. (*Rogel v. Lynwood Redevelopment Agency* (2011) 194 Cal.App.4th 1319, 1331; *Horsford v. Board Of Trustees Of California State University* (2005) 132 Cal.App.4th 359, 400-401.)

The Court finds a multiplier of 1.5 is appropriate to account for the contingent risk and the pursuit of this case through judgment. The Court will decrease the lodestar by $57,450 ($27,450 + $30,000) to account for partial nature of the success, as the Board prevailed on the Water Code 1259.4 issue and the dams issue.

17

Exhibit 4
4-41

FEES - CONCLUSION.

The Court will award fees under CCP 1021.5.  The adjusted merits lodestar of $266,670 ($324,120 - $57,450) is multiplied by 1.5 and results in $400,005.  The fees lodestar of $45,000 is multiplied by 1.0 and results in $45,000.  The total fee award is $445,005.

DATED: MAR 2 2 2013

_____
Evelio Grillo
Judge of the Superior Court

18

Exhibit 4
4-42

**EXHIBIT C**

Exhibit 4
4-43

# THE**RECORDER**

NOT FOR REPRINT

Click to print or Select 'Print' in your browser menu to print this document.

Page printed from: *https://www.law.com/therecorder/2018/11/15/big-law-should-raise-partner-billing-rates-10-percent-now/*

# Big Law Should Raise Partner Billing Rates 10+ Percent Now

It's critical to the long-term viability of Big Law that partners delegate more and that firms re-balance where margin is generated; raising partner rates aggressively will help with both

By **Hugh A. Simons** | November 15, 2018

We're close to a peak of the business cycle. Client businesses are performing strongly; they can afford aggressively-increased partner billing rates. But the logic for raising rates strongly now is more than just opportunism; it's about Big Law's long-term viability. For firms to remain prosperous two things must happen: partners must delegate more and firms must re-balance where they generate margin (i.e. profit) from more junior to more senior lawyers. Raising partner rates aggressively now will help on both these fronts.

On delegation, let's start with two observations. First, clients have been taking work away from Big Law and doing it in-house (or through lower-cost providers) because so doing saves money. This shifting will intensify as the new breed of more-capable in-house lawyer (see Figure 1) takes not just more work, but more high-end work, away from outside counsel. Second, more than half the hours partners bill (in many cases, well more than half) are for work that could be done by a lawyer with a lower billing rate. These observations connect: getting partners to delegate more will lower total client charges which is vital to Big Law stemming the contraction of market demand. As an aside I use 'delegate' not 'leverage' here deliberately: when partners hear 'leverage' they think they have to add more

Exhibit 4
4-44

associates to their matters; by using 'delegate' I hope for partners to hear that instead of their doing an hour's work, they have an associate do it.

The connection between delegation and partner billing rates isn't entirely obvious but it's real. Many partners recognize that much of the work they do is not true partner-level work. Hence, they are wary about charging full partner billing rates; but rather than delegating (as they should), they appease their conscience by shaving a little off their billing rates. Despite this



back-pressure, the failure to delegate results in unnecessarily-increased client fees and also denies associates learning opportunities and disinclines partners from doing that which they should be doing, i.e. going out and finding more high-quality work. Raising partners' billing rates assertively will push back on this dynamic, increase delegation, lower fees, and thus help stem the contraction in market demand.

On the issue of re-balancing where margin is generated, let's again start with two observations. The first is that, over time, technology will continue to reduce the demand for junior lawyer time relative to that of senior lawyers. The second is that today's billing rates generate higher margin on junior lawyer time than on senior lawyer time. To see this latter, take a look at the amount by which billing rates exceed compensation (converted to an hourly equivalent) by lawyer cohort. What you'll find is that billing rates are 4.5 to 5.0 times compensation for junior associates and only 3.5 to 4.0 times compensation for senior associates and counsel. Again, linking the two observations: Big Law is on a path to see margins and profitability diminish as technology continues to erode the demand for junior lawyer time.

Big Law's margin structure is befuddling. It is inverted relative to all other businesses—all others charge a higher mark up on their higher-value products—e.g. in the rag trade, the

Exhibit 4
4-45

...g Law Should Raise Partner Billing Rates 10+ Percent Now | The...          https://www.law.com/therecorder/2018/11/15/big-law-should-raise-p...

mark up on *haute couture* is much higher than that on *prêt-à-porter* (ready-to-wear). The inversion is the cumulative effect of many years of raising associate rates more than partner rates while being careful not to let senior associate and counsel rates come too close to junior partner rates. Clients are instinctively aware of the nonsense that associate billing rates have become; that's why they say they see the value in partner billing rates but balk at the junior associate rates. The truly weird part is that Big Law's wacky billing rate structure is entirely of its own making. Clients care greatly about the total fee charged; they care little about how that total is arrived at in the law firm's billing system.

To change this profitability trajectory, Big Law needs to raise partner billing rates aggressively so that the billing rates of senior associates and counsel can rise so that, in turn, the greater margin earned on the time of these more senior lawyers can offset the loss of margin through diminished demand for junior lawyer time. This cannot be done overnight. But it must be done at a pace equivalent to that of technology's erosion of junior lawyer demand, and it must begin now as Big Law's billing rates are already behind the curve.

In a normal year, partner rates would go up around 5 or 6 percent. Continued increases at this rate won't fix the problem. Rates must go up more especially in years where client businesses are performing strongly. Thus, this year partner rates should go up by 8 to 10 percent, and by more for the most sought-after partners in the busiest practices.

It's rare in Big Law that opportunity aligns with pressing needs. But now is such a time. The opportunity is created by the business cycle; the needs are to increase delegation and re-balance where margin is generated. It's an opportunity not to be missed.

Hugh A. Simons, Ph.D., is formerly a senior partner and executive committee member at The Boston Consulting Group and chief operating officer at Ropes & Gray. He writes about law firms as part of the ALM Intelligence Fellows Program. He welcomes readers' reactions at HASimons@Gmail.com (mailto:HASimons@Gmail.com)

Exhibit 4
4-46

**EXHIBIT D**

Exhibit 4
4-47

ly Clients: Higher Law Firm Billing Rates Really Do Pay Off | La...          https://www.law.com/sites/americanlawyer/2018/02/21/sorry-clients-h...

# LAW.COM

**NOT FOR REPRINT**

🖨 Click to print or Select 'Print' in your browser menu to print this document.

Page printed from: *https://www.law.com/2018/02/21/sorry-clients-higher-law-firm-billing-rates-really-do-pay-off/*

# Sorry Clients: Higher Law Firm Billing Rates Really Do Pay Off

An analysis by Citi Private Bank's Law Firm Group shows the advantage of aggressively raising published billing rates.

By Miriam Rozen | Originally published on **The American Lawyer (/americanlawyer)** | February 21, 2018

Law firms do better when they raise their published billing rates at a faster clip, even if those increases result in a widening gap between published and realized rates, according to a recent analysis by Citi Private Bank's Law Firm Group.



**Credit: Sergey Nivens — Fotolia**

"The analysis we have is how the consistently most successful firms have increased rates versus the broader industry during 2010-17," explained Gretta Rusanow (https://www.law.com /americanlawyer/sites/americanlawyer/2018/02/07/citi-report-strong-fourth-quarter-pushes-2017-financials-past-2016-results/), head of advisory services for the group.

Top-performing firms increased their rates at an average annual rate of 4.4

f 3

Exhibit 4
4-48

percent, compared with an increase of 3.3 percent for the broader sample, Rusanow said in an email. While those top performers saw a wider gap between their published and realized rates, their realized rates nonetheless grew faster than at the other, less aggressively priced firms.

At top-quartile law firms—grouped by Citi based on profitability, contribution per lawyer averages and net income margins—"realized rates grew at an average annual rate of 3.5 percent, compared to 2.8 percent for the broader industry," Rusanow said.

"The key takeaway," according to Rusanow: Firms continued to increase published rates while taking deeper discounts. That's how the top echelon of firms "widened their rate advantage."

The trend persisted in 2017. Citi's most recent survey of law firm performance (https://www.law.com/americanlawyer/sites/americanlawyer/2017/12/14/in-2018-law-firms-will-face-greater-challenges-than-slow-growth/) showed that for the most successful firms, published rates increased 5.6 percent, versus 4.2 percent for the broader sample. At the same time, realization rates increased 5.7 percent for the most successful firms, versus 2.9 percent for the broader sample, Rusanow said.

Billing rates overall have continued a steady climb in recent years, despite pressure from clients insisting (https://www.law.com/americanlawyer/almID/1202749147696/) on discounts, decreases and other cost savings (https://www.law.com/americanlawyer/sites/americanlawyer/2017/11/14/no-pain-no-gain-for-law-firms-as-client-demands-get-more-extreme/).

For law firm consultant Janet Stanton of Adam Smith Esq., the Citi analysis confirms that the elites have a built-in advantage.

"This is more of the same," Stanton said. "There has been a pulling away of firms with a stronger performance. To me it also says something about the greater value of brand strength."

Exhibit 4
4-49

**EXHIBIT E**

Exhibit 4
4-50

# THE RECORDER

NOT FOR REPRINT

Click to Print or Select 'Print' in your browser menu to print this document.

Page printed from: *The Recorder*

# Are Law Firms Charging Less or Just Making Less?

Roy Strom , The Am Law Daily

October 3, 2017

One potential response to what Richard Susskind calls the "more-for-less challenge" facing the legal industry is for law firms to "simply charge less."

In a market where clients are struggling to deliver more legal services for less cost (the challenge), Susskind said a law firm may be tempted to undercut its competition on price in hopes of winning more work.

But is it actually happening?

While most agree that clients have more leverage today than in decades past, there's little evidence to suggest that law firms have begun to lower their rates or "charge less." That said, clients have exerted their power in a number of other ways—demanding discounts; implementing budgets and fee guidelines—that have cut into law firms' realization rates. Even if law firms aren't charging less, they are effectively making less.

For starters, law firm rates rose more in 2015 than any year since 2010, according to the latest Real Rate Report by Wolters Kluwer. The 5.4 percent average increase in 2015, however, remains well below the 8 percent growth that was typically seen prior to the recession.

Top-line rates, though, have come to mean less and less as clients have pushed back on paying them in multiple ways. Thomson Reuters Peer Monitor data shows that growth in rates clients agree to pay—what they call worked rates—are growing at a slower pace than that put forth by the Wolters Kluwer data. Worked rates as of mid-2017 had grown 3 percent from the prior year, which is slightly higher than the increases seen in the past three years.

But the hemorrhage doesn't end there. Realization against those worked rates has recently declined. After holding between 89 and 90 percent in previous years, realization in the first quarter dipped below 89 percent for the first time, to 88.6 percent. It rebounded slightly, to 89.1 percent, at the midyear point.

All of which means there is no growth in what clients are paying, according to a newer data set that Thomson Reuters uses to track payments by clients.

Exhibit 4
4-51

"Outside of the Am Law 50, we aren't seeing any appreciable growth in the rates law departments are paying," said Bill Josten, senior legal industry analyst for the Thomson Reuters Legal Executive Institute.

Josten said the biggest hits to realization don't actually come from clients directly pushing back on bills or requesting write-downs. Instead, Josten said Thomson Reuters data shows that law firms' realization has been hit hardest by actions the law firm takes: Discounting their rates up front and taking write-downs from their bills before they head out the door.

"Some of that is from actual pressure by clients," Josten said. "Part of it is driven by fear."

There is one other data point that could convince a managing partner that charging less will not boost your profits.

In a study of what made the country's most profitable firms as successful as they are, Josten said he found that higher realization rates than their less-profitable peers, perhaps unsurprisingly, are a major factor. But the difference in realization is not due to a difference in their clients' behavior.

Josten said the two groups have similar drop-offs in realization after their clients receive the bills. The majority of the difference has to do with law firms discounting their fees or writing down their fees before sending bills to clients. That may suggest that "charging less" is more likely to crimp profit margins than it is to bring in new clients.

"I don't know that it's so simple to say that lawyers are going to just have to charge less or will end up charging less," Josten said. "It will be more about tailoring rates to practices that will allow you to profit."

*Roy Strom, based in Chicago, covers the business of law with a focus on how law firm business models are changing. He can be reached at rstrom@alm.com. On Twitter: @RoyWStrom.*

Copyright 2017. ALM Media Properties, LLC. All rights reserved.

Exhibit 4
4-52

Exhibit 5 to Declaration of Paul L. More

matrix                                                                    http://laffeymatrix.com/see.html

# LAFFEY MATRIX

| History | | | Years Out of Law School * | | | | | |
|---------|---|---|---|---|---|---|---|---|
| | Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| Case Law | 6/01/21- 5/31/22 | 1.006053 | $208 | $381 | $468 | $676 | $764 | $919 |
| | 6/01/20- 5/31/21 | 1.015894 | $206 | $378 | $465 | $672 | $759 | $914 |
| See the Matrix | 6/01/19- 5/31/20 | 1.0049 | $203 | $372 | $458 | $661 | $747 | $899 |
| | 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| Contact us | 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| | 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| Home | 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| | 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| | 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| | 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| | 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| | 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| | 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| | 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| | 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| | 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| | 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| | 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| | 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| | 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| | 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| | 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| | 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| | 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| | 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| | 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| | 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| | 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

**Exhibit 5**
**5-1**

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g.,DL v. District of Columbia, 267 F.Supp.3d 55, 69 (D.D.C. 2017)

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

Exhibit 5
5-2