# EXHIBIT C

**Exhibit C—Defendants' Response to Plaintiffs' Proposed Scope of Discovery**

The Court should continue to stay discovery in this matter pending resolution of dispositive motions on Plaintiffs' Third Amended Complaint ("3AC"), or if leave to file it is granted, their Fourth Amended Complaint ("4AC"). Plaintiffs' 3AC and 4AC—like their previous complaints—attack Defendants' First Amendment petitioning and speech. Permitting discovery while motions to dismiss the 3AC (or 4AC) are pending would severely burden Defendants' First Amendment rights, on a complaint that may ultimately be dismissed. Indeed, the scope of Plaintiffs' proposed discovery—proposing to demand documents related to the Unions' political activity that has repeatedly been held to be First Amendment protected—demonstrates the danger of permitting discovery to proceed at this juncture.

Two previously assigned judges agreed that nearly all of Defendants' alleged acts are protected under the First Amendment *Noerr-Pennington* doctrine and that allowing Plaintiffs to base their action on Defendants' political participation would improperly burden Defendants' right to petition. Dkt. 60, at 17-21; Dkt. 93, at 27. The two judges disagreed only over whether allegations concerning two discrete, alleged acts were sufficiently pled to avoid Defendant's First Amendment defense on a motion to dismiss: two letters to local politicians written by Defendant Local 30's attorney about Plaintiffs' planned hotel expansion and Defendants' alleged threat to petition against future SeaWorld attractions. *Compare* Dkt. 60, at 18, 20 & n.3, *with* Dkt. 93, at 25, 27. Defendants' position is that these two orders are in conflict, and Defendants will present argument to the Court in a future motion to dismiss that Judge Hayes's conclusion that the entirety of the complaint is First Amendment protected was correct.

Plaintiffs' 3AC and 4AC continue to raise and re-raise the same allegations, notwithstanding the Court's repeated conclusion that the overwhelming majority of

the allegations in Plaintiffs' complaints are non-actionable because they are protected by the First Amendment.  These repleaded, non-actionable allegations are about past petitioning involving different entities and different development projects, stretching back over a decade.  They include allegations that Defendants "bribed" local officials by lobbying them, that the former Mayor of San Diego granted Defendants a "secret veto" over development projects, and that Defendants violated various local lobbying ordinances and California's Brown Act.  Compare Dkt. 93, at 25-26, 27, 47-48, with Dkt. 114, at ¶3 (realleging that Mayor Faulconer gave Defendants a "secret veto"); ¶¶62-65 (realleging that Defendants are engaged in unlawful lobbying); ¶¶68-169 (realleging Defendants' past political petitioning on unrelated development projects); ¶¶187, 256 (realleging that Defendants "bribed" a councilmember by lobbying against Plaintiffs' hotel development).

Plaintiffs are attempting to use these defunct allegations to expand the scope of discovery, simply because they have failed to remove them from the Complaint. Plaintiffs' proposed "Scope of Discovery" (Exhibit B to the Case Management Statement) demonstrates Plaintiffs' intent behind repleading allegations about the Unions' extraneous, constitutionally protected political participation: to open Defendants' political program, and the files of any public officials and other third parties that have had political or economic dealings with Defendants, up to discovery.  Plaintiffs seek discovery on all communications with a wide variety of government and non-government actors about *any development project* that took place in the decade prior to the complaint being filed.  Plaintiffs seek extensive discovery regarding communications about Defendants' political petitioning on development projects that the *Court has twice held to be non-actionable and First Amendment protected*, including the Lane Field, Hotel del Coronado, Ritz-Carlton/Cisterra, Town and Country Hotel, Sunroad Hotel, Convention Center, and others.  *Cf*. Dkt. 60, at 10-15, 15-17; Dkt. 93, at 21, 24 (Defendants' past litigation

and legislative lobbying are non-actionable and First Amendment protected). And Plaintiffs further seek internal communications and communications with third parties concerning Defendants' "lobbying" and "donations" (as well as any "card-check neutrality agreement" or "development project").

The Court has broad discretion to stay discovery while dispositive motions are pending where, as here, discovery is not necessary to resolve the dispositive motion. *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (district court did not abuse discretion by staying discovery pending resolution of motion to dismiss on civil RICO claim: "Discovery is only appropriate where there are factual issues raised by a Rule 12(b) motion."); *Client Sols. Architects, LLC v. United States*, No. 19CV123-MMA(MSB), 2020 WL 364209, at *1 (S.D. Cal. Jan. 22, 2020) ("District courts have 'broad discretion to stay discovery in a case while a dispositive motion is pending.'") (quoting *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001). Good cause to stay discovery pending a dispositive motion exists if "'the pending motion [is] potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed'" and "'the pending, potentially dispositive motion can be decided absent additional discovery." *Pac. Surf Designs, Inc. v. Whitewater W. Indus., Ltd.*, No. 20CV1464-BEN(BLM), 2021 WL 3080061, at *2 (S.D. Cal. July 21, 2021) (quoting *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *4 (E.D. Cal. Feb. 7, 2011)). Both of those conditions are met in this case.

Staying discovery pending the resolution of dispositive motions is appropriate in antitrust cases. See *Markson v. CRST Int'l, Inc.*, No. 5:17-CV-01261-SB-SP, 2020 WL 8994103, at *1 (C.D. Cal. Dec. 7, 2020) ("The Supreme Court has recognized that staying discovery may be appropriate in antitrust cases, where discovery tends to be broad, time-consuming, and expensive.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). And it is particularly

appropriate in cases raising sensitive First Amendment speech and petitioning issues, as this one does.  See, e.g., *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (2009) (establishing heightened standard for discovery that may chill political participation); *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) (applying heightened pleading standard to complaint attacking petitioning "to avoid 'a chilling effect on the exercise of this fundamental First Amendment right.'"); *In re Outlaw Lab'ys, LP Litig.*, 352 F. Supp. 3d 992, 1004 (S.D. Cal. 2018) (same).

If the Court has any doubts concerning the foregoing, it should permit the parties to brief the issue at further length.  The direct prejudice to Defendants—who have been forced to file multiple, successful motions to dismiss and expend substantial litigation resources already—would be significant if this Court allows discovery while another motion to dismiss (which we think will be fully dispositive) is pending.  Besides that direct prejudice, allowing the proposed discovery (which includes *39* broad-ranging third-party document subpoenas and *48 depositions* of entities that may have had political or business dealings with Defendants) would impose significant costs on these third-party government and non-governmental entities and individuals, which may have the (likely desired) effect of deterring them from associating with Defendants in the future and diminish Defendants' ability to exercise their First Amendment rights.

Even if the Court ultimately determines that discovery should proceed while Defendants' potentially dispositive motions are pending, it should strictly limit Plaintiffs to discovery related to the few allegations that Judge Robinson (but not Judge Hayes) deemed actionable.  Defendants respectfully request the opportunity to supply further briefing to the Court on such limits, if and when the Court decides to lift the discovery stay.