

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EVANS HOTELS, LLC, et al.,

Plaintiffs,

v.

UNITE HERE! LOCAL 30, et al.,

Defendants.

Case No.:  3:18-cv-02763-RSH-AHG

**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION TO STRIKE**

**[ECF No. 168]**

Before the Court is Defendants' Motion to Strike Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). ECF No. 168. Having considered the parties' arguments and the applicable legal authority, the Court **RECOMMENDS** the District Judge **GRANT** Defendants' motion.

## I.    INTRODUCTION

Plaintiffs filed this action on December 7, 2018. ECF No. 1. Old it may be; mature it is not. Although nearly seven years old, it has yet to advance past the pleading stage.

Even though the Ninth Circuit substantially narrowed the issues to a single claim for secondary boycott relating to Plaintiffs' business relationship with SeaWorld, Plaintiffs insist that most of the allegations in their 320-paragraph complaint are essential to this

claim and should not be stricken. A close review of the allegations, however, demonstrates this is not the case. The challenged allegations are directed toward conduct that is not related to SeaWorld and to claims that have been dismissed by three different district judges in this court[1] and by the Ninth Circuit. To the extent that the challenged allegations have any relevance to the sole remaining claim, they are redundant or unnecessary. Allowing Plaintiffs to keep these allegations in the operative complaint would submerge this case into a morass of disputes over discovery into events that are remote in time and immaterial. The undersigned therefore **RECOMMENDS** that the motion be **GRANTED**.

## II.   BACKGROUND OF THE PARTIES' DISPUTE

Plaintiffs' Third Amended Complaint ("TAC") alleges that Defendants have developed and executed a "Playbook" to force luxury hotel developers in San Diego to use union workers. ECF No. 114. The TAC describes the "Playbook" in two parts:

- Part One: Plaintiffs allege that Defendants mount "sham" oppositions to non-union hotel projects using fabricated environmental and land use challenges, including filing frivolous environmental lawsuits and creating fake grassroots opposition to non-union projects through websites and social media. Plaintiffs also allege that Defendants assert unlawful control of the political process by exerting pressure on local politicians to oppose non-union projects in secret meetings. *Id.* ¶¶ 48-54.

- Part Two: Plaintiffs allege that Defendants engage in secondary boycotts by threatening third parties that do business with targeted hotel developers who do not support unions. Plaintiffs allege specifically that Defendants targeted SeaWorld and caused SeaWorld through their threats to terminate its joint venture with Plaintiffs. *Id.* ¶¶ 55-65, 68.

---

[1] *See* ECF No. 60 (Judge William Q. Hayes' Order dismissing the first amended complaint); ECF No. 93 (Judge Todd W. Robinson's Order dismissing all claims in the second amended complaint except Plaintiffs' first cause of action for secondary boycott); ECF No. 156 (Judge Robert S. Huie's Order dismissing the third amended complaint).

Defendants moved to dismiss the TAC. ECF No. 143. On July 6, 2023, Judge Huie granted this motion and dismissed all of Plaintiffs' claims with prejudice. ECF No. 156.[2] Applying a three-part test under the *Noerr-Pennington* doctrine, Judge Huie found that Defendants' alleged conduct of lobbying local government officials, sending letters to oppose the Bahia redevelopment project, creating websites and social media content, threatening to file environmental lawsuits, and threatening to oppose SeaWorld's future development plans constituted protected activity under the First Amendment. *Id.* at 31. The Court rejected Plaintiffs' arguments that Defendants' conduct fell within the "sham" exception to the *Noerr-Pennington* doctrine and denied leave to amend. *Id.* at 23, 29. Plaintiffs appealed this decision to the Ninth Circuit. ECF No. 157.

On January 2, 2025, the Ninth Circuit reversed the dismissal of Plaintiffs' secondary boycott claim under 29 U.S.C. § 158(b)(4)(ii)(B), but affirmed the dismissal of Plaintiffs' other claims with prejudice. *Evans Hotels, LLC v. Unite Here! et al.*, No. 23-55692, 2025 WL 17120, at *1 (9th Cir. Jan. 2, 2025). The Ninth Circuit also affirmed Judge Huie's order denying leave to amend the complaint. *Id.* Effectively, the Ninth Circuit rejected "Part One" of the "Playbook" and allowed a single claim based on "Part Two," but only as it relates to SeaWorld, to stand. *Id.* at *2.

The Ninth Circuit found that the "*Noerr-Pennington* doctrine shields [Defendants] from statutory liability for their efforts to oppose the lease amendment before the Mayor of San Diego and the San Diego City Council … [and] for their threats to raise

---

[2] The case docket shows extensive motion practice leading up to the TAC, including: 1) Defendants' motions to dismiss the original complaint, ECF No. 15; 2) Defendants' motions to dismiss the first amended complaint, ECF No. 29; 3) Judge Hayes' Order granting the motions to dismiss the first amended complaint, ECF No. 60; 4) Plaintiffs' motion for reconsideration of Judge Hayes' Order, ECF No. 61; 5) Judge Hayes' Order denying the motion for reconsideration, ECF No. 75; 6) Defendants' motion to dismiss the second amended complaint, ECF No. 79; and 7) Judge Robinson's Order granting the motion to dismiss the second amended complaint save for the secondary boycott claim, ECF No. 93.

administrative and legal challenges to the Bahia redevelopment." *Id.* at *1. The Ninth Circuit also held that Plaintiffs' secondary boycott claim – as it relates to lobbying efforts and the Bahia redevelopment – was precluded by the *Noerr-Pennington* doctrine. *Id.* (holding that *Noerr-Pennington* "also shields the Unions from liability for their threats to raise administrative and legal challenges to the Bahia redevelopment."). The Ninth Circuit further agreed that Plaintiffs failed to allege sufficient facts to invoke the "sham" exception to the *Noerr-Pennington* doctrine with respect to the Bahia redevelopment. *Id.* at *2 ("Evans similarly fails to plead facts sufficient to show the sham exception applies to the Unions' threats to raise administrative and legal challenges to the Bahia redevelopment.").

The Ninth Circuit found that Plaintiffs did not state claims under the Sherman Act for attempted monopolization or conspiracy to monopolize because Defendants do not compete in the luxury hotel market. *Id.* The Ninth Circuit affirmed Judge Huie's order denying leave to amend that claim, agreeing that Plaintiffs had "unduly delayed in seeking to add a new Sherman Act claim" and Defendants would be prejudiced by further amendment. *Id.* at *3.[3]

The Ninth Circuit viewed Plaintiffs' allegations regarding Defendants' threats to challenge **SeaWorld's** future development plans, however, differently. With respect to SeaWorld, the Court found that Plaintiffs pleaded sufficient facts to invoke the sham exception to *Noerr-Pennington*. *Id.* at *2. "Construing the allegations in the light most favorable to Evans, the Unions sought to use the governmental process, rather than the outcome of that process, to coerce SeaWorld. … Further, the threat was objectively baseless as the Unions neither knew which attractions SeaWorld intended to build nor did they intend to follow through on their threat." *Id.*

---

[3] The Ninth Circuit reversed Judge Huie's order denying Defendants' request for attorney fees in conjunction with their anti-SLAPP motion to strike, finding that Defendants were entitled to attorney fees and costs because Plaintiffs abandoned the challenged claims while Defendants' anti-SLAPP motion was pending. *Id.* at *4.

Following the Ninth Circuit decision, the parties filed a Joint Case Management Statement ("JCMS") pursuant to the Court's direction. ECF No. 167. Plaintiffs' position in the JCMS is that, even after the Ninth Circuit decision, they are entitled to discovery within a 15-year time frame, 2008-2022, in a range of categories, including:

- All "card check neutrality" agreements between Defendants and third-party non-union employers;

- "All communications, oppositions/objections to development projects filed by Defendants" with a number of local government agencies related to SeaWorld and nine other projects/developments unrelated to SeaWorld;

- "All petitions for writ of mandate re CEQA" filed in the County of San Diego; and

- "All documents and communications with third-party non-union employers and the NLRB" related to SeaWorld and 14 other non-SeaWorld categories.

*Id.* Ex. A. Defendants, in contrast, proposed a more limited scope of discovery focused on the time frame between 2014 and 2018 and communications between Plaintiffs and SeaWorld's employees and agents. *Id.* Ex. B.

Defendants filed the instant Motion to Strike on March 5, 2025. ECF No. 168. After reviewing Defendants' motion and the parties' differing positions in the JCMS, the undersigned held a status conference to determine whether a compromise could be reached as to this Motion. ECF No. 170. To facilitate that discussion, the undersigned ordered the parties to submit a chart identifying each paragraph in the TAC with a column indicating the parties' positions as to whether that paragraph should be stricken following the Ninth Circuit's opinion. *Id.*

The undersigned held this status conference on March 20, 2025, but the parties were unable to reach a complete compromise.[4] Because of the undersigned's familiarity with the

---

[4] The Court drafted a compromise proposal for the conference that was not accepted. Plaintiffs indicated in their opposition to this motion, however, that they agree to the following changes to the TAC: delete references to the "Relevant Market" in paragraphs

parties' positions, Judge Huie referred the Motion for a Report and Recommendation. ECF No. 175. The parties were allowed to submit additional briefing following the status conference. ECF No. 177.

## III.    ALLEGATIONS NOT IN DISPUTE

Before turning to the portions of the TAC that Defendants move to strike, it is worth reviewing what portions of the TAC are ***not*** in dispute. Following the Ninth Circuit's opinion, Plaintiff has a single claim for secondary boycott in violation of 29 U.S.C. § 158(b)(4)(ii)(B) based on SeaWorld's termination of its joint venture with Plaintiffs. *Evans Hotels, LLC*, 2025 WL 17120, at *2. In Exhibit A to their Opposition to this Motion, Plaintiffs agree that the elements of this claim are:

(1) Defendants engaged "in conduct that threatens, coerces, or restrains any person (here SeaWorld); and

(2) Defendants' object was to "force or require that person (SeaWorld) to cease or refrain from doing any business with another person (Plaintiffs)".

ECF No. 189-1 at 1. Defendants do not challenge the following allegations in the TAC:[5]

- Portions of the "Summary of the Action" section of the TAC in paragraphs 1, 3, 8, 11, and 12 that relate to the SeaWorld secondary boycott claim. These paragraphs allege that Defendants have engaged in unlawful secondary boycotts, bragged about their ability to thwart government approval for projects they oppose, and threatened

---

1, 6, 12, 229, 230, 232, 235; delete references to the statutory provisions for dismissed claims in paragraph 25; delete an allegation regarding Brown Act violations in paragraph 60. Plaintiffs also agree to delete certain paragraphs from the TAC: paragraphs 236-247, which allege the relevant market; paragraphs 248-254, which allege competitive injury; paragraphs 292-296 of their secondary boycott claim; and paragraphs 303-320, which allege the now-dismissed second and third claims. Plaintiffs also agree to delete references to the second and third claims in the prayer for relief. ECF No. 189-1.

[5] Exhibit 1 to Defendants' Motion to Strike is an annotated version of the TAC. The allegations that Defendants seek to strike are highlighted in orange. Defendants do not challenge the non-highlighted portions of this document.

Plaintiffs' business partner SeaWorld, in violation of Section 8(b)(4) of the National Labor Relations Act ("NLRA") and Section 303 of the Labor Management Relations Act ("LMRA").

- The entirety of the "Parties" section of the TAC in paragraphs 13 through 24, except for an allegation in paragraph 21 regarding the failure of certain Defendants to register as lobbyists. These paragraphs describe the legal status and background of the parties to the litigation.

- The entirety of the "Jurisdiction and Venue" section of the TAC in paragraphs 25 through 27, except for references to the Sherman Act and the Clayton Act. These paragraphs allege that this Court has subject matter jurisdiction and that the Southern District of California is the proper venue for Plaintiffs' claim.

- The section of the TAC describing "card check neutrality agreements" in paragraphs 28 through 41 and paragraph 274 regarding these agreements. These paragraphs describe the "traditional" unionization process under the NLRA and allege that Defendants coerce employers to agree to card check neutrality agreements to bypass NLRA safeguards that ensure employees make voluntary and informed decisions about whether to unionize. They allege that Defendants' motive for doing so is to increase the dues and fees they collect from union members.

- The section of the TAC describing "project labor agreements" in paragraphs 42 through 46, except for some language in paragraph 46 that alleges that Defendants' actions were directed to "other hotel owners and developers," and Defendants' "behind the scenes" communications with public officials. These paragraphs describe how project labor agreements prohibit the use of non-unionized workers on construction projects, increase the cost of construction, and require project owners to use unionized workers without regard to skills or ability. They allege that Defendants coerce project owners to enter into project labor agreements through secondary pressure.

- Paragraphs 55 and 56. The section of the TAC alleging that Defendants use unlawful

tactics, including threats to third parties, to disrupt the business relationship between Plaintiffs and third parties in an attempt to coerce Plaintiffs to accede to their demands to use union workers, except for an allegation regarding Defendants' pursuit of frivolous environmental and land use challenges and/or threatening public officials in order to secure votes.

- Paragraphs 63 and 71. These paragraphs allege that Defendant Local 30 engages in lobbying activities and Defendants lobbied against the San Diego Convention Center expansion.

- Paragraph 174. The portion of this paragraph that would remain after the other allegations are stricken alleges that Defendants' motive is not only to force Plaintiffs to use union workers, but also to make an example of Plaintiffs so other project owners will give in to Defendants' demands.

- Paragraphs 200 through 221. The allegations in these paragraphs that would remain if the other allegations are stricken describe the long-standing relationship between Plaintiffs and SeaWorld, the joint venture between Plaintiffs and SeaWorld and its termination, Defendants' relationship and interactions with SeaWorld and its consultant Allison Rolfe generally and as they relate to Plaintiffs, and Defendants' alleged role in SeaWorld's termination of the joint venture.

- Paragraphs 255 through 257. The allegations in these paragraphs that would remain if the other allegations are stricken describe the sham exception to the *Noerr-Pennington* doctrine and explain how that exception applies to Defendants' conduct. Plaintiffs allege that the sham exception applies because Defendants threatened future development projects, rather than projects that were currently being proposed, for the purpose of forcing Plaintiffs to agree to use union labor.

- Paragraphs 277 through 291. These paragraphs set forth Plaintiff's Claim for Relief based on Defendants' unlawful secondary boycott by pressuring SeaWorld to stop doing business with Plaintiffs.

- Prayer for Relief. The paragraphs of the Prayer that would remain after the other allegations are stricken state the relief sought on the sole claim for relief based on the SeaWorld secondary boycott.

Thus, even if this motion is granted, the TAC will contain ample allegations to support Plaintiffs' sole claim for secondary boycott with respect to SeaWorld in violation of 29 U.S.C. § 158(b)(4)(ii)(B).

## IV.    DISCUSSION

Having established that Plaintiffs' claim for secondary boycott relating to SeaWorld is supported sufficiently by the paragraphs that Defendants do ***not*** seek to strike from the TAC, the undersigned now turns to an evaluation of whether the other portions of the TAC that are the subject of this motion (the "challenged allegations")[6] should be stricken under Rule 12(f).

Defendants argue that the challenged allegations should be stricken because they are redundant, immaterial, impertinent, or scandalous under Fed. R. Civ. P. 12(f). ECF No. 168 at 2. Defendants contend that the challenged allegations aver a pattern of protected petitioning directed toward "***primary*** targets, not secondary ones," which makes them irrelevant to a secondary boycott claim. ECF No. 182 at 5 (emphasis added). Defendants argue that the Court should apply additional scrutiny to allegations that are directed toward protected activity under *Noerr-Pennington* because Plaintiffs intend to engage in discovery about the protected activity. ECF No. 190 at 12. Defendants contend such discovery would be an "immaterial and prejudicial" examination of political associations and activities. *Id.*

Plaintiffs, on the other hand, argue that motions to strike are "disfavored" and only appropriate to strike allegations that "could have no possible bearing on the subject matter of the litigation." ECF No. 189 at 9 (quoting *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1169 (S.D. Cal. 2012). Relying on a series of cases from the Sixth Circuit,

---

[6] The challenged allegations are highlighted in orange on Exhibit 1 to Defendants' Motion, ECF No. 168.

Plaintiffs argue that the allegations related to Defendants' "history of threatening and coercive conduct – their 'playbook' – vis-à-vis their pattern of reflexively filing environmental and land use challenges, violating the Brown Act and exerting their control over the City Council, Coastal Commission, and Port of San Diego" are relevant to both elements of the secondary boycott claim because they are evidence of a pattern of activity and its effect on secondary employers. *Id.* at 15. Plaintiffs also argue that Defendants' efforts to oppose the Bahia redevelopment project are relevant to the second element of the secondary boycott claim, which was allegedly to force SeaWorld to cease or refrain from doing business with Plaintiffs. ECF No. 189 at 10-11. According to Plaintiffs, because SeaWorld **might have** considered Defendants' past conduct in deciding to terminate the joint venture with Plaintiffs, **any** past conduct of Defendants is relevant. *Id.* Plaintiffs reject the notion that the Ninth Circuit's finding that Defendants' conduct is protected activity should have any impact on these allegations, because *Noerr-Pennington* is not a rule of evidence, and they argue that conduct that may be protected from liability can still be relevant to a secondary boycott claim. *Id.*

### A.    Legal Standard for a Motion to Strike

Federal Rule of Civil Procedure 12(f) allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). There is no functional difference between immaterial and impertinent matter. Both of those terms encompass material that is not essential or necessary to the issues in the case. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). "Redundant matter is defined as allegations that 'constitute a needless repetition of other averments or are foreign to the issue.'" *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (quoting *Thornton v. Solutionone Cleaning Concepts, Inc.*, No. 06-455, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007)). "Scandalous" matter includes allegations that are derogatory to a person. *Doe 1 v. University of San Francisco*, 685 F. Supp. 2d 882, 895 (N.D. Cal. 2023).

Motions to strike should not be used as a substitute for a motion to dismiss or motion for summary judgment. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir.

3:18-cv-02763-RSH-AHG

2010) (holding that Rule 12(f) cannot be used to dismiss a claim for damages). They are generally disfavored "because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Rosales*, 882 F. Supp. 2d at 1178 (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)). Despite that disfavor, motions to strike are appropriate when the stricken material "would lead to unwarranted and prejudicial inferences" against a party, would unnecessarily complicate trial of the issues, or "for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case." *Fantasy*, 984 F.2d at 1528; *see also Sliger*, 789 F. Supp. 2d at 1216 ("granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues").

**B.     The Challenged Allegations Should Be Stricken Because They Are Immaterial and Redundant to the SeaWorld Secondary Boycott Claim.**

Contrary to Plaintiffs' arguments, the challenged allegations are not essential to either element of the SeaWorld secondary boycott claim. The challenged allegations are focused on Defendants' allegedly anticompetitive actions toward primary targets, not a secondary target like SeaWorld. The only way that Defendants' alleged "Playbook" is relevant to the SeaWorld claim is 1) the extent to which SeaWorld was aware of the alleged "Playbook," and 2) whether SeaWorld terminated its joint venture with Plaintiffs out of concern that Defendants would engage in similar behavior against SeaWorld's future development projects. Even without the challenged allegations, the TAC contains sufficient allegations on the question of SeaWorld's knowledge of Defendants' strategies and its impact on SeaWorld's decision-making. The challenged allegations are immaterial and redundant.

**1.     Allegations Regarding Defendants' Object for Interfering with the SeaWorld Joint Venture**

Plaintiffs argue that the challenged allegations should not be stricken because they are relevant to the second element of the secondary boycott claim, Defendants' object or

motive with respect to the SeaWorld secondary boycott. Plaintiffs aver Defendants' object was to "force SeaWorld to cease dealing with Plaintiffs unless Plaintiffs agreed to unionize their employees and use only union contractors for the Bahia redevelopment." ECF No. 189 at 10-11. As a threshold matter, this motion does not seek to strike several allegations that are directed toward this element of the secondary boycott claim. *See* ECF No. 168 Ex. 1. Paragraph 56, for example, alleges that Defendants "target neutral third parties" with the objective "to pressure that third party to either discontinue its relationship with the owner/developer that Defendants want to organize or continue to be subject to threats, intimidation, and opposition from Defendants." Paragraph 174 alleges that "Defendants seek not only to unionize the Bahia Hotel and force a PLA, but also to make an example out of Evans Hotels. The message to all other non-union developers and owners is clear: see how much you will spend and lose if you resist Defendants' demands." Paragraph 207 alleges that one of the Defendants promised SeaWorld's consultant that Defendants would not "engage in greenmail" on a specific project if the project owner agreed to a card check neutrality agreement, and Defendants would make a similar agreement with respect to Plaintiffs' project. Paragraph 209 alleges that this consultant told Plaintiffs that if they did not do a deal with Defendants, "Defendants would target all of Evans Hotels' projects and SeaWorld as Evans Hotels' business partner." Paragraph 210 alleges that the consultant "was sent by Defendants to communicate the message to Evans Hotels that unless it agreed to a card check neutrality agreement at the Bahia, the unions would continue its attack on the Bahia and come after SeaWorld as Evans Hotels' business partner." Remaining paragraphs 211-221, 257, and 285-291 contain similar allegations directed to the second element of the remaining claim. To the extent Plaintiff contends that the challenged allegations are necessary to the second element of the remaining claim, they are redundant of the foregoing allegations and can be stricken on that basis alone.

In addition to being redundant,[7] the challenged allegations have no "essential or important relationship" to the SeaWorld secondary boycott claim, which is limited to Defendants' interactions with SeaWorld. *See e.g., Gerrie v. County of San Bernardino*, No. 19-1435, 2023 WL 6194164, at *3 (C.D. Cal. May 25, 2023). Many of the challenged allegations are conclusory, speculative, solely legal argument, or do not allege specific facts. *E.g.,* ECF No. 168 Ex. 1 ¶¶ 2, 4, 5, 6, 8, 12, 46-48, 52-55, 57-62, 64-66, 83-84, 170-172, 174-75, 230, 256, 258, 259-260, 261-62, 265-66, 271-273, 275, 292, 293, 299, 300-302. Some of the challenged allegations are directed to disparaging Defendants rather than outlining a basis for liability. *E.g., Id.* ¶¶ 1, 21, 57, 65, 256. Several of the allegations are remote in time. *Id.* ¶ 97 (opposition to a project in 2008); ¶¶ 144, 148 (opposition to a project between 2003 and 2009); ¶ 159 (opposition to a project in 2012). Paragraphs 176 and 177 allege actions in the 1990s – nearly three decades before Plaintiffs filed this action.

The challenged allegations also focus on projects that have no connection to SeaWorld. *E.g.,* ¶¶ 4, 6, 7, 9, 10, 46, 48, 49, 50, 51, 52, 54, 55, 57, 58, 59, 60, 61, 62, 64, 65, 66, 67, 68, 231, 232, 233, 234, 263, 264, 265, 269, 270, 276, 297. As detailed below, in addition to having no connection to SeaWorld, Defendants' actions with respect to these unrelated projects are also substantially different than the wrongful conduct alleged in the secondary boycott claim. Plaintiffs allege that Defendants directed their conduct in these unrelated projects toward primary targets, not a secondary target like SeaWorld. And they allege that Defendants engaged in petitioning activity against actual projects, not theoretical or future projects, as alleged in the SeaWorld secondary boycott claim:

---

[7] The challenged allegations also repeat the same allegations over and over again. For example, paragraphs 2, 3, 6, 8, 11, 46, 50, 54, 59, 60, 234, 258, and 272 allege repeatedly that Defendants collude with elected officials in covert manners to secure opposition to non-union projects. Paragraphs 4, 11, 48, 49, 51, 54, 171, 175, 266, 267, and 269 allege repeatedly that Defendants raise meritless objections in various agency proceedings to non-union projects. Paragraphs 5, 7, 47, 230, 266, and 267 allege repeatedly that Defendants' object or purpose is to advance their interests to the detriment of others.

- Paragraphs 69-82 focus on Defendants' conduct related to the expansion of the San Diego Convention Center, a project that begin in 2009. Plaintiffs allege that Defendants initially opposed the project on environmental grounds, but they changed course and began supporting the project after they received a PLA for the project.

- Paragraphs 83 and 84 come under the heading "The Playbook Directed at Hotels and Other Large Developments in Greater San Diego." These paragraphs are vague and conclusory and do not allege any facts to support the elements of the secondary boycott claim.

- Paragraphs 85 through 95 allege that Defendants interfered with a plan by Cisterra to develop a combined use project at 7th Avenue and Market Street in downtown San Diego beginning in 2013. Defendants dropped their opposition to the project once they obtained PLA and card check neutrality agreements from Cisterra and the hotels involved in the project.

- Paragraphs 96 through 102 allege that Defendants interfered with a project to develop the downtown San Diego waterfront for retail and public use. *Id.* ¶ 96. Defendants allegedly withdrew their opposition to the project after the developer agreed to a PLA and card check neutrality agreement. *Id.* ¶ 101.

- Paragraphs 103 through 111 allege that Defendants opposed a project to renovate the Town and Country Hotel in Mission Valley, but dropped all opposition to the project after the developer accepted a card-check neutrality agreement. *Id.*

- Paragraphs 112 through 118 allege that Defendants opposed the issuance of permits for a project to develop the former Fat City restaurant location in downtown San Diego by opposing permits for the project. After the developer alleged agreed to a PLA and card check neutrality agreement, Defendants dismissed their lawsuit targeting the project.

- Paragraphs 119 through 135 allege that Defendants interfered with restaurant and hotel development projects on Harbor Island proposed by Sunroad Enterprises in 2011, but withdrew their opposition after Sunroad signed card check neutrality agreements for the projects.

- Paragraphs 136 through 143 allege Defendants interfered with a development project in Seaport Village by refusing to back any proposals by developers that would not support union labor.

- Paragraphs 144 through 149 allege that Defendants objected to a project to revise the master plan for the Hotel Del Coronado, but withdrew their objections after the Hotel Del Coronado renewed its union contract. *Id.* ¶ 149.

- Paragraphs 150 through 160 allege that Defendants opposed redevelopment plans for the San Diego Marriott Marquis in 2011, but withdrew their opposition when Marriott agreed to a card check neutrality agreement in 2012.

- Paragraphs 161 through 165 allege that Defendants objected to the development of the Legacy International Center in Mission Valley, but withdrew their objection after it became clear that because of the Legacy Center's religious requirements, it could only hire union workers who were Christian.

- Paragraphs 166 through 169 allege that Defendants have stalled the SDSU West development project in Mission Valley in order to secure union contracts for all construction stadium work.

- Paragraphs 170 through 175 are largely conclusory allegations about Defendants' motives and techniques to delay projects and increase costs as a negotiating tactic. Paragraph 173 includes a map showing "Defendants' Targets," many of which have been discussed above.

- Paragraphs 178 through 199 allege that Defendants have interfered with the Bahia Redevelopment project. Defendants continue to object to this project because Plaintiffs will not agree to a card check neutrality agreement.

Because these unrelated projects have no connection to SeaWorld, and the alleged conduct is substantially different than that alleged against SeaWorld, these challenged allegations are not necessary or essential to the SeaWorld secondary boycott claim. Defendants allegedly opposed these unrelated projects by engaging in the governmental process in ways that were directed toward a *specific* project. With respect to SeaWorld, however, Defendants allegedly made general threats against a third party – SeaWorld – to oppose *unspecified* future projects if SeaWorld continued its business relationship with Plaintiffs. This distinction is why the Ninth Circuit found that Defendants' alleged threats against SeaWorld would be "baseless" and not entitled to *Noerr-Pennington* protection. *Evans Hotels, LLC*, 2025 WL 17120, at *2 (Because Defendants "neither knew which attractions SeaWorld intended to build nor did they intend to follow through on their threat … they could not have reasonably expected to secure favorable government action.").

> **2.    Relevance of the "Playbook" to Both Elements of the Secondary Boycott Claim**

Plaintiffs argue that the entire "Playbook" is relevant to the SeaWorld secondary boycott claim because "SeaWorld easily could have viewed the playbook as an indication of what might become of Defendants' secondary threats." ECF No. 189 at 18. But the challenged allegations are not connected to SeaWorld's reasons for terminating the joint venture with Plaintiffs. The relevant questions for the SeaWorld secondary boycott claim are the extent of SeaWorld's knowledge of Defendants' past actions; and whether and how that knowledge affected SeaWorld's business decisions. Answering those questions does not require discovery into or proof of the challenged allegations. They are superfluous to this claim.

Moreover, there are several allegations in the TAC that Defendants do not challenge that articulate Plaintiffs' theory that Defendants' past conduct caused SeaWorld to terminate its joint venture with Plaintiffs. ECF No. 168 Ex. 1. Paragraph 210 alleges that SeaWorld's consultant, Allison Rolfe, "spoke regularly" with Plaintiffs' executive in 2018 and told him "again and again" that if Plaintiffs "want to be able to move forward with

SeaWorld, [they] need to do a deal with Defendants for the Bahia." Paragraph 211 alleges that Ms. Rolfe told SeaWorld that it would face severe opposition from Defendants in connection with future projects if it continued its relationship with Plaintiffs. Paragraph 211 alleges on information and belief that "SeaWorld reasonably understood this opposition to include a corporate campaign to organize SeaWorld's labor force unless it cut ties with Evans Hotels." Paragraph 212 alleges that SeaWorld "had no choice but to agree to abandon its joint venture" with Plaintiffs because it was "faced with the prospect of the unions targeting SeaWorld's reputation and core business plan." Paragraphs 214, 215, and 221 allege that SeaWorld told Plaintiffs that the reason it had to end the joint venture was to avoid being a target of the unions. Paragraph 217 alleges that "SeaWorld was acutely aware of Local 30's history of blocking projects and using unlawful means to disrupt its opponents' business."

Plaintiffs rely on a line of cases in the Sixth Circuit regarding admissibility of past conduct by unions in secondary boycott cases related to labor unrest at coal mines in the 1960s to argue that the challenged allegations are relevant because they allege a pattern of past conduct. These cases are inapt. The past conduct that the courts found relevant in the coal mine cases was closely connected in time and purpose to the secondary boycott. *E.g.*, *United Mine Workers of Am. v. Osborne Min. Co.*, 279 F.2d 716, 725 (6th Cir. 1960) ("The incidents concerning the other mines were in the area of Osborne's operations and … in connection with the U.M.W. efforts to organize all of the mines in the Jellico area. They were taking place at or about the time of the incidents directed against Osborne."). Plaintiffs' allegations here are not similarly situated. They focus on disparate projects over a lengthy period of time that involve primary, not secondary, targets. The projects allegedly targeted by Defendants were specific and ongoing, not theoretical or in the future. And the key issue, as discussed above, is not what Defendants actually did in connection with those projects, but what SeaWorld perceived could happen to SeaWorld in the future if Defendants followed through on their alleged threats.

Plaintiffs' reliance on cases that state that the *Noerr-Pennington* doctrine is not a rule of evidence is similarly misplaced. These cases are focused on the wrong question – whether evidence is admissible at trial. *E.g., Mason v. Texaco, Inc.*, 741 F. Supp. 1472, 1500 (D. Kan. 1990) (evidence of defendant's lobbying activities was admissible to show that defendant knew the product at issue was dangerous); *see also Wolfe v. McNeil*-PPC, Inc., No. 07-348, 2012 WL 38694, at *6 (E.D. Pa. Jan. 9, 2012) (denying motion in limine because petitioning activity was probative of defendant's knowledge regarding safety of medication). The issue of admissibility of evidence is not before the court now. Instead, the issue is the permissible scope of the allegations that provide the grounds for liability.

The more relevant cases focus on whether a court should allow allegations in a complaint that allege conduct that is protected under the *Noerr-Pennington* doctrine. In *Calvary Chapel San Jose v. Cody*, No. 20-cv-03794-BLF, 2022 WL 5264651 (N.D. Cal. Oct. 6, 2022), the defendant moved to strike allegations in a fourth amended complaint alleging that defendant had sent letters to a bank about the plaintiffs being found in contempt of court. *Id.* at *6. The court had ruled in a prior motion to dismiss that the letters constituted "conduct incidental to litigation" that were protected by the *Noerr-Pennington* doctrine. *Id.* The court granted the motion to strike, finding that "[b]ecause sending the letters was privileged conduct under the *Noerr Pennington* doctrine, it cannot supply a basis for any of Plaintiffs' claims and thus becomes immaterial." *Id.* Similarly, in *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003 (N.D. Cal. 2018), the defendant moved to strike allegations in a second amended complaint that defendant engaged in "unlawful and unreasonable litigation tactics" against employees alleging discrimination. *Id.* at 1027. The court granted the motion to strike, finding that these allegations were directed at activity protected under the *Noerr-Pennington* doctrine, and that the plaintiff had not adequately pled that they fell within the sham exception. *Id.* at 1027-28.

Striking the challenged allegations at this juncture does not mean that any evidence of the actions that this Court and the Ninth Circuit have found to be protected under the *Noerr-Pennington* doctrine will necessarily be excluded at trial. For example, Plaintiffs

could introduce evidence that SeaWorld had knowledge of Defendants' opposition to other development projects. But the fact of Defendants' opposition alone, without the tie-in to SeaWorld's knowledge, is not relevant to the SeaWorld secondary boycott claim.

## C.    The Challenged Allegations Should Be Stricken to Avoid Unnecessary Confusion and Prejudice

A court may strike allegations from a complaint to eliminate the possibility that "issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted inferences at trial.'" *Gerrie,* 2023 WL 6194164, at *4; *Ollier v. Sweetwater Union H.S. Dist.*, 735 F. Supp. 2d 1222, 1224 (S.D. Cal. 2010) ("Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to be unworthy of consideration as a defense and their presence in the pleading will prejudice the party seeking to strike matters."). Defendants' concern that they will be prejudiced if the challenged allegations are allowed to remain in the TAC is not theoretical. Plaintiffs have made clear that they want the scope of discovery to be defined by the challenged allegations. ECF No. 167 Ex. A. This would broaden the timeline of discovery to more than ten years preceding the filing of this action and extend the reach of discovery to conduct that this Court and the Ninth Circuit have found to be protected under the First Amendment and the *Noerr-Pennington* doctrine. The burden from Plaintiffs' extensive discovery plans will enmesh third parties as well – Plaintiffs have sent litigation hold letters to over a dozen third parties. ECF 190 at 11.

The nature of the discovery that Plaintiffs are seeking related to the challenged allegations directly implicates Defendants' First Amendment rights to political expression and association. In *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the court recognized that a party has a right to assert a privilege to prevent responding to discovery that would infringe on its First Amendment rights. *Id.* at 1160. The mere possibility of discovery regarding protected conduct can act as an impermissible chill on First Amendment rights. *Franchise Realty Interstate Corp. v. San Francisco Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1084 (9th Cir. 1976).

3:18-cv-02763-RSH-AHG

Beyond the prejudice of such extensive and unnecessary discovery, the challenged allegations are likely to cause confusion because of their breadth and scope. Nearly 75 percent of the TAC is focused solely on conduct protected by the *Noerr-Pennington* doctrine regarding projects that are unrelated to SeaWorld. The Ninth Circuit held expressly that this conduct cannot be the basis of antitrust liability. *Evans Hotels LLC*, 2025 WL 17120, at * 1. Defendants' alleged "Playbook," as directed to primary targets unrelated to SeaWorld, is only relevant to the extent SeaWorld was aware of it, and to the extent that it impacted SeaWorld's decision to terminate the joint venture with Plaintiffs.

Plaintiffs' allegations that Defendants have participated in bribery, extortion, secret meetings and the like in actions against primary targets that are unrelated to SeaWorld, which overlap with the paragraphs discussed above, also carry a significant risk of prejudice. *Shinde v. Nithyananda Found.*, No. 13-0363, 2013 WL 1953707, at *8 (C.D. Cal. May 10, 2013) (striking allegations from a complaint "[o]n the basis that they are redundant, unduly prejudicial, and add further confusion to a [c]omplaint that is already prolix and repetitive."); *see also Tuck v. Guardian Prot. Servs., Inc.*, No. 15-CV-1376 JLS (JLB), 2017 WL 1047122, at *2 (S.D. Cal. Mar. 20, 2017) (finding Plaintiff's allegations scandalous where the allegations "appear to exist for no other reason than to cast Defendant in a negative light"); *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) ("Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice."). The Court need not make a separate determination regarding whether these allegations are "scandalous" under Rule 12(f), however, because they are unnecessary to the sole remaining claim and should be stricken on that basis for the reasons discussed above.

## V.     CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Robert S. Huie pursuant to 28 U.S.C. § 636(b)(1). For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order:

(1)     approving and adopting this Report and Recommendation; and

(2)   **GRANTING** Defendants' Motion to Strike.

**IT IS ORDERED** that no later than **August 21, 2025**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **August 28, 2025**.

**IT IS SO ORDERED**.

Dated:  August 7, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge